1              IN THE UNITED STATES DISTRICT COURT

2                  FOR THE DISTRICT OF DELAWARE

3    SWIRLATE IP LLC,                    )
                                         )
4              Plaintiff,                )
                                         )  C.A. No. 22-235-CFC
5      v.                                )
                                         )
6    QUANTELA, INC.,                     )
                                         )
7              Defendant.                )
                                         )
8
     SWIRLATE IP LLC,                    )
9                                        )
               Plaintiff,                )
10                                       )  C.A. No. 22-249-CFC
       v.                                )
11                                       )
     LANTRONIX, INC.,                    )
12                                       )
               Defendant.                )
13

14

15   WAVERLY LICENSING LLC,              )
                                         )
16             Plaintiff,                )
                                         )  C.A. No. 22-420-CFC
17     v.                                )
                                         )
18   AT&T MOBILITY LLC,                  )
                                         )
19             Defendant.                )
                                         )
20

21   WAVERLY LICENSING LLC,              )
                                         )
22             Plaintiff,                )
                                         )  C.A. No. 22-422-CFC
23     v.                                )
                                         )
24   GRANITE RIVER LABS INC.,            )
                                         )
25             Defendant.                )

1

2

3                          Wednesday, January 17, 2024
                                    1:06 p.m.
4                                   Hearing

5

6                              844 King Street
                            Wilmington, Delaware
7

8      BEFORE: THE HONORABLE COLM F. CONNOLLY
       United States District Court Judge
9

10

11     APPEARANCES:

12

13                 CHONG LAW FIRM, PA
                   BY:  JIMMY C. CHONG, ESQ.
14                           Counsel for the Plaintiffs

15

                   FINGER & SLANINA LLC
16                 BY:  DAVID L. FINGER, ESQ.
                             Counsel for the Plaintiff Waverly
17

18                 BY:  DAVID R. BENNETT, ESQ.
                             Counsel for the Plaintiff Swirlate
19

20

21                 MORRIS NICHOLS ARSHT & TUNNELL
                   BY:  CAMERON CLARK, ESQ.
22                           Counsel for the Defendants

23

24

25

```
 1                      P R O C E E D I N G S

 2

 3          (Proceedings commenced in the courtroom beginning at

 4     1:06 p.m.)

 5               THE COURT:  Please be seated.  All right.

 6     Let's begin with the Swirlate cases.  We have counsel of

 7     record for those two cases -- for these cases are

 8     Mr. Chong and Mr. Bennett, correct?

 9               MR. FINGER:  Your Honor, I apologize.  May I

10     address a housekeeping issue initially?

11               THE COURT:  Sure.  You are Mr. Finger, for the

12     record?

13               MR. FINGER:  Yes.  I'm David Finger on behalf

14     of Waverly.

15               I'm not sure how long this hearing is going to

16     go.  I was supposed to pick up my stepson from school at

17     2:10, but if it's going to go beyond that, I request a

18     brief recess around 2:00, so can I make alternative plans.

19               THE COURT:  Yeah.  It's going to -- I don't

20     know the answer.  I don't think it's going to go over, but

21     it just depends on how quickly it goes.  We'll see.

22               MR. FINGER:  I'm not pushing, Your Honor,

23     but --

24               THE COURT:  But you represent Waverly only?

25               MR. FINGER:  Yes, that's correct.
```

 1              **THE COURT:**  All right.  Well, actually, I will

 2   tell you what, then.  To accommodate you, though, why

 3   don't we do Waverly first.  I don't have a problem with

 4   that.

 5              The only counsel of record for Waverly until

 6   you entered an appearance yesterday was Mr. Chong,

 7   correct?

 8              **MR. FINGER:**  That's correct, Your Honor.

 9              **THE COURT:**  All right.  So my questions there

10   really are as follows.  As I understand it, Waverly had a

11   sole owner and managing member who was required to

12   attend --

13              **MR. FINGER:**  Uh-huh.

14              **THE COURT:**  -- an evidentiary hearing here,

15   correct?

16              **MR. FINGER:**  I believe that's correct, Your

17   Honor.

18              **THE COURT:**  Okay.  And really the issue is

19   this, is I don't want to assume, but my sense is, based on

20   what I've seen in the other cases that I've written about,

21   that Mr. Chong probably had no discussions directly with

22   that person, and just for the record is it Son Nguyen?

23              How do you pronounce the name?  Do you know,

24   Mr. Chong?

25              **MR. CHONG:**  Sorry?

1              **THE COURT:**  Do you know how to pronounce the

2      name of the individual, the sole owner and member?

3              **MR. CHONG:**  Mr. Son Nguyen.

4              **THE COURT:**  Nguyen.  Okay.

5              Mr. Chong, did you have communications with

6      that person directly before you filed these cases?

7              **MR. CHONG:**  I had communication with Waverly,

8      yes, Your Honor, through an agent.

9              **THE COURT:**  That wasn't my question, Mr. Chong.

10     I said did you have -- Mr. Nguyen is --

11             **MR. FINGER:**  Nguyen.

12             **THE COURT:**  Mr. Nguyen is the sole owner and

13     managing member of Waverly, correct?

14             **MR. CHONG:**  That's correct.

15             **THE COURT:**  Did you speak or have

16     communications directly with him before you filed these

17     lawsuits?

18             **MR. CHONG:**  Mr. Nguyen is not my client;

19     Waverly is my client.

20             **THE COURT:**  I didn't ask you that.  I asked,

21     did you have any direct communications with Mr. Nguyen

22     before you filed these cases?

23             **MR. CHONG:**  Yes, I had a signed agreement from

24     Mr. Nguyen prior to filing the cases.

25             **THE COURT:**  So you conversed directly with him?

1          **MR. CHONG:**  I had a signed agreement.  I did

2    not have a conversation with Mr. Nguyen, but I do have a

3    signed agreement.

4          **THE COURT:**  Okay.  So did you e-mail him before

5    you got that signed agreement?

6          **MR. CHONG:**  I went through Mr. Nguyen's agent.

7          **THE COURT:**  Okay.  So --

8          **MR. CHONG:**  Or, I'm sorry.  Waverly's agent.

9          **THE COURT:**  So did you have any communications

10   directly with Mr. Nguyen, the sole owner and manager of

11   Waverly, before you filed these lawsuits in Waverly's

12   name?

13         **MR. CHONG:**  I did not have -- there was an

14   in-between --

15         **THE COURT:**  It's a really easy question.  It's

16   a yes-or-no question, and, frankly --

17         **MR. CHONG:**  But --

18         **THE COURT:**  I'm very surprised that you can't

19   answer that question.

20         **MR. CHONG:**  I understand it's a yes-or-no

21   question; however, Mr. Nguyen is not my client; Waverly is

22   my client.

23         **THE COURT:**  I didn't ask you who your client

24   was.  I asked you, and it's the last time I'm going to ask

25   you:  Did you have direct communications with Mr. Nguyen

1    before you filed these lawsuits in Waverly's name?

2              **MR. CHONG:**  I did not have direct communication

3    with Mr. Nguyen.

4              **THE COURT:**  All right.  How did you obtain

5    Waverly's consent, informed consent, to file these

6    lawsuits in its name?

7              **MR. CHONG:**  Through Waverly's agent.

8              **THE COURT:**  How did you obtain Waverly's

9    consent to communicate with its putative agent?

10             How did you obtain that informed consent

11   directly from the client to negotiate and to obtain

12   directions from its agent?

13             **MR. CHONG:**  From its agent, I had

14   communications.

15             **THE COURT:**  All right.  Do you have any -- this

16   is your opportunity, if you want to explain how you can do

17   that ethically, now is your platform.  I've already

18   referred you to the Delaware Bar Disciplinary Counsel.

19   I'm going to do so here because our rules require that you

20   obtain the informed consent from the client in order for

21   you to engage and rely on these negotiations -- I should

22   say directions from a third party.

23             **MR. CHONG:**  So I guess just to kind of -- I'm

24   here to assist the Court in any way.  But you had stated

25   that you referred me to ODC, and at this point in time,

1    I -- Rule 13 of the Delaware Disciplinary Rule states

2    there needs to be confidentiality through these hearings.

3    I have Rule 13 here and --

4                **THE COURT:**  Through what hearings?

5                **MR. CHONG:**  Through any -- if there's a -- you

6    referred me over to ODC.

7                **THE COURT:**  Right.

8                **MR. CHONG:**  And as the hearings -- ODC now has

9    it.  And if that's taking place, then these topics have to

10   be confidential, per Rule 13.

11               **THE COURT:**  Rule 13 is a rule you are telling

12   me that applies to the District Court, a United States

13   Federal Court?

14               **MR. CHONG:**  Well, you referred this to ODC, so

15   this is now an ODC matter.

16               **THE COURT:**  When you say I referred this,

17   "this" meaning what?

18               **MR. CHONG:**  Well, you just stated you're going

19   to refer this matter to the ODC.

20               **THE COURT:**  I'm going to, yes.  I'm going to.

21   That's right.  I said that.  I didn't say I have, and I

22   certainly have not done it yet.  I have referred you to

23   ODC in the other parallel cases.  I've written opinions

24   about it.  And so you're right.

25               What I was trying to do is, and I think we've

1    accomplished it here, is I wanted to make sure that I just

2    didn't refer you to disciplinary counsel for your actions

3    in these cases without finding out whether, in fact, your

4    actions in these cases were exactly consistent with what

5    you had done in the other cases.  It sounds like your

6    actions in this case are consistent with what you did in

7    the other cases.

8              **MR. CHONG:**  So is this a rule to show cause

9    hearing?

10             **THE COURT:**  This is just for me to find out

11   whether or not you had direct communications with the sole

12   owner and managing member of Waverly before you filed

13   these lawsuits.

14             **MR. CHONG:**  I'm just trying to understand.

15   Just for my understanding, the type of hearing this is.

16             **THE COURT:**  I don't know how you characterize

17   it.  A status hearing, you can do that.  I don't think

18   that's really consequential.

19             Why would it be important to know what the

20   designation of the hearing is?

21             **MR. CHONG:**  Well, just because, in your order

22   that you keep referring to with the other cases, you

23   mentioned that there is a disciplinary issue, there is a,

24   you know, you referred there's a criminal issue.

25             I'm just trying to understand, is this part of,

1  you know, the investigation towards a criminal case or is

2  it a disciplinary case?  I'm just trying to understand

3  what this is.

4          **THE COURT:**  The sole purpose right now is for

5  me to ascertain whether or not you had direct

6  communications with Waverly before you filed the lawsuit.

7  And the answer you are telling me is no.  And I'm telling

8  you that --

9          **MR. CHONG:**  I had --

10          **THE COURT:**  Therefore, I am going to refer you

11  to disciplinary counsel.  And I don't actually need to

12  have you answer any other questions, but you are welcome

13  to, if you want to.  But that suffices, in as far as your

14  appearance here in the Waverly cases.  That's all I needed

15  to ascertain.

16          **MR. CHONG:**  But I did have direct

17  communication. I had conversations to Waverly through

18  their agent.

19          **THE COURT:**  I think you need to learn English,

20  then.  "Direct" and "through" are --

21          **MR. CHONG:**  I'm sorry?

22          **THE COURT:**  You need to learn to speak English,

23  because "direct" and "through" can't be used in a sentence

24  the way you have just used them.

25          You're not having direct communications with a

1    principal if it's through their agent.

2           And, you know, look, I don't -- you are welcome

3    to state your case.  You have that opportunity, but what

4    I'm saying is, based on that representation alone, I don't

5    need any more information, and I do believe it's

6    appropriate to refer your conduct in this case -- in these

7    cases -- to disciplinary counsel.  Because it's a

8    fundamental proposition of ethical conduct of lawyers that

9    they get the direct approval of a client to file a

10   lawsuit.  And they can, at times, rely on directions from

11   a third party, but only after obtaining the, quote,

12   "informed consent" of the client, and you are telling me

13   you didn't do that here.

14          **MR. CHONG:**  I did.  I received a direct, signed

15   agreement from Waverly, which is direct communication.

16          **THE COURT:**  Right.  Through an agent; through a

17   third party.  Through the third party whose direction you

18   say you are relying on or you relied on to file these

19   cases, correct?

20          **MR. CHONG:**  Well, my client has told me he

21   signed that, and that is a signed agreement.  He did sign

22   that agreement.

23          **THE COURT:**  And when did you ascertain that

24   through your client or from your client?

25          **MR. CHONG:**  It's -- it was a signed agreement.

1    I don't -- it's direct communication, Your Honor.  But

2    I -- this is -- you are right, this is not a place to

3    argue it.  So...

4            **THE COURT:**  No.  You are welcome to put it on

5    the record, whatever you want to put on the record.

6            **MR. CHONG:**  That's all, Your Honor.

7            **THE COURT:**  Okay.  So then, in the Waverly

8    cases, I am going to refer Mr. Chong to disciplinary

9    counsel.  And, really, he needs, it sounds like, to be

10   just educated about the fundamentals of agency principals,

11   what a principal is versus an agent, what it means to

12   obtain informed consent, and he needs to apprise himself

13   better of the Rules of Professional Conduct in our

14   jurisdiction and that apply in this Court.

15           So that's what I'm going to do in Waverly.

16           Mr. Chong, before you sit down, let me just --

17   well, is there anybody else from Waverly?

18           Mr. Finger, do you need to be heard?

19           **MR. FINGER:**  No, Thank you, Your Honor.

20           **THE COURT:**  Okay.  That concludes the Waverly

21   matters.

22           **THE COURT:**  Let's deal with Swirlate then.

23           Mr. Chong, on Swirlate, I am really going to

24   ask you the same question:  Did you have any direct

25   communications with Dina Gamez, who is identified in the

1    disclosure statement filed by Swirlate as the sole owner

2    and managing partner of that entity?

3              **MR. CHONG:**  Your Honor, on Swirlate, I am local

4    counsel.  And here with me today is David Bennett, who is

5    lead counsel, and I had conversations with Mr. Bennett.

6              **THE COURT:**  Okay.  And let me just be clear on

7    that.  Let's get the timing of it.  Before you filed the

8    cases, had you communicated with Mr. Bennett?

9              **MR. CHONG:**  Yes.

10             **THE COURT:**  All right.  So, basically, you

11   relied on Mr. Bennett, who was your cocounsel, and you

12   relied specifically on his communications with the client

13   in order to assure yourself that you were doing the

14   directions and following the directions of the client; is

15   that right?

16             **MR. CHONG:**  I also had a signed agreement from

17   the client that is local counsel.

18             **THE COURT:**  Okay.  And did you obtain that

19   signed agreement before you filed the lawsuits?

20             **MR. CHONG:**  Yes.

21             **THE COURT:**  And did you obtain that agreement

22   through Mr. Bennett?

23             **MR. CHONG:**  I believe so, yes.

24             **THE COURT:**  All right.  Have you ever spoken

25   directly with Ms. Gamez?

1          **MR. CHONG:**  I cannot recall off the top of my

2     head.

3               **THE COURT:**  But is it fair to say you are

4     certain that, before you took any action in court on

5     behalf of Swirlate, you communicated with Mr. Bennett and

6     relied on Mr. Bennett for ascertaining the wishes and the

7     intent of the client Swirlate; is that right?

8               **MR. CHONG:**  That is correct.

9               **THE COURT:**  All right.  Thank you.

10              Then, Mr. Bennett, could you come forward

11    please.

12              **MR. BENNETT:**  Good afternoon, Your Honor.

13              **THE COURT:**  Good afternoon, Mr. Bennett.

14              Mr. Bennett, simple question.  Your name is on

15    various e-mails that were produced in some of the other

16    parallel litigations.  By "parallel litigations," I am

17    referring to the **Nimitz cases**, and **Backertop, Mellaconic.**

18    You're familiar with those cases?

19              **MR. BENNETT:**  No, Your Honor.

20              **THE COURT:**  You are not familiar with those

21    cases at all?

22              **MR. BENNETT:**  No, Your Honor.  I mean, other

23    than reading your opinion, at this time I don't believe I

24    was lead counsel in those cases.

25              **THE COURT:**  Oh, really?

1          **MR. BENNETT:**  So until I -- and I don't know

2     what was produced here to Your Honor, so I don't know what

3     the e-mails say or why they were sent.

4          So I honestly -- I can't -- I mean, it's

5     possible there was something I was brought in on, but I

6     don't recall at this moment.  I would have to see the

7     e-mails from the other case.

8          **THE COURT:**  I'm not sure it would be productive

9     to show the e-mails, but I'll just let you know that you

10     are -- well, actually, hold on one second.  Let me grab

11     one of the e-mails.  We can -- I can let you know about

12     it.

13          But, basically, the e-mail that I have in mind

14     is an e-mail involving you and lawyers from a number of

15     the cases that are cited in the **Nimitz opinions.**  You're

16     familiar with the **Nimitz opinions**?

17          **MR. BENNETT:**  Your Honor referred to it in this

18     case.

19          **THE COURT:**  Are you a member of the Illinois

20     bar?

21          **MR. BENNETT:**  Yes, Your Honor.

22          **THE COURT:**  And in the e-mails, you discuss

23     with the other counsel in those other cases and with

24     Mr. Papool Chaudhari.

25          You're familiar with him?

1          **MR. BENNETT:**  I believe so, Your Honor, yes.

2          **THE COURT:**  You are discussing how to respond

3     to the various orders I issued in these cases and other

4     cases in September of 2022.  Does that ring any bell now?

5          **MR. BENNETT:**  Not specifically.  Maybe

6     generally, but not specifically.

7          **THE COURT:**  I mean, what I'm just trying to

8     establish is your familiarity.  You said you don't know

9     anything about these other parallel cases.  And given --

10         **MR. BENNETT:**  At this time, I don't.  I mean,

11    it's possible at some point, I had some familiarity with

12    them.  I haven't dealt with this issue for at least a year

13    or so, so I'm not -- don't necessarily recall the details.

14         **THE COURT:**  So here's an example.  I'll just

15    give you one.  This is an e-mail that comes from the

16    e-mail address dbennett@directionIP.com.

17              Is that your e-mail address?

18         **MR. BENNETT:**  Yes, Your Honor.

19         **THE COURT:**  It's written to George Pazuniak,

20    who is the counsel in the **Nimitz cases.**

21              Do you know him?

22         **MR. BENNETT:**  I have spoken to him.

23         **THE COURT:**  Okay.  So it's written to him, and

24    it's on an e-mail chain that includes Papool Chaudhari.

25              Do you know him?

1          **MR. BENNETT:**  Assuming it's the same person,

2     yes.

3          **THE COURT:**  Right.  And it includes Andrew

4     Curfman.  Do you know him?

5          **MR. BENNETT:**  I know Andrew Curfman, yes.

6          **THE COURT:**  And he is counsel in some of those

7     parallel cases I referenced; is that right?

8          **MR. BENNETT:**  I think so.  I don't recall which

9     one he is.

10          **THE COURT:**  Ronald Burns is also on the

11     e-mails.  Do you know Mr. Burns?

12          **MR. BENNETT:**  I actually don't know if I have

13     ever spoken to him.

14          **THE COURT:**  Okay.  He, though, you're aware if

15     you've read the opinions, is also counsel in those

16     parallel cases; is that right?

17          **MR. BENNETT:**  I don't recall what was in your

18     opinion.

19          **THE COURT:**  Howard Wernow.  He is explicitly

20     mentioned in some of those opinions in the parallel cases.

21          Are you familiar with him?

22          **MR. BENNETT:**  Yes, Your Honor.  I do know

23     Howard.

24          **THE COURT:**  You communicated with him as part

25     of this e-mail train; is that right?

1          **MR. BENNETT:** I don't have the e-mail in front

2     of me, so I don't know.

3          **THE COURT:** Linh Deitz from IP Edge is on the

4     e-mail train. Do you know who she is?

5          **MR. BENNETT:** I know a Linh Deitz, yes.

6          **THE COURT:** Mr. Chong is included in the e-mail

7     train. You know who he is, right?

8          **MR. BENNETT:** Yes, Your Honor.

9          **THE COURT:** Gautham Bodepudi of IP Edge is on

10    the email train.

11          Do you know him?

12          **MR. BENNETT:** I do know Mr. Bodepudi.

13          **THE COURT:** And then there was a Brandon

14    LaPray, who I understand passed away, from IP Edge. But

15    he was also included in these e-mails.

16          Do you know him or did you know him?

17          **MR. BENNETT:** I did know Mr. LaPray.

18          **THE COURT:** And so I don't know if that

19    refreshes your recollection, but there's a number of

20    e-mails dated here September 23, at 2:28 p.m. from you to

21    Mr. Pazuniak. September 23 at 1:49 p.m. from you to

22    Mr. Pazuniak, copying all of these individuals that I

23    referenced before. And there's an exchange of drafts

24    among the participants.

25              For instance, there's an e-mail dated

1  12:57 p.m. on September 23 from Andrew Curfman to Papool

2  Chaudhari, copying you, among all the other people I've

3  mentioned, attaching the latest draft for Mr. Papool

4  Chaudhari's final approval to file with me, to file with

5  this Court in the parallel cases.

6           Does that refresh your recollection about any

7  of these parallel cases that you said you don't really

8  know anything about?

9           **MR. BENNETT:**  Not specifically, Your Honor, no.

10          **THE COURT:**  No?  All right.

11          Did you read any of the **Nimitz opinions**?

12          **MR. BENNETT:**  Well, the one that you sent, that

13  you referred to in your order for this hearing, I reviewed

14  it.

15          **THE COURT:**  Okay.  So are you aware that I have

16  referred Mr. Chong and other counsel who participated in

17  the parallel cases to their respective disciplinary

18  counsel?

19          **MR. BENNETT:**  Other than what you've said in

20  your order.  I mean, I assume you did, but, Your Honor, I

21  don't have any specific knowledge.

22          **THE COURT:**  Okay.  Well, as I explained in the

23  opinion, and I alluded to earlier this afternoon, I made

24  those referrals because it appears very clear that the

25  counsel in those cases took action and specifically filed

1    lawsuits and settled lawsuits on behalf of their client

2    without having any direct communication at any point prior

3    to the settlements or filing of the lawsuits with the

4    client.  And instead, just communicating through Mavexar

5    or IP Edge.

6              And what I'm trying to ascertain in your cases,

7    because you filed a number of cases in this court,

8    including these cases on behalf of Swirlate, is whether or

9    not you also engaged in that type of conduct.  In other

10   words, you did not at any point obtain from the client the

11   informed consent of the client to file the lawsuits and to

12   settle the lawsuits.

13             MR. BENNETT:  Respectfully, no, Your Honor.  I

14   did receive informed consent from the client.

15             THE COURT:  Okay.  So let's talk about -- and

16   the client is Swirlate; is that right?

17             MR. BENNETT:  Swirlate IP LLC.

18             THE COURT:  And is it true that Dina Gamez is

19   the sole owner and managing partner of Swirlate IP LLC?

20             MR. BENNETT:  Yes.

21             THE COURT:  Did you speak with Ms. Gamez before

22   you filed these lawsuits?

23             MR. BENNETT:  I don't specifically recall any

24   conversation, but I don't -- this was several years ago.

25   I don't specifically recall one way or the other.

1          **THE COURT:**  Did you have any e-mails with

2     Ms. Gamez to get her permission to file on behalf of

3     Swirlate IP LLC lawsuits in this Court?

4          **MR. BENNETT:**  I received the agreement, or my

5     engagement agreement, which gave me authority, signed by

6     Ms. Gamez.  I don't specifically remember where that

7     e-mail came from.  It would have included, definitely,

8     their agents at Mavexar.  But other than that, I don't

9     recall specifically who may have been included in any

10    e-mail chain.

11         **THE COURT:**  All right.  Did you -- what I'm

12    really just trying to get to the nub, as opposed to having

13    you produce documents, as I required in the other cases,

14    is whether or not you relied exclusively on communications

15    with Mavexar to take actions in these cases on behalf of

16    Swirlate.

17         **MR. BENNETT:**  No.  I did not rely exclusively

18    on Mavexar.

19         **THE COURT:**  How did you obtain Ms. Gamez's

20    informed consent to take directions from Mavexar?

21         **MR. BENNETT:**  I would have received them

22    through Mavexar.

23         **THE COURT:**  So you never communicated directly

24    with Ms. Gamez in the first instance to obtain her

25    informed consent to have Mavexar communicate with you as

1   her agent, or as Swirlate's agent, I should say?

2   **MR. BENNETT:**  I'd have to look back at the

3   engagement agreement.  I don't specifically recall.

4   **THE COURT:**  All right.  So what I'm going to

5   do, then, since you don't recall, I'm going to have you

6   have to produce that documentation so I can ascertain

7   whether, in fact, you comported with the rules of ethics

8   to obtain the informed consent of a client before filing

9   these lawsuits.  All right?

10   **MR. BENNETT:**  So, I'm sorry.  What is Your

11   Honor requesting?

12   **THE COURT:**  Well, I will draft an order that

13   will get at it.  But, basically, what I need to assure

14   myself of is that -- because I'm not assured, based on the

15   answers you've given me, that you, in fact, obtained

16   informed consent of Swirlate to file these lawsuits.

17   **MR. BENNETT:**  So this is an ethics

18   investigation?

19   **THE COURT:**  Well, I don't that I would use that

20   term.  But, you know, what I would say is that I'm

21   assuring myself that you, whom I admitted pro hac, and who

22   is now a practicing lawyer before this Court, have

23   complied, as you are required to, with the Professional

24   Rules of Conduct.  And to that end, since you don't -- you

25   can't represent to me with any assurances that you, in

1   fact, obtained the informed consent of the client to take

2   directions from Mavexar, except through communications

3   with Mavexar.  And you said to me that you can't recall,

4   you'd have to go back and look at certain documents.

5          So what I'd like you to do is produce those

6   documents, so we can ascertain that, and I can ascertain

7   what, if any, action I need to do with respect to your

8   conduct and your continued appearance in this Court.  And

9   so to that end, I'm going to have to require you to

10  produce those documents.

11         **MR. BENNETT:**  So, Your Honor, are you saying

12  there's any violation of either a standing order or the

13  District Court's local rules?

14         **THE COURT:**  Well, if you're not -- if you did

15  not obtain the informed consent of the sole owner and

16  managing partner, Ms. Gamez, to file a lawsuit in this

17  Court on behalf of Swirlate, then it would appear you

18  violated the Rules of Professional Conduct because you did

19  not obtain the informed consent.  And if you relied

20  exclusively on the directions of Mavexar or IP Edge or a

21  third party to file the lawsuit or to dismiss the lawsuit

22  on its behalf, then I don't how you didn't violate the

23  Rules of Professional Conduct.

24         **MR. BENNETT:**  Okay.  Is there any local rule or

25  standing order that Your Honor believes this information

1    is relevant to?

2            **THE COURT:**  Well, our local rule requires that

3    all the practitioners in the Court comply with the Model

4    Rules of Professional Conduct.

5            **MR. BENNETT:**  Okay.

6            **THE COURT:**  And since you were admitted pro

7    hac, you represented that you read the local rules.  Did

8    you do that?

9            **MR. BENNETT:**  Yes, Your Honor.

10           **THE COURT:**  Well, are you aware that our local

11   rules require all the attorneys that appear in court to

12   comply the Model Rules of Professional Conduct?

13           **MR. BENNETT:**  Yes, Your Honor.

14           **THE COURT:**  Okay.  So it's those rules that I'm

15   referring to.

16           **MR. BENNETT:**  Okay.  Well, I respectfully

17   disagree with your characterization of the use of agents

18   to communicate information in this case, and I think that

19   the Third Circuit law holds that such communications are

20   valid and not a breach of any professional responsibility.

21           **THE COURT:**  All right.  You want to show me or

22   pass up a Third Circuit case that says that?

23           **MR. BENNETT:**  Sure.  It just has to do with

24   attorney/client privilege, attorney work product as to

25   being protected because they are communications that are

1    necessary for litigation.

2              If you want, I could just read off the cases

3    and then Your Honor, you know, can review them or not

4    review them.  But I can tell you the locations.

5              There's In Re Grand Jury Investigation, 918

6    F.2d 374 at 386, Note 20, which talks about, you know, the

7    presence of a third party does not vitiate the

8    attorney/client privilege if the third party is the

9    attorney's or clients agent or --

10             **THE COURT:**  That's an uncontested principle of

11   law.  I don't -- how is that relevant here?

12             **MR. BENNETT:**  What principle is Your Honor

13   saying?

14             **THE COURT:**  You see, in order to get a client's

15   informed consent to take directions from a third party,

16   you have to get the informed consent from the client.

17   That's what I'm trying to ascertain here.  If you told me

18   that you spoke with Ms. Gamez and -- the sole owner and

19   managing partner of Swirlate, and she gave you informed

20   consent to communicate with her through Mavexar, that

21   would be one thing, but you haven't said that.

22             You've said that your communications went

23   through Mavexar, and -- or you said you just can't recall

24   them, which is why I said, well, maybe we should get the

25   documents produced, and we can ascertain that.

1          **MR. BENNETT:**  So is it -- I guess, wouldn't the

2    managing partner also just be an agent for Swirlate IP?  I

3    mean, because Swirlate IP is a legal entity, and so they

4    could only communicate through their agents.

5          **THE COURT:**  No, actually, that's not true.

6    Swirlate has a natural person associated with it as all

7    entities do.  It's got a sole owner and managing partner

8    according to the disclosure that Swirlate filed with this

9    Court, and that's Dina Gamez.

10          **MR. BENNETT:**  So it's Your Honor's position

11    that they cannot hire an agent to communicate information

12    to the attorney?

13          **THE COURT:**  No, it's in order for an attorney

14    to rely on such communications with a third party, they

15    need, under the Rules of Ethics, to obtain the informed

16    consent of the client.  And it appears that hasn't been

17    done here.

18          **MR. BENNETT:**  So informed consent, who would I

19    have to speak to in the client's position?

20          **THE COURT:**  In this case, there's only one

21    natural person associated with the client, its sole owner

22    and managing partner, that would be Dina Gamez.

23          **MR. BENNETT:**  And then Ms. Gamez, it is

24    impossible for her to delegate her authority to a

25    registered agent?

1          **THE COURT:**  I didn't say.  I didn't say that at

2     all.  But the Rules of Ethics, and, in particular, the

3     Model Rules of Professional Conduct, require that you

4     obtain the informed consent of a client.

5          **MR. BENNETT:**  And is it not possible to provide

6     the informed consent through an agent, is that Your

7     Honor's --

8          **THE COURT:**  I don't know how you can obtain the

9     informed consent of a principal to follow the directions

10     of the principal's agent except through the principal.

11          But look, you are free to submit anything you

12     want in writing.  I think what I'm hearing, though, is you

13     are not, right now, sure whether or not you had direct

14     communications with Ms. Gamez, and I think that needs to

15     be ascertained.

16          No question, as I did in the other cases, if it

17     turns out you did not have -- did not obtain the informed

18     consent of Ms. Gamez and relied exclusively on

19     communications with a third party, either Mavexar or IP

20     Edge or any other entity, to take action in this Court on

21     behalf of Swirlate, then I will refer you to the

22     disciplinary authorities in Illinois, and our Court will

23     also take note of that for any future actions or attempt

24     by you to participate as a lawyer in our Court.

25          **MR. BENNETT:**  Okay.  So it does seem, Your

1    Honor, like this is an ethics -- you are seeking ethics

2    information; is that correct?

3            **THE COURT:**  I'm seeking information so that I

4    can ascertain whether you've acted ethically as a lawyer

5    in these cases, yes.

6            **MR. BENNETT:**  So that's an ethics

7    investigation; is that correct, Your Honor?

8            **THE COURT:**  I don't know if I'd call it an

9    ethics investigation.  I mean, I guess I'm not sure what

10   the designation of it is.  I'm basically, what I'm trying

11   to assure myself is that you have complied with the Model

12   Rules of Professional Conduct in this Court in these

13   proceedings.  That's all.  And that's the limited scope

14   here.

15           So, yes, I'm going to -- I don't know how you

16   want to deem it, how you want to call it.  I'm not going

17   to do anything in the first instance other than direct you

18   to produce the communications or just to confirm, having

19   looked at the communications, whether or not you filed and

20   dismissed lawsuits -- these lawsuits I should say -- only

21   after obtaining directions directly from the client or

22   from somebody else after having obtained the informed

23   consent of the client to proceed through the directions of

24   the third party.

25           **MR. BENNETT:**  And in terms of producing

documents, would Your Honor agree that they can be -- to the extent they are produced, that they would be kept confidential; and to the extent that Your Honor believes that they should not be kept confidential, that Swirlate would have the opportunity to appeal that before you made the information public?

**THE COURT:**  I can't give you that guarantee, no.  I can't do that.  I've never given -- I don't know of a Court that would ever do that.

And, frankly, we could just short circuit this if you want, if you want, if you want to go back to your files and look at your files and send me a letter.  And if you just confirmed, as I suspect, that you never had communications directly with Dina Gamez to obtain the informed consent of Swirlate to file these lawsuits in its name, and instead you relied exclusively on communications with a third party, i.e., Mavexar or IP Edge, that's really all the information I need.

At that point, I'm prepared to just refer you to the bar authorities in Illinois and let them do their job, and so it's kind of how you want to proceed.  Your answers to my questions were noncommittal.

**MR. BENNETT:**  Well, Your Honor, I did receive a signed communication from Ms. Gamez giving me permission and instructions to file the lawsuits.

1          THE COURT:  And how did you obtain that signed

2    letter from Ms. Gamez?

3          MR. BENNETT:  Through an agent, no different

4    than if it came through the mail.  Right?  If they put it

5    in the mail, how would I could necessarily guarantee it

6    was any different than it was e-mailed to me by an agent?

7    I would actually trust it more from an agent who I know

8    had communicated with Ms. Gamez.

9          THE COURT:  Well, that sounds like the answer

10   to the question is, you did not ever deal directly with

11   Ms. Gamez; you always dealt with her through Mavexar.  But

12   you're not prepared to admit that.

13         MR. BENNETT:  Respectfully, Your Honor, I have

14   a signed letter or agreement from Ms. Gamez, and I don't

15   think there's anything indirect about somebody sending me

16   a signed agreement.

17         THE COURT:  And how did you obtain that signed

18   agreement?  How did you get it?

19         MR. BENNETT:  Through their agent, Mavexar.

20         THE COURT:  Okay.  So you did get it through

21   Mavexar.  How did --

22         MR. BENNETT:  They didn't sign the agreement.

23         THE COURT:  I'm sorry?

24         MR. BENNETT:  They didn't sign the agreement;

25   they just merely transported the agreement.

1          **THE COURT:**  How did you -- this letter, did it

2     come from you in the first instance?

3          **MR. BENNETT:**  Yes.  It's my engagement letter.

4          **THE COURT:**  Okay.  So how did you get the

5     letter to Ms. Gamez?

6          **MR. BENNETT:**  I sent it through their agent.

7          **THE COURT:**  Through Mavexar?

8          **MR. BENNETT:**  Yes.

9          **THE COURT:**  Okay.  So then, really, it's fair

10    to say all of your communications with Ms. Gamez occurred

11    indirectly through Mavexar; is that fair?

12         **MR. BENNETT:**  No, Your Honor.  I would think

13    that directly -- it is a direct communication through

14    their agent, no different than if I sent it to -- I sent a

15    complaint to a registered agent in Delaware.

16         I mean, the registered agent -- it's -- sending

17    it to the registered agent is the same as sending it to

18    the company who uses that registered agent.  So I'm not

19    sure why this would be any different that I'm sending it

20    to an agent of Swirlate in the other situations.

21         **THE COURT:**  Right.  So is it fair to say that

22    your position is that, in this case, you obtained the

23    informed consent of Swirlate for you to follow the

24    directions to file and dismiss lawsuits in this Court?

25         **MR. BENNETT:**  Yes, I believe I did.

1      **THE COURT:**  Oh, you obtained that informed

2  consent.  I didn't finish my question, but I was going to

3  say:  Is it fair to say that you obtained that informed

4  consent only through Mavexar; is that right?

5      **MR. BENNETT:**  I obtained the consent through

6  their agent, Mavexar, yes.

7      **THE COURT:**  Okay.  So then, you never obtained

8  the informed consent directly from Swirlate?

9      **MR. BENNETT:**  Respectfully, Your Honor, no.  I

10  believe that is informed consent directly from Swirlate.

11  I don't see why the agent in this situation is any

12  different -- is functionally equivalent as an employee for

13  Swirlate, and so just like if I went to a company and was

14  talking to a manager of their business, and they wanted to

15  hire me, and I never communicated with the CEO, who may

16  sign documents, I don't see any different in this

17  situation, where I am using an agent who is the functional

18  equivalent of an employee, providing -- getting signed

19  consent from somebody.

20      For example, when I do settlement agreements, I

21  never actually receive -- talk to whoever signed the

22  agreement on behalf of the defendant, right, I rely on the

23  attorney.

24      **THE COURT:**  You don't have a fiduciary

25  relationship with that defendant.  That's an adversary.

1          **MR. BENNETT:**  But how do I authenticate the

2     signature on it, right, I receive a signature; I assume

3     it's proper and correct.  And so I did in this situation

4     also, that the authority I received from Swirlate was a

5     properly signed document and that their agent provided me

6     with the authority to go ahead and do certain things, and

7     then I specifically recall -- at some later date, I do

8     recall a conversation with Ms. Gamez, where she said,

9     "Yes."

10          **THE COURT:**  She said, "Yes," what?

11          **MR. BENNETT:**  That, yeah, Mavexar was working

12     for her.

13          **THE COURT:**  And she said -- and just so I'm

14     clear, you recall the conversation.  When did that

15     conversation occur?  Was it before or after you filed

16     these lawsuits?

17          **MR. BENNETT:**  Well, the more I -- the more

18     recent conversation I recall would have been after.

19          I'm saying I don't remember -- Ms. Gamez

20     engaged me, what, three, three and a half, four years ago,

21     I don't remember what.  I don't remember that far back.

22          I do remember conversations, vague

23     conversations that I've had in the past year and a half

24     that I had with Ms. Gamez.

25          **THE COURT:**  All right.  And that's where you've

1    injected into the -- into this proceeding kind of the

2    vagueness and ambiguity that I think would require, in

3    fairness to you, a production of documents.

4         I thought you might be prepared to come in here

5    and say, "I never spoke with Ms. Gamez before I filed

6    these lawsuits; I never spoke with her before I settled

7    these lawsuits; I never communicated with her; and I

8    communicated through Mavexar to obtain my directions."

9    But it sounds like you think you may have actually spoken

10   with her, and that's important.

11        Because if you spoke with her and you obtained

12   her informed consent to follow the directions of Mavexar,

13   that's one thing.  But if you only communicated through

14   Mavexar and you never communicated with Swirlate before

15   you filed or settled these lawsuits, then we have a

16   problem about informed consent.

17        So let's do this, I'll issue a short order just

18   requiring the production of these documents when you were

19   first retained, and I'll frame the order along the lines

20   that I did in the other cases.

21        And if it turns out that your conduct is no

22   different than Mr. Chong's or the other counsel that I

23   addressed in the **Nimitz opinion**, then it seems to me you

24   have not obtained informed consent.  And that's really the

25   issue.

1          You can't obtain informed consent of a

2    principal to follow the directions of an agent through the

3    agent.  I mean, it just guts the whole definition of what

4    informed consent of the principal means.  It makes the

5    rule and the requirement of informed consent to be

6    absolutely meaningless.  The whole point on the rule is to

7    make sure that the client is giving the informed consent.

8          So I will issue that order.  How long would you

9    like just to pull these documents together?

10          **MR. BENNETT:**  I mean, typically when a

11    defendant asks me, I say 30 days.

12          **THE COURT:**  All right.  That's fine.

13          **MR. BENNETT:**  Does Your Honor have any, I

14    guess, either opinions or decisions to explain your

15    interpretation of what "informed consent" means in terms

16    of --

17          **THE COURT:**  There's actually -- I quote it in

18    the opinion.  You can find it in the model rules, I think

19    that will take care of it.

20          **MR. BENNETT:**  Okay.

21          **THE COURT:**  There will be no such thing, under

22    your concept of informed consent.  It guts the whole

23    principle of getting informed consent of a principal for

24    the third party to act as its agent.  So...

25          **MR. BENNETT:**  So wouldn't you think it would be

 1   more -- I mean, if Your Honor isn't sure one way or the

 2   other at this point whether there is a violation of

 3   professional responsibility rules, wouldn't it be more

 4   appropriate to just refer me at this point to the Illinois

 5   Registration Disciplinary Commission and allow them to do

 6   their own investigation?

 7           **THE COURT:**  I'd be happy to do that.  But in

 8   fairness to you, this is the thing, at least twice during

 9   this colloquy you have suggested, or at least intimated,

10   that you, in fact, may have had communications directly

11   with Ms. Gamez before you filed the lawsuit, and that she

12   may have said yes, Mavexar is my agent, and you can deal

13   with me through Mavexar.

14           But you've kind of not addressed that directly

15   and you've left open that door.  And if, in fact, you can

16   show me, through your communications with Ms. Gamez, that

17   you obtained her informed consent, well, then, I don't

18   think you've acted in violation of the Rules of

19   Professional Conduct.

20           Now, that applies to both filing and settling

21   the lawsuits, but you need informed consent of the client.

22           **MR. BENNETT:**  Okay.  So, I mean, I would be

23   fine if right now, because this is a professional

24   responsibility issue, if you just referred it to the

25   Illinois State Bar, and I could provide them with

1    whatever -- if they think any information is needed, I can

2    provide them with that information and have them

3    investigate it.

4         **THE COURT:**  So you are effectively stipulating

5    that you never spoke with her directly before you filed

6    these lawsuits?

7         **MR. BENNETT:**  Respectfully, no, Your Honor.

8    What I'm saying is that if there's an ethics violation

9    asserted, that it should be addressed by the disciplinary

10   commission.

11        **THE COURT:**  Well, it's yes and no, and here's

12   why.  Because this Court, by way of its local rules, could

13   decide to institute formal disciplinary proceedings

14   without waiting for what the Illinois bar does.

15        But at least in my experience, it makes more

16   sense to wait in the first instance for the state bar

17   authorities to act.

18        So by just merely referring you, when I don't

19   know for sure and you don't know for sure whether you

20   obtained the informed consent directly from the client, it

21   seems to me that that's premature.

22        If you want to say to me:  Look, Judge, no

23   question, I didn't communicate with Gamez; I didn't think

24   I needed to.  I'm good with I sent my engagement letter to

25   Mavexar, and Mavexar does all the communications with the

1    clients, and that's the way we operate with Mavexar.

2              That's consistent with what the attorneys did

3    in the other cases, but you seem to be equivocating, and I

4    can't tell.

5              **MR. BENNETT:**  Your Honor, I don't specifically

6    remember in this case, and I don't know what the attorneys

7    do in the other cases.

8              **THE COURT:**  All right.  So let's find that out

9    because I don't want to refer you to the disciplinary

10   authority if it turned out you got the informed consent.

11   And because it also affects your good standing or whether

12   you have good standing in this Court, it's not something I

13   can just, you know, punt.

14             But that's why I'm saying I will give you 30

15   days, whatever you want, for you to ascertain or if you

16   want to -- if you go back and you look at your records,

17   and you want to write a letter and just confirm for me

18   that, in fact, you did not communicate directly with

19   Ms. Gamez before you filed and settled these lawsuits and

20   that you relied exclusively on communications that involve

21   Mavexar -- not involved, that were through Mavexar, well,

22   then yeah.  If that's the case, I don't need the

23   documents.

24             **MR. BENNETT:**  Okay.  And is it Your Honor's

25   position that a signed document from Ms. Gamez is not a

1    direct communication?

2            **THE COURT:**  It depends on how it was obtained.

3            **MR. BENNETT:**  I'm sorry.  In what ways would a

4    signed document not be valid?

5            **THE COURT:**  I don't really understand the

6    question.

7            **MR. BENNETT:**  Well, you seem to be saying it's

8    an invalid communication if it goes through Mavexar.  So

9    I'm trying to figure out, is it your position --

10           **THE COURT:**  I didn't use the word an "invalid

11   communication."

12           **MR. BENNETT:**  But then, I mean, if I received a

13   signed document from Ms. Gamez --

14           **THE COURT:**  How did you know it was Ms. Gamez

15   who signed the document?

16           **MR. BENNETT:**  Because she signed the document

17   and I had somebody -- the agent said that they know her,

18   and she signed document.

19           **THE COURT:**  Because you relied exclusively on

20   the agent, it sounds like.

21           **MR. BENNETT:**  There's no evidence -- and

22   Ms. Gamez agrees that she signed the document.  I don't

23   understand what the issue is.

24           **THE COURT:**  Ms. Gamez agrees -- when did you

25   make that determination?

1          **MR. BENNETT:** Well, as I said, I don't remember

2     three years ago.

3          **THE COURT:** Right. So that's what --

4          **MR. BENNETT:** That --

5          **THE COURT:** Let's just ascertain that. I will

6     have you --

7          **MR. BENNETT:** Certainly.

8          **THE COURT:** And I will issue an order just for

9     you to produce the communications you had with her before

10    you filed and dismissed these lawsuits, and then I will go

11    from there. All right? That's how I will do it.

12         So you want 30 days?

13         **MR. BENNETT:** Yes, Your Honor.

14         **THE COURT:** All right. It will be 30 days from

15    whenever I issue you the order, and I will do that in

16    short order, and then we will go from there.

17         Anything else?

18         Mr. Finger.

19         **MR. FINGER:** Nothing. Thank you.

20         **THE COURT:** All right. Thank you very much.

21    We are adjourned.

22              (The proceedings concluded at 1:53 p.m.)

23

24

25

1

2

3                          CERTIFICATE OF COURT REPORTER

4

5          I hereby certify that the foregoing is a true and

6     accurate transcript from my stenographic notes in the

7     proceeding.

8
                                    /s/ Bonnie R. Archer
9                                   Bonnie R. Archer
                                    Official Court Reporter
10                                    U.S. District Court

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**MR. BENNETT: [84]**

**MR. CHONG: [37]**   4/25
5/3 5/7 5/14 5/18 5/23
6/1 6/6 6/8 6/13 6/17
6/20 7/2 7/7 7/13 7/23
8/5 8/8 8/14 8/18 9/8
9/14 9/21 10/9 10/16
10/21 11/14 11/20 11/25
12/6 13/3 13/9 13/16
13/20 13/23 14/1 14/8

**MR. FINGER: [10]**   3/9
3/13 3/22 3/25 4/8 4/13
4/16 5/11 12/19 40/19

**THE COURT: [133]**

---

**/**

**/s [1]**   41/8

---

**1**

**12:57 p.m [1]**   19/1
**13 [4]**   8/1 8/3 8/10
8/11
**17 [1]**   2/3
**1:06 [2]**   2/3 3/4
**1:49 p.m [1]**   18/21
**1:53 [1]**   40/22

---

**2**

**20 [1]**   25/6
**2022 [1]**   16/4
**2024 [1]**   2/3
**22-235-CFC [1]**   1/4
**22-249-CFC [1]**   1/10
**22-420-CFC [1]**   1/16
**22-422-CFC [1]**   1/22
**23 [3]**   18/20 18/21 19/1
**2:00, so [1]**   3/18
**2:10 [1]**   3/17
**2:28 p.m [1]**   18/20

---

**3**

**30 [4]**   35/11 38/14
40/12 40/14
**374 [1]**   25/6
**386 [1]**   25/6

---

**8**

**844 [1]**   2/6

---

**9**

**918 [1]**   25/5

---

**A**

**about [11]**   4/20 8/24
12/10 15/11 16/9 19/6
19/8 20/15 25/6 30/15
34/16
**absolutely [1]**   35/6
**accommodate [1]**   4/2
**accomplished [1]**   9/1
**according [1]**   26/8
**accurate [1]**   41/6
**act [2]**   35/24 37/17
**acted [2]**   28/4 36/18
**action [4]**   14/4 19/25
23/7 27/20
**actions [5]**   9/2 9/4 9/6
21/15 27/23
**actually [9]**   4/1 10/11
15/10 17/12 26/5 30/7
32/21 34/9 35/17
**address [3]**   3/10 16/16
16/17

---

**addressed [3]**   34/23
6/1 16/18
**adjourned [1]**   40/21
**admit [1]**   30/12
**admitted [2]**   22/21 24/6
**adversary [1]**   32/25
**affects [1]**   38/11
**after [5]**   11/11 28/21
28/22 33/15 33/18
**afternoon [3]**   14/12
14/13 19/23
**agency [1]**   12/10
**agent [40]**   5/8 6/6 6/8
7/7 7/9 7/12 7/13 10/18
11/1 11/16 12/11 22/1
22/1 25/9 26/2 26/11
26/25 27/6 27/10 30/3
30/6 30/7 30/19 31/6
31/14 31/15 31/16 31/17
31/18 31/20 32/6 32/11
32/17 33/5 35/2 35/3
35/24 36/12 39/17 39/20
**agents [3]**   21/8 24/17
26/4
**ago [3]**   20/24 33/20
40/2
**agree [1]**   29/1
**agreement [21]**   5/23 6/1
6/3 6/5 11/15 11/21
11/22 11/25 13/16 13/19
13/21 21/4 21/5 22/3
30/14 30/16 30/18 30/22
30/24 30/25 32/22
**agreements [1]**   32/20
**agrees [2]**   39/22 39/24
**ahead [1]**   33/6
**all [32]**   3/5 4/1 4/9
7/4 7/15 10/14 12/6
13/10 13/24 14/9 14/21
18/22 19/2 19/10 21/11
22/4 22/9 24/3 24/11
24/21 26/6 27/2 28/13
29/18 31/10 33/25 35/12
37/25 38/8 40/11 40/14
40/20
**allow [1]**   36/5
**alluded [1]**   19/23
**alone [1]**   11/4
**along [1]**   34/19
**already [1]**   7/17
**also [9]**   13/16 17/10
17/15 18/15 20/9 26/2
27/23 33/4 38/11
**alternative [1]**   3/18
**always [1]**   30/11
**am [6]**   10/10 12/8 12/23
13/3 14/16 32/17
**ambiguity [1]**   34/2
**among [2]**   18/24 19/2
**Andrew [3]**   17/3 17/5
19/1
**answer [5]**   3/20 6/19
10/7 10/12 30/9
**answers [2]**   22/15 29/22
**any [32]**   5/21 6/9 7/15
7/24 8/5 10/12 11/5
12/24 14/4 16/4 19/6
19/11 19/21 20/2 20/2
20/10 20/23 21/1 21/9
22/25 23/7 23/12 23/24
24/20 27/20 27/23 30/6
31/19 32/11 32/16 35/13
37/1
**anybody [1]**   12/17

---

**anything [6]**   16/9 19/8
19/16 27/10 30/6 40/2
**apologize [1]**   3/9
**appeal [1]**   29/5
**appear [2]**   23/17 24/11
**appearance [3]**   4/6
10/14 23/8
**APPEARANCES [1]**   2/11
**appears [2]**   19/24 26/16
**applies [2]**   8/12 36/20
**apply [1]**   12/14
**apprise [1]**   12/12
**appropriate [2]**   11/6
36/4
**approval [2]**   11/9 19/4
**Archer [2]**   41/8 41/9
**are [33]**   3/7 3/11 4/10
8/11 9/6 10/7 10/12
10/20 11/2 11/12 11/18
12/2 12/4 14/3 14/20
15/10 15/15 15/19 16/2
17/21 19/15 22/23 23/11
24/10 24/19 24/25 24/25
27/11 27/13 28/1 29/2
37/4 40/21
**argue [1]**   12/3
**around [1]**   3/18
**ARSHT [1]**   2/21
**as [23]**   4/10 4/10 8/8
10/13 10/13 13/1 17/24
19/22 21/12 21/13 21/25
22/1 22/23 24/24 26/6
27/16 27/24 28/4 29/13
31/17 32/12 35/24 40/1
**ascertain [12]**   10/5
10/15 11/23 20/6 22/6
23/6 23/6 25/17 25/25
28/4 38/15 40/5
**ascertained [1]**   27/15
**ascertaining [1]**   14/6
**ask [4]**   5/20 6/23 6/24
12/24
**asked [2]**   5/20 6/24
**asks [1]**   35/11
**asserted [1]**   37/9
**assist [1]**   7/24
**associated [2]**   26/6
26/21
**assume [3]**   4/19 19/20
33/2
**Assuming [1]**   17/1
**assurances [1]**   22/25
**assure [3]**   13/13 22/13
28/11
**assured [1]**   22/14
**assuring [1]**   22/21
**attaching [1]**   19/3
**attempt [1]**   27/23
**attend [1]**   4/12
**attorney [6]**   24/24
24/24 25/8 26/12 26/13
32/23
**attorney's [1]**   25/9
**attorney/client [2]**
24/24 25/8
**attorneys [3]**   24/11
38/2 38/6
**authenticate [1]**   33/1
**authorities [3]**   27/22
29/20 37/17
**authority [5]**   21/5
26/24 33/4 33/6 38/10
**aware [3]**   17/14 19/15
24/10

---

**away [1]**   18/14

---

**B**

**back [5]**   22/2 23/4
29/11 33/21 38/16
**Backertop [1]**   14/17
**bar [6]**   7/18 15/20
29/20 36/25 37/14 37/16
**based [3]**   4/19 11/4
22/14
**basically [4]**   13/10
15/13 22/13 28/10
**be [29]**   3/5 8/2 8/10
9/19 10/23 12/9 12/18
13/6 15/8 25/21 26/2
26/22 27/15 29/1 29/2
29/4 31/19 34/4 35/5
35/21 35/25 36/3 36/7
36/22 37/9 38/3 39/4
39/7 40/14
**because [17]**   7/19 9/21
10/23 11/7 19/24 20/7
22/14 23/18 24/25 26/3
34/11 36/23 37/12 38/9
38/11 39/16 39/19
**been [2]**   21/9 26/16
33/18
**before [26]**   2/8 5/6
5/16 5/22 6/4 6/11 7/1
9/12 10/6 12/16 13/7
13/19 14/4 18/23 20/21
22/8 22/22 29/5 33/15
34/5 34/6 34/14 36/11
37/5 38/19 40/9
**begin [1]**   3/6
**beginning [1]**   3/3
**behalf [10]**   3/13 14/5
20/1 20/8 21/2 21/15
23/17 23/22 27/21 32/22
**being [1]**   24/25
**believe [7]**   4/16 11/5
13/23 14/23 16/1 31/25
32/10
**believes [2]**   23/25 29/3
**bell [1]**   16/4
**BENNETT [12]**   2/18 3/8
13/4 13/5 13/8 13/11
13/22 14/5 14/6 14/10
14/13 14/14
**better [1]**   12/13
**between [1]**   6/14
**beyond [1]**   3/17
**Bodepudi [2]**   18/9 18/12
**Bonnie [2]**   41/8 41/9
**both [1]**   36/20
**Brandon [1]**   18/13
**breach [1]**   24/20
**brief [1]**   3/18
**brought [1]**   15/5
**Burns [2]**   17/10 17/11
**business [1]**   32/14

---

**C**

**C.A [4]**   1/4 1/10 1/16
1/22
**call [2]**   28/8 28/16
**came [2]**   21/7 30/4
**CAMERON [1]**   2/21
**can [20]**   3/18 7/16 9/17
11/10 15/11 15/11 22/6
23/6 23/6 25/3 25/4
25/25 27/8 28/4 29/1
35/18 36/12 36/15 37/1
38/13

**C**

can't [10]   6/18 10/23 15/4 22/25 23/3 25/23 29/7 29/8 35/1 38/4
cannot [2]   14/1 26/11
care [1]   35/19
case [13]   9/6 10/1 10/2 11/3 11/6 15/7 15/18 24/18 24/22 26/20 31/22 38/6 38/22
cases [46]
cause [1]   9/8
CEO [1]   32/15
certain [3]   14/4 23/4 33/6
certainly [2]   8/22 40/7
CERTIFICATE [1]   41/3
certify [1]   41/5
CFC [4]   1/4 1/10 1/16 1/22
chain [2]   16/24 21/10
characterization [1] 24/17
characterize [1]   9/16
Chaudhari [3]   15/24 16/24 19/2
Chaudhari's [1]   19/4
CHONG [13]   2/13 2/13 3/8 4/6 4/21 4/24 5/5 5/9 12/8 12/16 12/23 18/6 19/16
Chong's [1]   34/22
circuit [3]   24/19 24/22 29/10
cited [1]   15/15
CLARK [1]   2/21
clear [3]   13/6 19/24 33/14
client [35]   5/18 5/19 6/21 6/22 6/23 7/11 7/20 11/9 11/12 11/20 11/24 11/24 13/12 13/14 13/17 14/7 20/1 20/4 20/10 20/11 20/14 20/16 22/8 23/1 24/24 25/8 25/16 26/16 26/21 27/4 28/21 28/23 35/7 36/21 37/20
client's [2]   25/14 26/19
clients [2]   25/9 38/1
cocounsel [1]   13/11
colloquy [1]   36/9
COLM [1]   2/8
come [3]   14/10 31/2 34/4
comes [1]   16/15
commenced [1]   3/3
commission [2]   36/5 37/10
communicate [8]   7/9 21/25 24/18 25/20 26/4 26/11 37/23 38/18
communicated [10]   13/8 14/5 17/24 21/23 30/8 32/15 34/7 34/8 34/13 34/14
communicating [1]   20/4
communication [11]   5/7 7/2 10/17 11/15 12/1 20/2 29/24 31/13 39/1 39/8 39/11
communications [29]   5/5 5/16 5/21 6/9 6/25 7/14

9/11 10/6 10/25 12/25 13/1 13/23 13/24 15/4 23/1 23/4 23/15 24/25 24/25 25/22 26/14 27/14 27/19 28/18 28/19 29/14 29/16 31/10 36/10 36/16 37/25 38/20 40/9
company [2]   31/18 32/13
complaint [1]   31/15
complied [2]   22/23 28/11
comply [2]   24/3 24/12
comported [1]   22/7
concept [1]   35/22
concluded [1]   40/22
concludes [1]   12/20
conduct [14]   11/6 11/8 12/13 20/9 22/24 23/8 23/18 23/23 24/4 24/12 27/3 28/12 34/21 36/19
confidential [3]   8/10 29/3 29/4
confidentiality [1]   8/2
confirm [2]   28/18 38/17
confirmed [1]   29/13
CONNOLLY [1]   2/8
consent [48]
consequential [1]   9/18
consistent [3]   9/4 9/6 38/2
continued [1]   23/8
conversation [6]   6/2 20/24 33/8 33/14 33/15 33/18
conversations [4]   10/17 13/5 33/22 33/23
conversed [1]   5/25
copying [2]   18/22 19/2
correct [13]   3/8 3/25 4/7 4/8 4/15 4/16 5/13 5/14 11/19 14/8 28/2 28/7 33/3
could [7]   14/10 25/2 26/4 29/10 30/5 36/25 37/12
counsel [23]   2/14 2/16 2/18 2/22 3/6 4/5 7/18 9/2 10/11 11/7 12/9 13/4 13/5 13/17 14/24 15/23 16/20 17/6 17/15 19/16 19/18 19/25 34/22
court [27]   1/1 2/8 7/24 8/12 8/13 12/14 14/4 19/5 20/7 21/3 22/22 23/8 23/17 24/3 24/11 26/9 27/20 27/22 27/24 28/12 29/9 31/24 37/12 38/12 41/3 41/9 41/10
Court's [1]   23/13
courtroom [1]   3/3
criminal [2]   9/24 10/1
Curfman [3]   17/4 17/5 19/1

**D**

date [1]   33/7
dated [2]   18/20 18/25
DAVID [4]   2/16 2/18 3/13 13/4
days [4]   35/11 38/15 40/12 40/14
dbennett [1]   16/16
deal [3]   12/22 30/10 36/12
dealt [2]   16/12 30/11

decide [1]   37/13
decided [1]   5/8
decision [2]   24/15 35/6
deem [1]   28/16
defendant [7]   1/7 1/12 1/19 1/25 32/22 32/25 35/11
Defendants [1]   2/22
definitely [1]   21/7
definition [1]   35/3
Deitz [2]   18/3 18/5
DELAWARE [5]   1/2 2/6 7/18 8/1 31/15
delegate [1]   26/24
depends [2]   3/21 39/2
designation [2]   9/20 28/10
details [1]   16/13
determination [1]   39/25
did [56]
didn't [14]   5/20 6/23 8/21 9/2 11/13 23/22 27/1 27/1 30/22 30/24 32/2 37/23 37/23 39/10
different [7]   30/3 30/6 31/14 31/19 32/12 32/16 34/22
Dina [5]   12/25 20/18 26/9 26/22 29/14
direct [19]   5/21 6/25 7/2 9/11 10/5 10/16 10/20 10/23 10/25 11/9 11/14 11/15 12/1 12/24 20/2 27/13 28/17 31/13 39/1
direction [1]   11/17
directionIP.com [1] 16/16
directions [16]   7/12 7/22 11/10 13/14 13/14 21/20 23/2 23/20 25/15 27/9 28/21 28/23 31/24 34/8 34/12 35/2
directly [19]   4/21 5/6 5/16 5/25 6/10 7/11 13/25 21/23 28/21 29/14 30/10 31/13 32/8 32/10 36/10 36/14 37/5 37/20 38/18
disagree [1]   24/17
disciplinary [14]   7/18 8/1 9/2 9/23 10/2 10/11 11/7 12/8 19/17 27/22 36/5 37/9 37/13 38/9
disclosure [2]   13/1 26/8
discuss [1]   15/22
discussing [1]   16/2
discussions [1]   4/21
dismiss [2]   23/21 31/24
dismissed [2]   28/20 40/10
DISTRICT [6]   1/1 1/2 2/8 8/12 23/13 41/10
do [44]
document [8]   33/5 38/25 39/4 39/13 39/15 39/16 39/18 39/22
documentation [1]   22/6
documents [11]   21/13 23/4 23/6 23/10 25/25 29/1 32/16 34/3 34/18 35/9 38/23
does [7]   16/4 19/6 25/7 27/25 35/13 37/14 37/25

**doing** [1]   13/13
don't [49]
done [3]   8/22 9/5 26/17
door [1]   36/15
down [1]   12/16
draft [2]   19/3 22/12
drafts [1]   18/23
during [1]   36/8

**E**

e-mail [14]   6/4 15/13 15/14 16/15 16/16 16/17 16/24 17/25 18/1 18/4 18/6 18/25 21/7 21/10
e-mailed [1]   30/6
e-mails [10]   14/15 15/3 15/7 15/9 15/11 15/22 17/11 18/15 18/20 21/1
earlier [1]   19/23
easy [1]   6/15
Edge [7]   18/3 18/9 18/14 20/5 23/20 27/20 29/17
educated [1]   12/10
effectively [1]   37/4
either [3]   23/12 27/19 35/14
else [3]   12/17 28/22 40/17
email [1]   18/10
employee [2]   32/12 32/18
end [2]   22/24 23/9
engage [1]   7/21
engaged [2]   20/9 33/20
engagement [4]   21/5 22/3 31/3 37/24
English [2]   10/19 10/22
entered [1]   4/6
entities [1]   26/7
entity [3]   13/2 26/3 27/20
equivalent [2]   32/12 32/18
equivocating [1]   38/3
ESQ [4]   2/13 2/16 2/18 2/21
establish [1]   16/8
ethical [1]   11/8
ethically [2]   7/17 28/4
ethics [9]   22/7 22/17 26/15 27/2 28/1 28/1 28/6 28/9 37/8
ever [4]   13/24 17/13 29/9 30/10
evidence [1]   39/21
evidentiary [1]   4/14
exactly [1]   9/4
example [2]   16/14 32/20
except [2]   23/2 27/10
exchange [1]   18/23
exclusively [7]   21/14 21/17 23/20 27/18 29/16 38/20 39/19
experience [1]   37/15
explain [2]   7/16 35/14
explained [1]   19/22
explicitly [1]   17/19
extent [2]   29/2 29/3

**F**

F.2d [1]   25/6
fact [7]   9/3 22/7 22/15 23/1 36/10 36/15 38/18

**F**

fair [5]   14/3 31/9
31/11 31/21 32/3
fairness [2]   34/3 36/8
familiar [5]   14/18
14/20 15/16 15/25 17/21
familiarity [2]   16/8
16/11
far [2]   10/13 33/21
Federal [1]   8/13
fiduciary [1]   32/24
figure [1]   39/9
file [13]   7/5 11/9
11/18 19/4 19/4 20/11
21/2 22/16 23/16 23/21
29/15 29/25 31/24
filed [22]   5/6 5/16
5/22 6/11 7/1 9/12 10/6
13/1 13/7 13/19 19/25
20/7 20/22 26/8 28/19
33/15 34/5 34/15 36/11
37/5 38/19 40/10
files [1]   29/12 29/12
filing [4]   5/24 20/3
22/8 36/20
final [1]   19/4
find [3]   9/10 35/18
38/8
finding [1]   9/3
fine [2]   35/12 36/23
FINGER [6]   2/15 2/16
3/11 3/13 12/18 40/18
finish [1]   32/2
FIRM [1]   2/13
first [6]   4/3 21/24
28/17 31/2 34/19 37/16
follow [4]   27/9 31/23
34/12 35/2
following [1]   13/14
follows [1]   4/10
foregoing [1]   41/5
formal [1]   37/13
forward [1]   14/10
frame [1]   34/19
frankly [2]   6/16 29/10
free [1]   27/11
front [1]   18/1
functional [1]   32/17
functionally [1]   32/12
fundamental [1]   11/8
fundamentals [1]   11/8
future [1]   27/23

**G**

Gamez [35]   12/25 13/25
20/18 20/21 21/2 21/6
21/24 23/16 25/18 26/9
26/22 26/23 27/14 27/18
29/14 29/24 30/2 30/8
30/11 30/14 31/5 31/10
33/8 33/19 33/24 34/5
36/11 36/16 37/23 38/19
38/25 39/13 39/14 39/22
39/24
Gamez's [1]   21/19
Gautham [1]   18/9
gave [2]   21/5 25/19
generally [1]   16/6
George [1]   16/19
get [11]   11/9 13/7 21/2
21/12 22/13 25/14 25/16
25/24 30/18 30/20 31/4
getting [2]   32/18 35/23

give [3]   16/15 29/7
38/18
given [3]   16/9 22/15
29/8
giving [2]   29/24 35/7
go [9]   3/16 3/17 3/20
23/4 29/11 33/6 38/16
40/10 40/16
goes [2]   3/21 39/8
going [19]   3/15 3/17
8/18 8/20 8/20 14/19
12/8 12/15 12/23 22/4
22/5 23/9 28/15 28/16
32/2
good [5]   14/12 14/13
37/24 38/11 38/12
got [3]   6/5 26/7 38/10
grab [1]   15/10
Grand [1]   25/5
GRANITE [1]   1/24
guarantee [2]   29/7 30/5
guess [4]   7/23 26/1
28/9 35/14
guts [2]   35/3 35/22

**H**

hac [2]   22/21 24/7
had [24]   4/10 4/21 5/7
5/23 6/1 7/13 7/24 9/5
9/11 10/5 10/9 10/17
13/5 13/8 13/16 16/11
27/13 29/13 30/8 33/23
33/24 36/10 39/17 40/9
half [2]   33/20 33/23
happy [1]   36/7
has [4]   8/8 11/20 24/23
26/6
hasn't [1]   26/16
have [60]
haven't [2]   16/12 25/21
having [5]   10/25 20/2
21/12 28/18 28/22
he [10]   11/20 11/21
12/9 12/12 17/6 17/9
17/14 17/19 18/7 18/15
head [1]   14/2
heard [1]   12/18
hearing [9]   2/4 3/15
4/14 9/9 9/15 9/17 9/20
19/13 27/12
hearings [3]   8/2 8/4
8/8
her [17]   21/2 21/24
22/1 25/20 26/24 26/24
30/11 33/12 34/6 34/7
34/10 34/11 34/12 36/17
37/5 39/17 40/9
here [15]   4/14 7/19
7/24 8/3 9/1 10/14
11/13 13/4 15/2 18/20
25/11 25/17 26/17 28/14
34/4
here's [2]   16/14 37/11
hereby [1]   41/5
him [15]   5/6 5/25 6/4
15/25 16/21 16/22 16/23
16/25 17/4 17/13 17/21
17/24 18/11 18/16 18/16
himself [1]   12/12
hire [2]   26/11 32/15
his [1]   13/12
hold [1]   15/10
holds [1]   24/19

honestly [1]   15/4
Honor [44]
Honor's [3]   26/10 27/7
38/24
HONORABLE [1]   2/8
housekeeping [1]   3/10
how [29]   3/15 3/21 4/23
5/1 7/4 7/8 7/10 7/16
9/16 16/2 21/19 23/22
25/11 27/8 28/15 28/16
29/21 30/1 30/5 30/17
30/18 30/21 31/1 31/4
33/1 35/8 39/2 39/14
40/11
Howard [2]   17/19 17/23
Howard Wernow [1]   17/19
however [1]   6/21
huh [1]   4/13

**I**

I'd [4]   22/2 23/5 28/8
36/7
I'll [4]   15/9 16/14
34/17 34/19
I'm [48]
I've [7]   4/20 4/20 7/17
8/23 19/2 29/8 33/23
i.e [1]   29/17
identified [1]   12/25
Illinois [6]   15/19
27/22 29/20 36/4 36/25
37/14
important [1]   9/19
34/10
impossible [1]   26/24
INC [3]   1/6 1/11 1/24
included [4]   18/6 18/15
21/7 21/9
includes [2]   16/24 17/3
including [1]   20/8
indirect [1]   30/15
indirectly [1]   31/11
individual [1]   5/2
individuals [1]   18/22
information [10]   11/5
23/25 24/18 26/11 28/2
28/3 29/6 29/18 37/1
37/2
informed [44]
initially [1]   3/10
injected [1]   34/1
instance [5]   18/25
21/24 28/17 31/2 37/16
instead [2]   20/4 29/16
institute [1]   37/13
instructions [1]   29/25
intent [1]   14/7
interpretation [1]
35/15
intimated [1]   36/9
invalid [2]   39/8 39/10
investigate [1]   37/3
investigation [6]   10/1
22/18 25/5 28/7 28/9
36/6
involve [1]   38/20
involved [1]   38/21
involving [1]   15/14
IP [14]   1/3 1/18 18/3
18/9 18/14 20/5 20/17
20/19 21/3 23/20 26/2
26/3 27/19 29/17
is [117]
isn't [1]   36/1

issue [12]   3/10 4/18
7/3 18/3 21/22 22/14
34/25 35/8 36/24 39/23
40/8 40/15
issued [1]   16/3
it [86]
it's [30]   3/17 3/19
3/20 6/15 6/15 6/20
6/24 11/1 11/5 11/7
11/25 12/1 15/4 16/11
16/19 16/23 16/24 17/1
24/14 26/7 26/10 26/13
29/21 31/3 31/9 31/16
33/3 37/11 38/12 39/7
its [9]   7/6 7/9 7/12
7/13 23/22 26/21 29/15
35/24 37/12

**J**

January [1]   2/3
JIMMY [1]   2/13
job [1]   29/21
Judge [2]   2/8 37/22
jurisdiction [1]   12/14
Jury [1]   25/5
just [41]   3/21 4/22
7/23 8/18 9/1 9/10 9/14
9/15 9/21 9/25 10/2
10/24 12/10 12/16 13/6
15/9 16/7 16/14 20/4
21/12 24/23 25/2 25/23
26/2 28/18 29/10 29/13
29/19 30/25 32/13 33/13
34/17 35/3 35/9 36/4
36/24 37/18 38/13 38/17
40/5 40/8

**K**

keep [1]   9/22
kept [2]   29/2 29/4
kind [4]   7/23 29/21
34/1 36/14
King [1]   2/6
know [45]
knowledge [1]   19/21

**L**

LABS [1]   1/24
LANTRONIX [1]   1/11
LaPray [2]   18/14 18/17
last [1]   6/24
later [1]   33/7
latest [1]   19/3
law [3]   2/13 24/19
25/11
lawsuit [6]   10/6 11/10
23/16 23/21 23/23 36/11
lawsuits [28]   5/17 6/11
7/1 7/6 9/13 13/19 20/1
20/1 20/3 20/11 20/12
20/22 21/3 22/9 22/16
28/20 28/20 29/15 29/25
31/24 33/16 34/6 34/7
34/15 36/21 37/6 38/19
40/10
lawyer [3]   22/22 27/24
28/4
lawyers [2]   11/8 15/14
lead [2]   13/5 14/24
learn [2]   10/19 10/22
least [4]   16/12 36/8
36/9 37/15
left [1]   36/15
legal [2]   26/3

**I**

let **[6]**   12/16 13/6 15/9
15/10 15/11 29/20
let's **[7]**   3/6 12/22
13/7 20/15 34/17 38/8
40/5
letter **[8]**   29/12 30/2
30/14 31/1 31/3 31/5
37/24 38/17
LICENSING **[2]**   1/15 1/21
like **[9]**   9/5 12/9 23/5
28/1 30/9 32/13 34/9
35/9 39/20
limited **[1]**   28/13
lines **[1]**   34/19
Linh **[2]**   18/3 18/5
Linh Deitz **[2]**   18/3
18/5
litigation **[1]**   25/1
litigations **[2]**   14/16
14/16
LLC **[9]**   1/3 1/8 1/15
1/18 1/21 2/15 20/17
20/19 21/3
local **[8]**   13/3 13/17
23/13 23/24 24/2 24/7
24/10 37/12
locations **[1]**   25/4
long **[2]**   3/15 35/8
look **[7]**   11/2 22/2 23/4
27/11 29/12 37/22 38/16
looked **[1]**   28/19

**M**

made **[2]**   19/23 29/5
mail **[16]**   6/4 15/13
15/14 16/15 16/16 16/17
16/24 17/25 18/1 18/4
18/6 18/25 21/7 21/10
30/4 30/5
mailed **[1]**   30/6
mails **[10]**   14/15 15/3
15/7 15/9 15/11 15/22
17/11 18/15 18/20 21/1
make **[4]**   3/18 9/1 35/7
39/25
makes **[2]**   35/4 37/15
manager **[2]**   6/10 32/14
managing **[10]**   4/11 5/13
9/12 13/2 20/19 23/16
25/19 26/2 26/7 26/22
matter **[2]**   8/15 8/19
matters **[1]**   12/21
Mavexar **[33]**   20/4 21/8
21/15 21/18 21/20 21/22
21/25 23/2 23/3 23/20
25/20 25/23 27/19 29/17
30/11 30/19 30/21 31/7
31/11 32/4 32/6 33/11
34/8 34/12 34/14 36/12
36/13 37/25 37/25 38/1
38/21 38/21 39/8
may **[6]**   3/9 21/9 32/15
34/9 36/10 36/12
maybe **[2]**   16/5 25/24
me **[35]**   7/25 8/6 8/12
9/10 10/5 10/7 11/12
11/20 12/16 13/4 13/6
15/10 18/2 19/4 21/5
22/15 22/25 23/3 24/21
25/17 29/12 29/24 30/6
30/15 32/15 33/5 33/20
34/23 35/11 36/4 36/13
36/16 37/17 37/22 38/17

**mean [13]**   14/22 15/4
16/7 16/22 16/23 16/3
28/9 31/16 35/3 35/10
36/1 36/22 39/12
meaning **[1]**   8/17
meaningless **[1]**   35/6
means **[3]**   12/11 15/4
35/15
Mellaconic **[1]**   14/17
member **[5]**   4/11 5/2
5/13 9/12 15/19
mentioned **[3]**   9/23
17/20 19/3
merely **[2]**   30/25 37/18
might **[1]**   34/4
mind **[1]**   15/13
MOBILITY **[1]**   1/18
model **[5]**   24/3 24/12
27/3 28/11 35/18
moment **[1]**   15/6
more **[7]**   11/5 30/7
33/17 33/17 36/1 36/3
37/15
MORRIS **[1]**   2/21
Mr **[16]**   3/8 4/21 4/24
5/5 12/8 12/16 12/23
13/8 13/11 13/22 14/5
14/6 14/10 14/13 18/12
34/22
Mr. **[28]**   3/8 3/11 4/6
5/3 5/9 5/10 5/12 5/18
5/21 5/24 6/2 6/6 6/10
6/21 6/25 7/3 12/18
13/5 14/14 15/24 17/11
18/6 18/17 18/21 18/22
19/3 19/6 40/18
Mr. Bennett **[2]**   13/5
14/14
Mr. Burns **[1]**   17/11
Mr. Chong **[5]**   3/8 4/6
5/9 18/6 19/16
Mr. Finger **[3]**   3/11
12/18 40/18
Mr. LaPray **[1]**   18/17
Mr. Nguyen **[10]**   5/10
5/12 5/18 5/21 5/24 6/2
6/10 6/21 6/25 7/3
Mr. Nguyen's **[1]**   6/6
Mr. Papool **[2]**   15/24
19/3
Mr. Pazuniak **[2]**   18/21
18/22
Mr. Son **[1]**   5/3
Ms. **[30]**   13/25 20/21
21/2 21/6 21/19 21/24
23/16 25/18 26/23 27/14
27/18 29/24 30/2 30/8
30/11 30/14 31/5 31/10
33/8 33/19 33/24 34/5
36/11 36/16 38/19 38/25
39/13 39/14 39/22 39/24
Ms. Gamez **[29]**   13/25
20/21 21/2 21/6 21/24
23/16 25/18 26/23 27/14
27/18 29/24 30/2 30/8
30/11 30/14 31/5 31/10
33/8 33/19 33/24 34/5
36/11 36/16 38/19 38/25
39/13 39/14 39/22 39/24
Ms. Gamez's **[1]**   21/19
much **[1]**   40/20
my **[20]**   3/16 4/9 4/19
5/9 5/18 5/19 6/21 6/22
9/15 11/20 14/1 21/4

29/2 31/3 32/2 34/8
32/6 33/9 37/9 40/6/4
6/7 12/7 12/20 13/6
13/18 16/23 17/14 19/15
19/22 20/15 23/24 24/5
24/14 24/16 27/25 30/20
31/4 31/9 32/7 35/20
36/22 38/24
myself **[3]**   22/14 22/21
28/11

**N**

name **[7]**   4/23 5/2 6/12
7/1 7/6 14/14 29/16
natural **[1]**   26/6 26/21
necessarily **[2]**   16/13
30/5
necessary **[1]**   25/1
need **[11]**   10/11 10/19
10/22 11/5 12/18 22/13
23/7 26/15 29/18 36/21
38/22
needed **[3]**   10/14 37/1
37/24
needs **[4]**   8/2 12/9
12/12 27/14
negotiate **[1]**   7/11
negotiations **[1]**   7/21
never **[11]**   21/23 29/8
29/13 32/7 32/15 32/21
34/5 34/6 34/7 34/14
37/5
Nguyen **[14]**   4/22 5/3
5/4 5/10 5/11 5/12 5/18
5/21 5/24 6/2 6/10 6/21
6/25 7/3
Nguyen's **[1]**   6/6
NICHOLS **[1]**   2/21
Nimitz **[16]**   14/17 15/15
15/16 16/20 19/11 34/23
no **[30]**   1/4 1/10 1/16
1/22 4/21 6/16 6/20
10/7 12/4 12/19 14/19
14/22 19/9 19/10 20/13
21/17 26/5 26/13 27/16
29/8 30/3 31/12 31/14
32/9 34/21 35/21 37/7
37/11 37/22 39/21
noncommittal **[1]**   29/22
not **[49]**
note **[2]**   25/6 27/23
notes **[1]**   41/6
Nothing **[1]**   40/19
now **[9]**   7/17 8/8 8/15
10/4 16/4 22/22 27/13
36/20 36/23
nub **[1]**   21/12
number **[3]**   15/14 18/19
20/7

**O**

obtain **[23]**   7/4 7/8
7/10 7/11 7/20 12/12
13/18 13/21 20/10 21/19
21/24 22/8 23/15 23/19
26/15 27/4 27/8 27/17
29/14 30/1 30/17 34/8
35/1
obtained **[13]**   22/15
23/1 28/22 31/22 32/1
32/3 32/5 32/7 34/11
34/24 36/17 37/20 39/2
obtaining **[2]**   11/11
28/21
occur **[1]**   33/15
occurred **[1]**   31/10
ODC **[7]**   7/25 8/6 8/8
8/14 8/15 8/19 8/23
off **[2]**   14/1 25/2
Official **[1]**   41/9

**Qh [2]**   14/25 32/1

name **[7]**   4/23 5/2 6/12

okay **[29]**
one **[10]**   15/10 15/11
16/15 17/9 17/9 17/12 20/25
25/21 26/20 34/13 36/1
only **[8]**   3/24 4/5 11/11
26/4 26/20 28/20 32/4
34/13
open **[1]**   36/15
operate **[1]**   38/1
opinion **[5]**   14/23 17/18
19/23 34/23 35/18
opinions **[7]**   8/23 15/15
15/16 17/15 17/20 19/11
35/14
opportunity **[3]**   7/16
11/3 29/5
opposed **[1]**   21/12
order **[16]**   7/20 9/21
13/13 19/13 19/20 22/12
23/12 23/25 25/14 26/13
34/17 34/19 35/8 40/8
40/15 40/16
orders **[1]**   16/3
other **[29]**   4/20 8/23
9/5 9/7 9/22 10/12
14/15 14/22 15/7 15/23
15/23 16/3 16/9 19/2
19/16 19/19 20/9 20/25
21/8 21/13 27/16 27/20
28/17 31/20 34/20 34/22
36/2 38/3 38/7
our **[6]**   7/19 12/13 24/2
24/10 27/22 27/24
out **[7]**   9/3 9/10 27/17
34/21 38/8 38/10 39/9
over **[2]**   3/20 8/6
own **[1]**   36/6
owner **[11]**   4/11 5/2
5/12 6/10 9/12 13/1
20/19 23/15 25/18 26/7
26/21

**P**

p.m **[6]**   2/3 3/4 18/20
18/21 19/1 40/22
PA **[1]**   2/13
Papool **[4]**   15/24 16/24
19/1 19/3
parallel **[10]**   8/23
14/16 14/16 16/9 17/7
17/16 17/20 19/6 19/7
19/17
part **[2]**   9/25 17/24
participants **[1]**   18/24
participate **[1]**   27/24
participated **[1]**   19/16
particular **[1]**   27/2
partner **[7]**   13/2 20/19
23/16 25/19 26/2 26/7
26/22
party **[13]**   7/22 11/11
11/17 11/17 23/21 25/7
25/8 25/15 26/14 27/19
28/24 29/17 35/24
pass **[1]**   24/22
passed **[1]**   18/14
past **[1]**   33/23

**P**

Pazuniak [3]   16/19
18/21 18/22
people [1]   19/2
per [1]   8/10
permission [2]   21/2
29/24
person [5]   4/22 5/6
17/1 26/6 26/21
pick [1]   3/16
place [2]   8/9 12/2
Plaintiff [6]   1/4 1/9
1/16 1/22 2/16 2/18
Plaintiffs [1]   2/14
plans [1]   3/18
platform [1]   7/17
please [2]   3/5 14/11
point [8]   7/25 16/11
20/2 20/10 29/19 35/6
36/2 36/4
position [5]   26/10
26/19 31/22 38/25 39/9
possible [3]   15/5 16/11
27/5
practicing [1]   22/22
practitioners [1]   24/3
premature [1]   37/21
prepared [3]   29/19
30/12 34/4
presence [1]   25/7
principal [7]   11/1
12/11 27/9 27/10 35/2
35/4 35/23
principal's [1]   27/10
principals [1]   12/10
principle [3]   25/10
25/12 35/23
prior [2]   5/24 20/2
privilege [2]   24/24
25/8
pro [2]   22/21 24/6
probably [1]   4/21
problem [2]   4/3 34/16
proceed [2]   28/23 29/21
proceeding [2]   34/1
41/7
proceedings [4]   3/3
28/13 37/13 40/22
produce [6]   21/13 22/6
23/5 23/10 28/18 40/9
produced [4]   14/15 15/2
25/25 29/2
producing [1]   28/25
product [1]   24/24
production [2]   34/3
34/18
productive [1]   15/8
professional [12]   12/13
22/23 23/18 23/23 24/4
24/12 24/20 27/3 28/12
36/3 36/19 36/23
pronounce [2]   4/23 5/1
proper [1]   33/3
properly [1]   33/5
proposition [1]   11/8
protected [1]   24/25
provide [3]   27/5 36/25
37/2
provided [1]   33/5
providing [1]   32/18
public [1]   29/6
pull [1]   35/9
punt [1]   38/13
purpose [1]   10/4

pushing [1]   3/22
put [4]   9/20 30/7
putative [1]   7/9

**Q**

QUANTELA [1]   1/6
question [12]   5/9 6/15
6/16 6/19 6/21 12/24
14/14 27/16 30/10 32/2
37/23 39/6
questions [3]   4/9 10/12
29/22
quickly [1]   3/21
quote [2]   11/11 35/17

**R**

Re [1]   25/5
read [4]   17/15 19/11
24/7 25/2
reading [1]   14/23
really [13]   4/10 4/18
6/15 9/18 12/9 12/23
14/25 19/7 21/12 29/18
31/9 34/24 39/5
recall [16]   14/1 15/6
16/13 17/8 17/17 20/23
20/25 21/9 22/3 22/5
23/3 25/23 33/7 33/8
33/14 33/18
receive [4]   20/14 29/23
32/21 33/2
received [5]   11/14 21/4
21/21 33/4 39/12
recent [1]   33/18
recess [1]   3/18
recollection [2]   18/19
19/6
record [6]   3/7 3/12 4/5
4/22 12/5 12/5
records [1]   38/16
refer [9]   8/19 9/2
10/10 11/6 12/8 27/21
29/19 36/4 38/9
referenced [2]   17/7
18/23
referrals [1]   19/24
referred [11]   7/18 7/25
8/6 8/14 8/16 8/22 9/24
15/17 19/13 19/16 36/24
referring [4]   9/22
14/17 24/15 37/18
refresh [1]   19/6
refreshes [1]   18/19
registered [5]   26/25
31/15 31/16 31/17 31/18
Registration [1]   36/5
relationship [1]   32/25
relevant [2]   24/1 25/11
relied [10]   11/18 13/11
13/12 14/6 21/14 23/19
27/18 29/16 38/20 39/19
rely [5]   7/21 11/10
21/17 26/14 32/12
relying [1]   11/18
remember [7]   21/6 33/19
33/21 33/21 33/22 38/6
40/1
REPORTER [2]   41/3 41/9
represent [2]   3/24
22/25
representation [1]   11/4
represented [1]   24/7
request [1]   3/17
requesting [1]   22/11

require [5]   7/19 23/9
24/17 34/19 34/24
required [3]   4/11 21/13
22/23
requirement [1]   35/5
requires [1]   24/2
requiring [1]   34/18
respect [1]   23/7
respectfully [5]   20/13
24/16 30/13 32/9 37/7
respective [1]   19/17
respond [1]   16/2
responsibility [3]
24/20 36/3 36/24
retained [1]   34/19
review [2]   25/3 25/4
reviewed [1]   19/13
right [41]   3/5 4/1 4/9
7/4 7/15 8/7 8/21 8/24
10/4 11/16 12/2 13/10
13/15 13/24 14/7 14/9
17/3 17/7 17/16 17/25
18/7 19/10 20/16 21/11
22/4 22/9 24/21 27/13
30/4 31/21 32/4 32/22
33/2 33/25 35/12 36/23
38/8 40/3 40/11 40/14
40/20
ring [1]   16/4
RIVER [1]   1/24
Ronald [1]   17/10
rule [11]   8/1 8/1 8/3
8/10 8/11 8/11 9/8
23/24 24/2 35/5 35/6
Rule 13 [4]   8/1 8/3
8/10 8/11
rules [20]   7/19 12/13
22/7 22/24 23/13 23/18
23/23 24/4 24/7 24/11
24/12 24/14 26/15 27/2
27/3 28/12 35/18 36/3
36/18 37/12

**S**

said [16]   5/10 8/21
16/8 19/7 19/19 23/3
25/21 25/22 25/23 25/24
33/8 33/10 33/13 36/12
39/17 40/1
same [3]   12/24 17/1
31/17
say [18]   7/22 8/16 8/21
11/18 14/3 15/3 22/1
22/20 27/1 27/1 28/20
31/10 31/21 32/3 32/3
34/5 35/11 37/22
saying [7]   11/4 23/11
25/13 33/19 37/8 38/14
39/7
says [1]   24/22
school [1]   3/16
scope [1]   28/13
seated [1]   3/5
second [1]   15/10
see [5]   3/21 15/6 25/14
32/11 32/16
seeking [2]   28/1 28/3
seem [3]   27/25 38/3
39/7
seems [2]   34/23 37/21
seen [1]   4/20
send [1]   29/12
sending [4]   30/15 31/16
31/17 31/19

sense [2]   4/19 37/16
sent [4]   30/21 30/25
31/6 31/14 31/14 37/24
sentence [1]   10/23
September [4]   16/4
18/20 18/21 19/1
September 23 [3]   18/20
18/21 19/1
settle [1]   20/12
settled [4]   20/1 34/6
34/15 38/19
settlement [1]   32/20
settlements [1]   20/3
settling [1]   36/20
several [2]   20/24
she [9]   18/4 25/19 33/8
33/10 33/13 36/11 39/16
39/18 39/22
short [3]   29/10 34/17
40/16
should [6]   7/21 22/1
25/24 28/20 29/4 37/9
show [4]   9/8 15/9 24/21
36/16
sign [4]   11/21 30/22
30/24 32/16
signature [2]   33/2 33/2
signed [26]   5/23 6/1
6/3 6/5 11/14 11/21
11/21 11/25 13/16 13/19
21/5 29/24 30/1 30/14
30/16 30/17 32/18 32/21
33/5 38/25 39/4 39/13
39/15 39/16 39/18 39/22
simple [1]   14/14
since [3]   22/5 22/24
24/6
sit [1]   12/16
situation [3]   32/11
32/17 33/3
situations [1]   31/20
SLANINA [1]   2/15
so [68]
sole [12]   4/11 5/2 5/12
6/10 9/11 10/4 13/1
20/19 23/15 25/18 26/7
26/21
some [6]   14/15 16/11
16/11 17/6 17/20 33/7
somebody [4]   28/22
30/15 32/19 39/17
something [2]   15/5
38/12
Son [2]   4/22 5/3
sorry [6]   4/25 6/8
10/21 22/10 30/23 39/3
sounds [1]   9/5 12/9
30/9 34/9 39/20
speak [4]   5/15 10/22
20/21 26/19
specific [1]   19/21
specifically [12]   13/12
16/5 16/6 19/9 19/25
20/23 20/25 21/6 21/9
22/3 33/7 38/5
spoke [5]   25/18 34/5
34/6 34/11 37/5
spoken [4]   13/24 16/22
17/13 34/9
standing [4]   23/12
23/25 38/11 38/12
state [3]   11/3 36/25
37/16
stated [2]   7/24 8/18

**S**

**statement [1]**   13/1
**states [4]**   1/1 2/8 8/1 8/12
**status [1]**   9/17
**stenographic [1]**   41/6
**stepson [1]**   3/16
**stipulating [1]**   37/4
**Street [1]**   2/6
**submit [1]**   27/11
**such [3]**   24/19 26/14 35/21
**suffices [1]**   10/13
**suggested [1]**   36/9
**supposed [1]**   3/16
**sure [12]**   3/11 3/15 9/1 15/8 24/23 27/13 28/9 31/19 35/7 36/1 37/17 37/19
**surprised [1]**   6/18
**suspect [1]**   29/13
**SWIRLATE [33]**   1/3 1/8 2/18 3/6 12/22 12/23 13/1 13/3 14/5 14/7 20/8 20/16 20/17 20/19 21/3 21/16 22/16 23/17 25/19 26/2 26/3 26/6 26/8 27/21 29/4 29/15 31/20 31/23 32/8 32/10 32/13 33/4 34/14
**Swirlate's [1]**   22/1

**T**

**take [7]**   21/15 21/20 23/1 25/15 27/20 27/23 35/19
**taking [1]**   8/9
**talk [2]**   20/15 32/21
**talking [1]**   32/14
**talks [1]**   25/6
**tell [3]**   4/2 25/4 38/4
**telling [4]**   8/11 10/7 10/7 11/12
**term [1]**   22/20
**terms [2]**   28/25 35/15
**than [8]**   14/23 19/19 21/8 28/17 30/4 30/6 31/14 34/22
**Thank [4]**   12/19 14/9 40/19 40/20
**that [178]**
**that's [31]**   3/25 4/8 4/16 5/14 8/9 8/21 9/18 10/14 12/6 12/15 25/10 25/17 26/5 26/9 28/6 28/13 28/13 29/17 32/25 33/25 34/10 34/13 34/24 35/12 37/21 38/1 38/2 38/14 38/22 40/3 40/11
**their [14]**   10/18 11/1 19/17 20/1 21/8 26/4 29/20 30/19 31/6 31/14 32/6 32/14 33/5 36/6
**them [11]**   10/24 16/12 21/21 25/3 25/4 25/24 29/20 36/5 36/25 37/2 37/2
**then [23]**   4/2 8/9 10/20 12/7 12/22 14/10 18/13 22/5 23/17 23/22 25/3 26/23 27/21 31/9 32/7 33/7 34/15 34/23 36/17 38/22 39/12 40/10 40/16
**there [13]**   4/9 6/13 8/2

9/23 9/23 12/17 15/5 8/1 Document 32 36/1 40/11 40/16
**there's [12]**   8/5 9/24 18/19 18/23 18/25 23/12 25/5 26/20 30/15 35/17 37/8 39/21
**Therefore [1]**   10/10
**these [38]**   3/7 5/6 5/16 5/22 6/11 7/1 7/5 7/21 8/2 8/9 9/3 9/4 9/13 11/6 11/18 16/3 16/9 18/15 18/22 19/7 20/8 20/22 21/15 22/9 22/16 28/5 28/12 28/20 29/15 33/16 34/6 34/7 34/15 34/18 35/9 37/6 38/19 40/10
**they [18]**   11/9 11/10 15/3 24/25 26/3 26/11 26/14 29/1 29/2 29/2 29/4 30/4 30/22 30/24 30/25 32/14 37/1 39/17
**thing [4]**   25/21 34/13 35/21 36/8
**things [1]**   33/6
**think [17]**   3/20 8/25 9/17 10/19 17/8 24/18 27/12 27/14 30/15 31/12 34/2 34/9 35/18 35/25 36/18 37/1 37/23
**third [15]**   7/22 11/11 11/17 11/17 23/21 24/19 24/22 25/7 25/8 25/15 26/14 27/19 28/24 29/17 35/24
**this [61]**
**those [13]**   3/7 14/18 14/20 14/24 15/23 17/6 17/15 17/20 19/24 19/25 23/5 23/10 24/14
**though [3]**   4/2 17/14 27/12
**thought [1]**   34/4
**three [3]**   33/20 33/20 40/2
**through [42]**
**time [4]**   6/24 7/25 14/23 16/10
**times [1]**   11/10
**timing [1]**   13/7
**today [1]**   13/4
**together [1]**   35/9
**told [2]**   11/20 25/17
**took [2]**   14/4 19/25
**top [1]**   14/1
**topics [1]**   8/9
**towards [1]**   10/1
**train [4]**   17/25 18/4 18/7 18/10
**transcript [1]**   41/6
**transported [1]**   30/25
**true [3]**   20/18 26/5 41/5
**trust [1]**   30/7
**trying [10]**   8/25 9/14 9/25 10/2 16/7 20/6 21/12 25/17 28/10 39/9
**TUNNELL [1]**   2/21
**turned [1]**   38/10
**turns [2]**   27/17 34/21
**twice [1]**   36/8
**two [1]**   3/7
**type [2]**   9/15 20/9

**typically [1]**   35/10

**U**

**U.S [1]**   41/10
**Uh [1]**   4/13
**Uh-huh [1]**   4/13
**uncontested [1]**   25/10
**under [2]**   26/15 35/21
**understand [8]**   4/10 6/20 9/14 9/25 10/2 18/14 39/5 39/23
**understanding [1]**   9/15
**UNITED [3]**   1/1 2/8 8/12
**until [2]**   4/5 15/1
**up [2]**   3/16 24/22
**use [3]**   22/19 24/17 39/10
**used [2]**   10/23 10/24
**uses [1]**   31/18
**using [1]**   32/17

**V**

**vague [1]**   33/22
**vagueness [1]**   34/2
**valid [2]**   24/20 39/4
**various [2]**   14/15 16/3
**versus [1]**   12/11
**very [3]**   6/18 19/24 40/20
**violate [1]**   23/22
**violated [1]**   23/18
**violation [4]**   23/12 36/2 36/18 37/8
**vitiate [1]**   25/7

**W**

**wait [1]**   37/16
**waiting [1]**   37/14
**want [19]**   4/19 7/16 10/13 12/5 24/21 25/2 27/12 28/16 29/11 29/11 29/11 29/21 37/22 38/9 38/15 38/16 38/17 40/12
**wanted [2]**   9/1 32/14
**was [25]**   3/16 4/6 4/11 6/13 6/24 8/25 11/25 13/11 14/24 15/2 15/5 15/5 17/17 18/13 18/15 20/24 30/6 30/6 32/2 32/13 33/4 33/11 33/15 39/2 39/14
**wasn't [1]**   5/9
**WAVERLY [22]**   1/15 1/21 2/16 3/14 3/24 4/3 4/5 4/10 5/7 5/13 5/19 6/11 6/21 9/12 10/6 10/14 10/17 11/15 12/7 12/15 12/17 12/20
**Waverly's [6]**   6/8 6/11 7/1 7/5 7/7 7/8
**way [6]**   7/24 10/24 20/25 36/1 37/12 38/1
**ways [1]**   39/3
**we [11]**   3/6 4/3 15/11 23/6 25/24 25/25 29/10 34/15 38/1 40/16 40/21
**We'll [1]**   3/21
**we've [1]**   8/25
**Wednesday [1]**   2/3
**welcome [3]**   10/12 11/2 12/4
**well [24]**   4/1 8/14 8/18 9/21 11/20 12/17 15/10

19/12 19/22 22/12 22/19 Page 47 of 48 PageID #: 550 25/24 29/23 30/9 33/17 36/17 37/11 38/21 39/7 40/1
**went [3]**   6/6 25/22 32/13
**were [8]**   9/4 13/13 14/15 15/3 24/6 29/22 34/18 38/21
**Wernow [1]**   17/19
**what [43]**
**whatever [3]**   12/5 37/1 38/15
**when [8]**   8/16 11/23 32/20 33/14 34/18 35/10 37/18 39/24
**whenever [1]**   40/15
**where [4]**   21/6 32/17 33/8 33/25
**whether [12]**   9/3 9/11 10/5 20/8 21/14 22/7 27/13 28/4 28/19 36/2 37/19 38/11
**which [5]**   11/15 17/8 21/5 25/6 25/24
**who [18]**   4/11 6/23 12/25 13/4 13/11 16/20 18/4 18/7 18/14 19/16 21/9 22/21 26/18 30/7 31/18 32/15 32/17 39/15
**whoever [1]**   32/21
**whole [3]**   35/3 35/6 35/22
**whom [1]**   22/21
**whose [1]**   11/17
**why [8]**   4/2 9/19 15/3 25/24 31/19 32/11 37/12 38/14
**will [16]**   4/1 22/12 22/13 27/21 27/22 35/8 35/19 35/21 38/14 40/5 40/8 40/10 40/11 40/14 40/15 40/16
**Wilmington [1]**   2/6
**wishes [1]**   14/6
**without [3]**   9/3 20/2 37/14
**word [1]**   39/10
**words [1]**   20/10
**work [1]**   24/24
**working [1]**   33/11
**would [25]**   9/19 15/6 15/8 21/7 21/21 22/19 22/20 23/17 25/21 26/18 26/22 29/1 29/2 29/5 29/9 30/5 30/7 31/12 31/19 33/18 34/2 35/8 35/25 36/22 39/2 39/14
**wouldn't [3]**   26/1 35/25 36/3
**write [1]**   38/17
**writing [1]**   27/12
**written [4]**   4/20 8/23 16/19 14/23

**Y**

**yeah [3]**   3/19 33/11 38/22
**year [2]**   16/12 33/23
**years [3]**   20/24 33/20 40/2
**yes [32]**   3/13 3/25 5/8 5/23 6/16 6/20 8/20

**Y**

**yes... [25]**   13/9 13/20
13/23 15/21 16/1 16/18
17/2 17/5 17/22 18/5
18/8 20/20 24/9 24/13
28/5 28/15 31/3 31/8
31/25 32/6 33/9 33/10
36/12 37/11 40/13
**yesterday [1]**   4/6
**yet [1]**   8/22
**you [280]**
**you'd [1]**   23/4
**you're [9]**   8/18 8/24
10/25 14/18 15/15 15/25
17/14 23/14 30/12
**you've [9]**   17/15 19/19
22/15 25/22 28/4 33/25
36/14 36/15 36/18
**your [84]**
**yourself [1]**   13/13