

# THE CHONG LAW FIRM, P.A.

Licensed in:   Delaware, New Jersey, Pennsylvania

March 14, 2024

**VIA ECF AND HAND DELIVERY**
Hon. Colm F. Connolly
United States Chief District Judge
District of Delaware
J. Caleb Boggs Federal Building
844 North King Street
Unit 31
Room 4124
Wilmington, Delaware 19801-3555

> RE:   *Swirlate IP LLC v. Quantela, Inc.,*
> C.A. No. 1:22-cv-00235-CFC
> *Swirlate IP LLC v. Lantronix, Inc.,*
> C.A. No. 1:22-cv-00249-CFC

Dear Judge Connolly:

Pursuant to the Court's Memorandum Order dated February 15, 2024 (D.I. 34 (-235), D.I. 35 (-249)) ("Order"), Swirlate IP LLC ("Swirlate") submits this letter

accompanying its document production and privilege log, responsive to the Order, and showing good cause for submitting certain documents under seal. A redacted version of this letter is being filed publicly in which confidential information is redacted. An unredacted version of the letter is being hand delivered to the Court along with the document production.

The focus of the Court's questioning during the January 17, 2024, hearing in

| **WILMINGTON, DE** | **LANSDALE, PA** | **PHILADELPHIA, PA** |
| --- | --- | --- |
| **Delaware Mailing Address** | **Pennsylvania Mailing Address** | **NO MAIL SERVICE** |
| 2961 Centerville Rd. Ste 350 | 100 W. Main St. Ste 420 | **MEETING LOCATION** |
| Wilmington, DE 19808 | Lansdale, PA 19446 | 1845 Walnut Street, Suite 1300 |
| T. 302-999-9480 | T. 215-909-5204 | T. 215-909-5204 |

FAX FOR ALL LOCATIONS: 302-800-1999

WWW.CHONGLAWFIRM.COM

this matter was whether Mr. Bennett should be referred to state disciplinary counsel based on whether he obtained informed consent from Swirlate's owner. Who and when Mr. Bennett communicated with Swirlate's owner and Swirlate's agents during the litigation can be determined from the produced confidential documents (including confidential documents with privileged/work product redacted) and the privilege log.  Review of the privileged and/or work product communications is not needed to determine that information.

To the extent the Court's Order seeks documents protected by the attorney-client privilege and/or work product immunity, the Court essentially seeks to compel Mr. Bennett to violate his duties to his client (before making a decision whether to refer Mr. Bennett to disciplinary counsel).  Here, Swirlate is *not* waiving attorney-client privilege and work product immunity of its documents. Submitted herewith is a Declaration of Dina Gamez, Swirlate IP LLC's owner and managing member, stating that Swirlate's privilege and work product immunity are not being waived, and that Swirlate's agents and attorneys are instructed to maintain the privilege and work product of Swirlate's documents.  Documents that contain attorney-client privilege and/or work product are therefore being withheld or redacted to remove attorney-client privilege and/or work product[1], and all such withheld or redacted documents will be identified on the concurrently submitted

---

[1] The lawyer disciplinary process respects, as it must, attorney-client privilege and work product immunity.  *See, e.g.,* ABA Model Rules for Lawyer Disciplinary Enforcement ("MRLDE") 15A (respondent "shall comply with reasonable requests for (1) **non-privileged information and evidence**") and Commentary thereto ("Liberal exchanges of **non-privileged information** should be encouraged") (emphasis added);  MRLDE 14 (respondent may move to quash a subpoena issued by disciplinary counsel); MRLDE 18B ("Except as otherwise provided in these rules, the [state rules of civil procedure] and the [state rules of evidence in civil nonjury matters] apply in discipline and disability cases").  *See also* Delaware Lawyers' Rules of Disciplinary Procedure ("DLRDP") 12; DLRDP 15; *In re Complaint as to Conduct of Skagen*, 149 P.3d 1171, 1188 (Ore. 2006) ("the rules for the conduct of lawyer disciplinary proceedings and the Oregon Rules of Civil Procedure permit a person from whom discovery is sought to object to the discovery request if the information requested is privileged");  *Matter of Abbott*, ___ A.3d. ___, 2023 WL 7401529 at *26 (Del. Nov. 9, 2023), *petition for cert. filed (Feb. 8, 2024)* (Board Chair determined privileged communications were discoverable *where the client had waived the privilege*).

privilege log.[2]  Swirlate and Mr. Bennett are permitted to openly challenge the scope of the Court's Order, where, as here, compliance would violate the attorney-client privilege and work product immunity.  This is not a situation where parties to the underlying dispute seek the Court's adjudication of a claim of privilege during discovery by submitting documents for *in camera* review.  Here, the parties have stipulated to the dismissal of litigation, and the Court is exercising retained jurisdiction to determine whether Mr. Bennett should be referred to disciplinary counsel.  Swirlate reserves the right to request the return of any documents and information produced to the Court for which Swirlate claims privilege or work product.

### A.  All Documents and Communications Related to this Investigation Should Be Sealed and Treated as Confidential Because This is an Ethics Investigation

As stated by the Court at the hearing held on January 17, 2024, and in the Court's original Memorandum Order dated January 23, 2024, the only purpose for this investigation is whether Mr. Bennett had complied with the ABA Model Rules of Professional Conduct (the "ABA Model Rules") and/or whether the Court will refer Mr. Bennett to state disciplinary counsel in Illinois, specifically with respect to the issue of obtaining informed consent from Swirlate.  (Transcript of Hearing, attached hereto as Exhibit A, ("Tr.") at 20:6-12, 21:11-16, 22:4-9, 25:14-21, 27:11-15, 28:8-14, 28:16-24, 29:10-18, 38:14-23, 40:8-11, D.I. 32 (-235), D.I. 33 (-249)).

Disciplinary proceedings are, and are intended to be, separate from courtroom motion practice and civil actions.  The purpose of lawyers' rules of professional conduct, and the sanctions for any violations thereof, are different than civil proceedings and orders issued in civil proceedings.  As noted in the "Preamble: A Lawyer's Responsibility" of the 2022 American Bar Association Model Rules of Professional Conduct: "[20] Violation of a Rule should not itself give rise to a cause of action against a lawyer nor should it create any presumption in such a case that a legal duty has been breached.  In addition, violation of a Rule does not necessarily warrant any other non-disciplinary remedy, such as disqualification of a lawyer in pending litigation.  The rules are designed to

---

[2] The marking on documents of "ATTORNEY-CLIENT PRIVILEGE," "WORK PRODUCT," and "COMMUNITY OF INTEREST" identify the basis for the redactions in addition to any further explanation in the privilege log.

provide guidance to lawyers and to provide a structure for regulating conduct through disciplinary agencies.  They are not designed to be a basis for civil liability."  (Cited in *In re Appeal of Infotechnology, Inc.*, 582 A.2d 215, 220 (Del. 1990); *Marino v. Richards Layton & Finger*, 160 Fed. Appx. 268, 269 (3rd Cir. 2005)).  At issue presently here is solely the Court's inquiry whether Mr. Bennett should be referred to disciplinary counsel.  There is no indication the Court in inquiring whether Swirlate or Mr. Bennett violated a court order.

In these situations, further communications between the Court and Mr. Bennett on the issue of his compliance with applicable rules of professional conduct should be conducted in a confidential manner, including at a minimum any disciplinary investigation or referral based on such investigation. *See, e.g.*, Rule 83.6(e) of Local Rules of Civil Practice and Procedure of the United States District Court for the District of Delaware (the "Local Rules") ("If an investigation is warranted, the Chief Judge or another Judge of the Court may appoint counsel from the Bar of this Court to conduct a confidential investigation of the matter. Complaints, and any files based on them, shall be treated as confidential unless otherwise ordered for good cause shown."); Rule 13(a) of the Delaware Lawyers' Rules of Disciplinary Procedure ("Prior to the Hearing Panel's submission to the Court of its final report, and except as otherwise described in these rules, disciplinary and disability proceedings and the official record in such matters are confidential"); Ill. Sup. Ct. R. 766 (disciplinary investigations and proceedings "shall be private and confidential").

Furthermore, Mr. Bennett has a duty to preserve privileged communications and to prevent unauthorized access to confidential information relating to the representation of Swirlate. Rule 1.6(c), ABA Model Rule; Rule 1.6(e), Illinois Rules of Professional Conduct of 2010; Rule 1.6(c), Delaware Lawyers' Rules of Professional Conduct.  This production, in response to the Court's February 15, 2024 Order,  relates to Mr. Bennett's representation of Swirlate solely in the context of the Court's possible referral of Mr. Bennett to state disciplinary counsel. Public disclosure of documents Swirlate is producing to the Court in response to the Order would therefore be both unwarranted and inappropriate as to Mr. Bennett, and a breach of Swirlate's expectations of confidentiality.

All communications, production or documents, and files related to this matter should therefore be treated as confidential.

### B.  Certain Documents Are Subject to Attorney-Client Privilege Protections and Community of Interest Privilege

The purpose of the attorney-client privilege "is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn Company v. United States*, 449 U.S. 383, 389 (1981). "[T]he privilege exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice." *Id.* at 390

"The presence of a third party will not vitiate the attorney-client privilege, if the third party is the attorney's or client's agent or possesses a commonality of interest with the client." *In re Grand Jury Investigation*, 918 F.2d 374, 386 (3rd Cir. 1990) (*citing* 8 Wigmore at § 2311); *Intellectual Ventures I LLC v. Altera Corp.*, 2013 U.S. Dist. LEXIS 206477, *16 (D.Del. Jul. 25, 2013). "When disclosure to a third party is necessary for the client to obtain informed legal advice, courts have recognized exceptions to the rule that disclosure waives the attorney-client privilege. For example, courts have held that the client may allow disclosure to an 'agent' assisting the attorney in giving legal advice to the client without waiving the privilege." *Westinghouse Elec. Corp. v. Republic of Phil.*, 951 F.2d 1414, 1424 (3rd Cir. 1991) (*citing* 8 Wigmore, *Evidence* § 2301 at 583 (McNaughton rev 1961); McCormick, *Evidence* § 92 at 188)).

 Legal entities, such as corporations, "increasingly conduct their business not merely through regular employees but also through a variety of independent contractors retained for specific purposes." *In re Flonase Antitrust Litig.*, 879 F. Supp. 2d 454, 459-460 (EDPA July 2, 2012) (*quoting* Edna Selan Epstein, *The Attorney-Client Privilege and the Work-Product Doctrine* 269 (5th ed. 2007)). "In applying the principles set forth by the Supreme Court in *Upjohn* [*Company v. United States*, 449 U.S. 383 (1981)], there is no reason to distinguish between a person on the corporation's payroll and a consultant hired by the corporation if each acts for the corporation and possesses the information needed by attorneys in rendering legal advice." *In re Flonase Antitrust Litig.*, 879 F. Supp. 2d 454, 459-

460 (EDPA July 2, 2012) (*quoting In re Copper Mkt. Antitrust Litig.*, 200 F.R.D. 213, 219 (S.D.N.Y. 2001)).  Applying a "narrow construction of the privilege to communications involving independent consultants would be 'too restrictive' to be realistic in today's marketplace, where businesses frequently hire contractors and still expect to be able to seek legal advice.'" *Id.*  (*quoting United States ex rel. Fry v. Health Alliance of Greater Cincinnati*, 2009 U.S. Dist. LEXIS 122921, at *4 n.1 (SDOH Dec. 11, 2009)); *also In re Valeant Pharms. Int'l, Inc. Sec. Litig.*, 2021 U.S. Dist. LEXIS 136875, *39 (DNJ July 22, 2021) ("communications involving third party agents are entitled to attorney-client privilege as long as the communication in question was for legal purposes."); *In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Practices, & Prods. Liab. Litig.*, 2021 U.S. Dist. LEXIS 138589, *1161 (DNJ July 26, 2021) ("Instead, the SM's ruling recognizes the realities and practicalities of corporate life wherein consultations with third-party consultants is sometimes essential for in house counsel to render informed and competent legal advice.")

A person who serves as a "finder" of patents to acquire and helps "review, evaluate, and negotiate deals in order to assist [a person] in acquiring patents" shares a commonality of interest such that the communications are protected from disclosure by the attorney-client privilege.  *Intellectual Ventures I LLC v. Altera Corp.*, 2013 U.S. Dist. LEXIS 206477, *16 (D.Del. Jul. 25, 2013).

The "community of interest privilege allows attorneys representing different clients with similar legal interests to share information without having to disclose it to others [and] it applies in civil and criminal litigation...and even in purely transactional contexts." *Teleglobe Communs. Corp. v. BCE, Inc. (In re Teleglobe Communs. Corp.)*, 493 F.3d 345, 364 (3rd Cir. 2007).  "Although the most common statement of the degree of interest required is that the interest be identical, not similar, and be legal, not solely commercial, the Third Circuit has not specifically adopted such a stringent approach...[and has, instead,] noted that 'members of a community of interest must share at least a substantially similar legal interest.'"  *La. Mun. Police Emples. Ret. Sys. v. Sealed Air Corp.*, 253 F.R.D. 300, 309-310 (D.N.J. 2008) (*quoting Teleglobe*, 493 F.3d at 365).

The Restatement of the Law (Third), The Law Governing Lawyers (American Law Institute 2011-2012 ed.) ("Restatement") provides further

explanation of the privilege between a legal entity, such as a limited liability company, and an agent. Restatement Section 73 addresses communications with a client that is a legal entity such as a corporation, sole proprietorship, or other organization. "[T]his Section recognizes a special class of agents who communicate in [*sic*, on] behalf of the organizational client." Restatement §73, comment a. The rationale for protecting such communications is to "encourage[s] organizational clients to have their agents confide in lawyers in order to realize the organization's legal rights and to achieve compliance with the law." *Id.* §73, comment b. "The existence of a relationship of principal and agent between the organizational client and the privileged agent is determined according to agency law." *Id.* §73, comment b. "The concept of agent also includes independent contractors with whom the corporation has a principal-agent relationship and extends to agents of such persons when acting as subagents of the organizational client." *Id.* §73, comment d. As an example, "a foreign-based corporation may retain a general agency (perhaps a separate corporation) in an American city for the purpose of retaining counsel to represent the interests of the foreign-based corporation." *Id.*

"It is not necessary that the agent receive specific direction from the organization to make or receive the communication." *Id.* "It is not necessary that a superior organizational authority specifically direct an agent to communicate with the organization's lawyer." *Id.* §73, comment h. "Unless instructed to the contrary, an agent has authority to volunteer information to a lawyer when reasonably related to the interests of the organization." *Id.* "An agent has similar authority to respond to a request for information from a lawyer for the organization." *Id.* "And the lawyer for the organization ordinarily may seek relevant information directly from employees and other agents without prior direction from superior authorities in the organization." *Id.*

"The privilege applies to communications to and from the client disclosed to persons who hire the lawyer as an incident of the lawyer's engagement." *Id.* §73, comment f. "Thus, the privilege covers communications by a client-insured to an insurance company investigator who is to convey the facts to the client's lawyer designated by the insurer, as well as communications from the lawyer for the insured to the insurer in providing a progress report or discussing litigation strategy

or settlement." *Id.* Similarly, the privilege would extend with respect "to informed consent to general direction of the lawyer by another." *Id.* §134, comment d.

[redacted]

[redacted]

The community of interest also extends to communications with the following attorneys who represent other clients who have the identical legal interest (or "at least a substantially similar legal interest" *La. Mun. Police*, 253

---

[redacted]

F.R.D. at 309-310; *Teleglobe*, 493 F.3d at 365) of responding to the Court's hearing orders and document product requests that sought the same information and which were requested for the identical legal purpose: ███████████

██████████████████████████████████████████
██████████████████████████████████████████
██████████████████████████████████████████
██████████████████████████████████████████
██████████████████████████████████████████
██████████████████████████████████████████
██████████████████████████████████████████
██████████████████████████████████████████
██████████████████████████████████████████
██████████████████████████████████████████
██████████████████████████████████████████
██████████████████████████████████████████
██████████████████████████████████████████
██████████████████████████████████████████
██████████████████████████████████████████
██████████████████████████████████████████
██████████████████████████████████████████
██████████████████████████████████████████
██████████████████████████████████████████
██████████████████████████████████████████
██████████████████████████████████████████
███████████

## C.  Certain Documents Are Subject to Work Product Doctrine Protections

The work product doctrine "is distinct from and broader than the attorney-client privilege."  United States v. Nobles, 422 U.S. 225, 238 n.11 (1975); *In re Cendant Corp. Sec. Litig.*, 343 F.3d 658, 666 (3rd Cir. 2003).  "Under Rule 26(b)(3), the work product doctrine applies to 'documents and tangible things . . . prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)....'" *Cendant*, 343 F.3d at 662 (*quoting*

Fed.R.Civ.P. 26(b)(3)). The purpose of the work product doctrine has been explained by the Supreme Court as follows:

> In performing his various duties, it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel. Proper preparation of a client's case demands that he assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference. That is the historical and the necessary way in which lawyers act within the framework of our system of jurisprudence to promote justice and to protect their clients' interests. This work is reflected, of course, in interviews, statements, memoranda, correspondences, briefs, mental impressions, personal belief, and countless other tangible and intangible ways--aptly though roughly termed . . . as the "work product of the lawyer." Were such materials open to opposing counsel on mere demand, much of what is now put down in writing would remain unwritten. An attorney's thoughts, heretofore inviolate, would not be his own. Inefficiency, unfairness and sharp practices would inevitably develop in the giving of legal advice and in the preparation of cases for trial.

*Hickman v. Taylor*, 329 U.S. 495, 510-11 (1947); *also Cendant*, 343 F.3d at 662. The work product doctrine protection "extends beyond materials prepared by an attorney to include materials prepared by an attorney's agents and consultants." *Cendant*, 343 F.3d at 662. The Supreme Court has explained that "[a]ttorneys often must rely on the assistance of investigators and other agents in the compilation of materials in preparation for trial. It is therefore necessary that the [work product] doctrine protect materials prepared by agents of the attorney as well as those prepared by the attorney himself." *United States v. Nobles*, 422 U.S. 225, 238 (1975); *also Cendant*, 343 F.3d at 662. The work product doctrine therefore "extends to materials compiled by a non-attorney, who, as the 'agent' of a party or a party's attorney, assists the attorney in trial preparation." *Cendant*, 343 F.3d at 666.

Case 1:22-cv-00235-CFC   Document 36   Filed 03/14/24   Page 11 of 12 PageID #: 411

Although "the work product doctrine is not an absolute bar to discovery of materials prepared in anticipation of litigation," even "upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means," "the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation." *Cendant*, 343 F.3d at 663 (*quoting* prior version of Fed. R. Civ. P. 26(b)(3)); Fed.R.Civ.P. 26(b)(3) ("If the court orders discovery of those materials, it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation."). There are therefore two tiers of work product protection: "first, work prepared in anticipation of litigation by an attorney or his agent is discoverable only upon a showing of need and hardship; second, 'core' or 'opinion work product that encompasses the 'mental impressions, conclusions, opinion, or legal theories of an attorney or other representative of a party concerning the litigation' is 'generally afforded near absolute protection from discovery.'" *Cendant*, 343 F.3d at 663. Disclosure of the second "core" work product protection requires "heightened showing of extraordinary circumstances." *Id.* at 664 (citations omitted).



The work product doctrine is also a discovery rule under Rule 26(b)(3) and here no opposing party is seeking discovery. As such, no undue hardship or need can be shown to overcome the work product doctrine. These documents are not

required by an opposing party in the underlying litigation and are instead requested by the Court based on a lawyer disciplinary investigation that has no relevance to the disputes in the litigation for which the parties filed stipulations of dismissal 18 months ago.   Furthermore, for documents reflecting 'core' or 'opinion work product, there has been no showing of extraordinary circumstances to overcome the work product doctrine and no defendant or opposing party is seeking the documents to make such an extraordinary showing.   Again, there can be no extraordinary showing to overcome the work product doctrine because an opposing party is not requesting, and does not require, the documents for any issue.


Respectfully submitted,

CHONG LAW FIRM PA

*/s/ Jimmy Chong*
Jimmy Chong (#4839)
2961 Centerville Road, Suite 350
Wilmington, DE 19808
Telephone: (302) 999-9480
Facsimile: (302) 800-1999
Email: chong@chonglawfirm.com
*Attorneys for Plaintiff Swirlate IP LLC*

Together with:

*/s/ David R. Bennett*
David R. Bennett
Direction IP Law
P.O. Box 14184
Chicago, IL 60614-0184
(312) 291-1667
dbennett@directionip.com
*Attorneys for Plaintiff Swirlate IP LLC*