IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SWIRLATE IP LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ. No. 22-235-CFC |
| | ) | |
| QUANTELA, INC., | ) | |
| | ) | |
| Defendant. | ) | |

| | | |
|---|---|---|
| SWIRLATE IP LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ. No. 22-249-CFC |
| | ) | |
| LANTRONIX, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## <u>MEMORANDUM ORDER</u>

This Memorandum Order marks the latest chapter in a voluminous history of disturbing matters in this Court that have come to light in cases brought by certain LLC plaintiffs affiliated with the patent monetization firm IP Edge LLC and its affiliate Mavexar LLC. Prior chapters of that history were chronicled in *Nimitz Technologies LLC v. CNET Media, Inc.*, 2022 WL 17338396 (D. Del. Nov. 30, 2022) ("*Nimitz I*"), *Nimitz Technologies LLC v. CNET Media, Inc.*, 2023 WL 8187441 (D. Del. Nov. 27, 2023) ("*Nimitz II*"), and *Backertop Licensing LLC v.*

*Canary Connect, Inc.*, 2023 WL 3182084 (D. Del. May 1, 2023) ("*Backertop I*"),

all of which I incorporate by reference.

Plaintiff Swirlate IP, LLC is one of numerous LLCs affiliated with IP Edge

and Mavexar. These two actions, filed in February 2022, Civ. No. 22-235, D.I. 1;

Civ. No. 22-249, D.I. 1, are small parts of a larger litigation campaign brought

under Swirlate's name. Between April 2020 and November 2022, Swirlate filed at

least 49 patent infringement suits in federal courts; 21 of those suits were filed in

this District.[1] Mr. Bennett is counsel of record in all the cases filed by Swirlate in

---

[1] *Swirlate IP LLC v. Resmed, Inc.*, Civ. No. 20-cv-556, (D. Del., Apr. 23, 2020); *Swirlate IP LLC v. Badger Meter, Inc.*, Civ. No. 20-cv-1165, (D. Colo., Apr. 24, 2020); *Swirlate IP LLC v. Continental Automotive Sys., Inc.*, Civ. No. 20-cv-2538, (N.D. Ill., Apr. 24, 2020); *Swirlate IP LLC v. Corning Optical Comms. LLC*, Civ. No. 20-cv-1033, (N.D. Tex., Apr. 24, 2020); *Swirlate IP LLC v. Livongo Health, Inc.*, Civ. No. 20-cv-2540, (N.D. Ill., Apr. 24, 2020); *Swirlate IP LLC v. Astronics Corp.*, Civ. No. 20-cv-3078, (N.D. Ill., May 22, 2020); *Swirlate IP LLC v. Smartwitness USA, LLC*, Civ. No. 20-cv-3080, (N.D. Ill., May 22, 2020); *Swirlate IP LLC v. Lytx, Inc.*, Civ. No. 20-cv-696, (D. Del., May 26, 2020); *Swirlate IP LLC v. Getac, Inc.*, Civ. No. 20-cv-983, (C.D. Cal., May 28, 2020); *Swirlate IP LLC v. Badger Meter Inc.*, Civ. No. 20-cv-1314, (E.D. Wis., Aug. 26, 2020); *Swirlate IP LLC v. Keep Truckin, Inc.*, Civ. No. 20-cv-1283, (D. Del., Sep. 23, 2020); *Swirlate IP LLC v. Coolpad Techs., Inc.*, Civ. No. 20-cv-1284, (D. Del., Sep. 24, 2020); *Swirlate IP LLC v. Verifone, Inc.*, Civ. No. 20-cv-5745, (N.D. Ill., Sep. 28, 2020); *Swirlate IP LLC v. Eagle Eye Networks, Inc.*, Civ. No. 20-cv-1169, (W.D. Tex., Nov. 24, 2020); *Swirlate IP LLC v. Audiocodes Inc.*, Civ. No. 21-cv-75, (D. Del., Jan. 26, 2021); *Swirlate IP LLC v. L3harris Techs., Inc.*, Civ. No. 21-cv-76, (D. Del., Jan. 26, 2021); *Swirlate IP LLC v. Forcepoint LLC*, Civ. No. 21-cv-237, (D. Del., Feb. 22, 2021); *Swirlate IP LLC v. Liveu Inc.*, Civ. No. 21-cv-238, (D. Del., Feb. 22, 2021); *Swirlate IP LLC v. Versa Networks, Inc.*, Civ. No. 21-cv-239, (D. Del., Feb. 22, 2021); *Swirlate IP LLC v. Enphase Energy, Inc.*, Civ.

No. 21-cv-428, (D. Del., Mar. 25, 2021); *Swirlate IP LLC v. Ametek, Inc.*, Civ. No. 21-cv-916, (D. Del., June 28, 2021); *Swirlate IP LLC v. Sensitech Inc.*, Civ. No. 21-cv-917, (D. Del., June 28, 2021); *Swirlate IP LLC v. Zetron Inc.*, Civ. No. 21-cv-866, (W.D. Wash., June 28, 2021); *Swirlate IP LLC v. Ei Electronics LLC*, Civ. No. 21-cv-1071, (D. Del., July 27, 2021); *Swirlate IP LLC v. Cognex Corp.*, Civ. No. 21-cv-4041, (N.D. Ill., July 29, 2021); *Swirlate IP LLC v. FW Murphy Production Controls, LLC*, Civ. No. 21-cv-806, (W.D. Tex., Aug. 27, 2021); *Swirlate IP LLC v. Fluke Corp.*, Civ. No. 21-cv-1174, (W.D. Wash., Aug. 30, 2021); *Swirlate IP LLC v. Mine Site Techs. (USA), Inc.*, Civ. No. 21-cv-1499, (D. Del., Oct. 25, 2021); *Swirlate IP LLC v. Volterra, Inc.*, Civ. No. 21-cv-1501, (D. Del., Oct. 25, 2021); *Swirlate IP LLC v. Cooperative Choice LLC*, Civ. No. 21-cv-4450, (N.D. Ga., Oct. 27, 2021); *Swirlate IP LLC v. Talk-A-Phone, LLC*, Civ. No. 21-cv-6238, (N.D. Ill., Nov. 22, 2021); *Swirlate IP LLC v. Brivo Sys. LLC*, Civ. No. 22-cv-103, (D. Del., Jan. 26, 2022); *Swirlate IP LLC v. Progressive Sys., LLC*, Civ. No. 22-cv-293, (S.D. Tex., Jan. 28, 2022); *Swirlate IP LLC v. Crane Payment Innovations, Inc.*, Civ. No. 22-cv-234, (D. Del., Feb. 24, 2022); *Swirlate IP LLC v. Draeger Safety, Inc.*, Civ. No. 22-cv-237, (D. Del., Feb. 24, 2022); *Swirlate IP LLC v. Quantela, Inc.*, Civ. No. 22-cv-235, (D. Del., Feb. 24, 2022); *Swirlate IP LLC v. Lantronix, Inc.*, Civ. No. 22-cv-249, (D. Del., Feb. 25, 2022); *Swirlate IP LLC v. Plantronics, Inc.*, Civ. No. 22-cv-527, (D. Del., Apr. 26, 2022); *Swirlate IP LLC v. In-Situ, Inc.*, Civ. No. 22-cv-1016, (D. Colo., Apr. 27, 2022); *Swirlate IP LLC v. Draeger, Inc.*, Civ. No. 22-cv-2044, (E.D. Pa., May 25, 2022); *Swirlate IP LLC v. Parsons Corp.*, Civ. No. 22-cv-3333, (N.D. Ill., June 27, 2022); *Swirlate IP LLC v. Kymeta Corp.*, Civ. No. 22-cv-914, (W.D. Wash., June 30, 2022); *Swirlate IP LLC v. Amcrest Techs. LLC*, Civ. No. 22-cv-2543, (S.D. Tex, July 31, 2022); *Swirlate IP LLC v. Jabil Inc.*, Civ. No. 22-cv-4557, (N.D. Ill., Aug. 26, 2022); *Swirlate IP LLC v. Viasat, Inc.*, Civ. No. 22-cv-2198, (D. Colo., Aug. 26, 2022); *Swirlate IP LLC v. Geoforce, Inc.*, Civ. No. 22-cv-425, (E.D. Tex., Oct. 26, 2022); *Swirlate IP LLC v. Noodoe Inc.*, Civ. No. 22-cv-3744, (S.D. Tex., Oct. 28, 2022); *Swirlate IP LLC v. Rab Lighting Inc.*, Civ. No. 22-cv-6660, (N.D. Ill., Nov. 29, 2022); *Swirlate IP LLC v. Schweitzer Eng'g Labs., Inc*, Civ. No. 22-cv-300, (E.D. Wash., Nov. 29, 2022).

this Court.  Dina Gamez is the sole owner and managing member of Swirlate.  Civ.

No. 22-235, D.I. 16.[2]

I.

For reasons detailed in *Nimitz I*, by early September 2022, I had developed

concerns that Swirlate and other LLC plaintiffs in patent infringement cases

assigned to me may have had undisclosed financial relationships and may not have

complied with my April 18, 2022 standing order regarding third-party litigation

funding.  To address those concerns, I issued in September 2022 in twelve cases,

including these two cases, orders convening a series of evidentiary hearings to

determine whether the LLC plaintiffs in the twelve cases had complied with the

third-party litigation funding standing order.  *See, e.g.*, D.I. 22.  I also directed the

owners of the LLC plaintiffs to attend the hearings in person.  *Id.* at 2.  I set the

hearing date for these two cases for December 6, 2022 and ordered Ms. Gamez and

Mr. Bennett to attend the hearing.  *Id.*

On November 4, 2022, I convened the first of the scheduled evidentiary

hearings—a consolidated proceeding for cases filed by Nimitz; Mellaconic IP,

LLC; and Lamplight Licensing LLC.  As I explained in detail in *Nimitz I*, the

---

[2] Unless otherwise noted, all docket citations for filings made in both of the above-captioned cases are from Civ. No. 22-235.

4

evidence adduced at that hearing raised serious concerns that the parties may have made inaccurate statements in filings with the Court; that counsel for the plaintiffs may have failed to comply with the Rules of Professional Conduct; that real parties in interest, such as IP Edge and Mavexar, may have been hidden from the Court and the defendants; and that those real parties in interest may have perpetrated a fraud on the court by fraudulently conveying the patents asserted in this Court to a shell LLC and filing fictious patent assignments with the United States Patent & Trademark Office (PTO), all designed to shield the real parties in interest from the potential liability they would otherwise face by asserting in litigation the patents in question. 2022 WL 17338396 at *26.

Believing that I needed more information to decide whether further action was warranted to address these four concerns, I issued in each of the Nimitz, Mellaconic, and Lamplight cases on November 10, 2022 a memorandum order requiring the plaintiffs in those cases to produce certain records (the November 10 Memorandum Order). *Nimitz Techs. LLC. CNET Media, Inc.*, No. 21-1247, D.I. 27; *Nimitz Techs. LLC v. BuzzFeed, Inc.*, No. 21-1362, D.I. 21; *Nimitz Techs. LLC v. Imagine Learning, Inc.*, No. 21-1855, D.I. 22; *Nimitz Techs. LLC v. Bloomberg L.P.*, No. 22-413, D.I. 18; *Mellaconic IP LLC v. TimeClock Plus, LLC*, No. 22-244, D.I. 22; *Mellaconic IP LLC v. Deputy, Inc.*, No. 22-541, D.I. 15;

*Lamplight Licensing LLC v. ABB Inc.*, No. 22-418, D.I. 24; *Lamplight Licensing LLC v. Ingram Micro, Inc.*, No. 22-1017, D.I. 17.

On that same day, I convened the second evidentiary hearing. This hearing addressed specifically cases filed by Backertop LLC, and for the reasons detailed in *Backertop I*, the evidence adduced at the hearing only heightened the concerns I discussed in *Nimitz I*. I told counsel during the hearing that I would be issuing an order along the lines of the November 10 Memorandum Order to require Backertop to produce certain relevant documents.

Before I was able to issue that order, Nimitz filed in the Federal Circuit on November 16, 2022 a petition for a writ of mandamus to reverse the November 10 Memorandum Order. *In re Nimitz Techs. LLC*, No. 23-103, D.I. 2 at 3 (Fed. Cir. Nov. 16, 2022). On November 17, 2022, the Federal Circuit stayed the November 10 Memorandum Order "pending further action of" that court. No. 23-103, D.I. 5 at 2 (Fed. Cir. Nov. 17, 2022).

The next day, Swirlate filed in these cases a motion "to stay any and all Orders and/or further proceedings in the above-captioned cases, including staying the evidentiary hearing scheduled for December 6, 2022, until such time as the Federal Circuit terminates the stay in connection with the Nimitz Petition." D.I. 29 at 1. I granted the motion. *See* December 1, 2022 Oral Order.

6

Swirlate also filed its own petition for a writ of mandamus with the Federal Circuit. *In re Swirlate IP LLC*, No. 23-107, D.I. 2 (Fed. Cir. Nov. 30, 2022). Swirlate sought by its petition an order directing me to dismiss the December 6, 2022 evidentiary hearings I had convened in these cases. On December 2, 2022, the Federal Circuit denied Swirlate's petition. *Id.*, D.I. 4.

On December 8, 2022, the Federal Circuit denied Nimitz's petition and lifted the stay in the Nimitz actions. *In re Nimitz Techs. LLC*, 2022 WL 17494845, at *3 (Fed. Cir. Dec. 8, 2022). In doing so, the Court held that the four concerns I had identified as the basis for the November 10 Memorandum Order

> [a]ll . . . relate[] to potential legal issues in the case, subject to the "principle of party presentation," *United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1579 (2020) (discussing the principle and its limits), or to aspects of proper practice before the court, over which district courts have a range of authority preserved by the Federal Rules of Civil Procedure, see Fed. R. Civ. P. 83(b); *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991). The district court did not seek information simply in order to serve an interest in public awareness, independent of the adjudicatory and court-functioning interests reflected in the stated concerns.

*Id.* at *2.

Nimitz thereafter filed a combined petition for panel rehearing and rehearing en banc in the Federal Circuit. No. 23-103, D.I. 55 (Fed. Cir. Dec. 28, 2022). On January 31, 2023, the Federal Circuit denied that petition. No. 23-103, D.I. 58 at 2

7

(Fed. Cir. Jan. 31, 2023). On February 3, Nimitz filed a motion asking the Federal Circuit "to stay issuing the mandate . . . pending the filing of a petition for mandamus and/or writ of certiorari in the United States Supreme Court." No. 23-103, D.I. 61 at 1 (Fed. Cir. Feb. 3, 2023). On February 7, the Federal Circuit issued a written order denying Nimitz's motion to stay the issuance of the mandate. No. 23-103, D.I. 62 at 2 (Fed. Cir. Feb. 7, 2023).

On February 17, 2023, Mellaconic filed a motion to set aside the November 10 Memorandum Order. Civ. No. 22-244, D.I. 26. On March 2, 2023, Lamplight filed a motion to set aside the November 10 Memorandum Order. Civ. No. 22-418, D.I. 31. I denied Mellaconic's and Lamplight's motions respectively on May 3, 2023 and May 22, 2023.

Nimitz, Mellaconic, and Lamplight eventually produced documents in response to the November 10 Memorandum Order. My review of those documents and my return to these Swirlate cases, however, was delayed by events transpiring in the Backertop cases.

## II.

In March 2023, soon after the Federal Circuit denied the mandamus petition challenging the November 10 Memorandum Order, I issued in each of the Backertop cases a document production order requiring Backertop to produce the

same categories of records that I ordered Nimitz, Mellaconic, and Lamplight to produce in the November 10 Memorandum Order.  Civ. No. 22-572, D.I. 25.  On April 3, 2023, Backertop filed a motion to set aside that document production order.  Civ. No. 22-572, D.I. 25.  Backertop also filed a motion to stay compliance with the document production order pending the resolution of its motion to set the document production order aside.  Civ. No. 22-572, D.I. 30.

While those motions were pending, both of Backertop's attorneys requested leave to withdraw as counsel.  Civ. No. 22-572, D.I. 29; D.I. 31.  One of Backertop's attorneys, Jimmy Chong, filed a formal motion to withdraw on April 25, 2023 and stated that he was "unable to effectively communicate with [his] Client in a manner consistent with good attorney-client relations."  Civ. No. 22-572, D.I. 29.  Backertop's other attorney of record, Ronald Burns, emailed his motion to withdraw to the Court's clerk's office.  Civ. No. 22-572, D.I. 31.  *Id.*  In the email, Mr. Burns stated that he was "sending [the clerk's office] [his] Local Rule 83.7 Withdrawals for filing, due to the fact that [he could not] get a response from [Mr. Chong]."  *Id.*  (Under Local Rule 83.5, Mr. Burns could not file and the Court would not docket these documents because Mr. Burns is not Delaware counsel.)

9

On May 1, 2023, I issued a memorandum opinion and order denying both Backertop's motion to stay compliance with the March 2023 document production order and its motion to set aside that order.  Civ. No. 22-572, D.I. 32; D.I. 33.  I also ordered Mr. Chong, Mr. Burns, and Backertop's sole owner and managing member Lori LaPray to appear in person at a hearing on June 8, 2023 "to sort through th[e] morass."  Civ. No. 22-572, D.I. 32 at 17.

On May 9, 2024, Backertop finally produced records in response to the March 2023 document production order.  Civ. No. 22-572, D.I. 36.  On that same day, Backertop filed a notice of unavailability and an accompanying declaration from Ms. LaPray.  Civ. No. 22-572, D.I. 35.  Ms. LaPray stated in the declaration that she was "unavailable to attend the June 8, 2023 hearing in-person" and was "unavailable to travel to Delaware for the foreseeable future."  *Id.* at 2.  Backertop asked that I allow Ms. LaPray to appear telephonically at the June 8, 2023 hearing.  Civ. No. 22-572, D.I. 35.

On May 31, 2023, I denied the request for Ms. LaPray to appear telephonically because credibility assessments are difficult to make over the phone, and I set a new hearing for July 20, 2023.  Civ. No. 22-572, D.I. 37 at 6.  I also gave Ms. LaPray the option to "submit to the Court no later than June 7, 2023 affidavits and supporting documentation" in the event that "a hearing on that date

10

present[ed] exceptional difficulties" for her. *Id.* On June 7, 2023, Backertop filed a motion for reconsideration with respect to my May 31, 2023 order, arguing for the first time that I lacked the authority to compel Ms. LaPray's appearance under Federal Rule of Civil Procedure 45. Civ. No. 22-572, D.I. 40. On July 10, 2023, I denied Backertop's motion for reconsideration. Civ. No. 22-572, D.I. 45; D.I. 46.

On July 12, 2023, Backertop filed a document it called a "Notice of Objection to and Non-participation in Judicial Inquisition." Civ. No. 22-572, D.I. 48. On July 20, 2023, I went forward with the scheduled hearing. Civ. No. 22-572, D.I. 53. When Ms. LaPray did not appear, I set a hearing for August 1, 2023 to give Backertop and Ms. LaPray "the opportunity to show cause for why Ms. LaPray should not be held in civil contempt for failing to comply with the Court's May 31, 2023 Memorandum Order and July 10, 2023 Order." Civ No. 22-572, D.I. 52.

On July, 28, 2023, Backertop filed a motion to dismiss the contempt proceeding. Civ No. 22-572, D.I. 54. Its principal argument in support of its motion was that I lacked the authority to pursue the contempt proceeding because "Backertop [had] voluntarily dismissed its complaints in September 2022, and Backertop and the Defendants [had] filed joint stipulations of dismissal in April 2023 and June 2023." Civ. No. 22-572, D.I. 54 at 4. I had already rejected this

argument in *Backertop I*.  Accordingly, I went forward with the August 1, 2023 show-cause hearing.  Ms. LaPray again refused to appear at that hearing.  Civ No. 22-572, D.I. 55.  And on August 21, 2023, I issued a memorandum opinion in which I denied Backertop's motion to dismiss the contempt proceeding and found Ms. LaPray in civil contempt of court.  Civ No. 22-572, D.I. 56 at 20.  I imposed a sanction in the form of a $200 per day fine for each day the court was open and Ms. LaPray failed to appear.  Civ No. 22-572, D.I. 57 at 2.

Between August 23, 2023 and August 31, 2023, Backertop filed appeals with the Federal Circuit challenging my August 21, 2023 order holding Ms. LaPray in contempt and my May 31, 2023 order denying Ms. LaPray's request to appear telephonically.

III.

While Backertop's appeals were pending, I turned my attention back to the Nimitz, Mellaconic, and Lamplight document productions.  I concluded my review of those documents in November 2023 and published my findings in *Nimitz II*.  As I explained in *Nimitz II*, although it was apparent from the documents produced by Nimitz, Mellaconic, and Lamplight that the productions were incomplete, the documents that were produced and the evidence adduced at the November 4, 2022 and November 10, 2022 hearings made clear, among other things, that:

12

- real parties in interest in the patents asserted in the Nimitz, Mellaconic, and Lamplight cases—including a foreign government— were not disclosed to the United States Patent & Trademark Office, the defendants sued by those LLCs, and the Court;

- the de facto owner of the patents asserted by the Nimitz, Mellaconic, and Lamplight LLCs was IP Edge;

- IP Edge had formed the LLCs under the names of relatively unsophisticated individuals and arranged for the patents to be assigned to the LLCs;

- the LLCs were empty vessels with no assets until IP Edge arranged for the assignment of the patents to those LLCs;

- counsel of record for the LLCs were in reality serving the interests of IP Edge and Mavexar, not the interests of their purported LLC clients; and

- counsel of record had filed and settled lawsuits in the name of these LLCs without ever having spoken with, let alone obtained the informed consent of, the sole owner and member of each of the LLCs.

Based on these and other findings set forth in *Nimitz II*, I referred the attorneys of record for Nimitz, Mellaconic, and Lamplight to the disciplinary counsel of their

13

respective bars, certain in-house attorneys associated with IP Edge and Mavexar to the Texas Supreme Court's Unauthorized Practice of Law Committee, and the matters in general to the United States Department of Justice and the PTO for further investigation.

I issued *Nimitz II* on November 27, 2023.  In December, I turned my attention back to these Swirlate cases.

IV.

Because these cases had been stayed in November 2022 at Swirlate's request pending the Federal Circuit's consideration of Nimitz's mandamus petition, I had neither convened the scheduled December 6, 2022 evidentiary hearing nor ordered Swirlate to produce records by the time I issued *Nimitz II*.  I had reason to believe that many if not all the findings set forth in *Nimitz II* would apply with respect to Swirlate and its counsel.  In *Nimitz II*, I had referred Swirlate's counsel Mr. Chong to the Delaware State Bar for his failure to comply with the Model Rules as counsel of record for Mellaconic and Lamplight.  *See* 2023 WL 8187441 at *28–33.  Swirlate's Amended Rule 7.1 Disclosure Statement indicates that Swirlate is a Texas LLC with a single owner and managing member.  D.I. 16.  And the April 27, 2020 patent assignment filed with the PTO that purports to transfer ownership of

14

the patents asserted in these cases to Swirlate lists "linhd@ip-edge.com" as the correspondence email address.[3]

Accordingly, on December 28, 2023, I ordered counsel for Swirlate— Messrs. Chong and Bennett—to appear before me at a hearing on January 17, 2024. Civ. No. 22-235, D.I. 30. In light of the fact that the Federal Circuit was addressing in the then-pending Backertop appeals the issue of whether I had the inherent authority to compel Backertop's sole owner and member to attend a court proceeding, I did not order Swirlate's sole owner and member, Dina Gamez, to appear at the January 17 hearing, and I limited the focus of my inquiry at that time to whether Messrs. Chong and Bennett had complied with the Model Rules of Professional Conduct.

At the January 17, 2024 hearing, I had the following exchange with Mr. Bennett:

> THE COURT: Okay. Well, as I explained in the
> [*Nimitz II*] opinion, and I alluded to earlier this afternoon,
> I made those referrals [of counsel of Nimitz, Mellaconic,
> and Lamplight to their respective bar disciplinary
> counsel] because it appears very clear that the counsel in
> those cases took action and specifically filed lawsuits and
> settled lawsuits on behalf of their client without having

---

[3] U.S. PATENT AND TRADEMARK OFFICE, ELECTRONIC PATENT ASSIGNMENT SYSTEM ID: PAT6080442 (April 27, 2020), https://legacy-assignments.uspto.gov/assignments/assignment-pat-52506-513.pdf [https://perma.cc/CR99-372P].

15

any direct communication at any point prior to the settlements or filing of the lawsuits with the client. And instead, just communicating through Mavexar or IP Edge.

And what I'm trying to ascertain in your cases, because you filed a number of cases in this court, including these cases on behalf of Swirlate, is whether or not you also engaged in that type of conduct. In other words, you did not at any point obtain from the client the informed consent of the client to file the lawsuits and to settle the lawsuits.

MR. BENNETT: Respectfully, no, Your Honor. I did receive informed consent from the client.

THE COURT: Okay. So let's talk about – and the client is Swirlate; is that right?

MR. BENNETT: Swirlate IP LLC.

THE COURT: And is it true that Dina Gamez is the sole owner and managing partner of Swirlate IP LLC?

MR. BENNETT: Yes.

THE COURT: Did you speak with Ms. Gamez before you filed these lawsuits?

MR. BENNETT: I don't specifically recall any conversation, but I don't – this was several years ago. I don't specifically recall one way or the other.

THE COURT: Did you have any e-mails with Ms. Gamez to get her permission to file on behalf of Swirlate IP LLC lawsuits in this Court?

16

MR. BENNETT: I received the agreement, or my engagement agreement, which gave me authority, signed by Ms. Gamez. I don't specifically remember where that e-mail came from.  It would have included, definitely, their agents at Mavexar.  But other than that, I don't recall specifically who may have been included in any e-mail chain.

THE COURT: All right. Did you -- what I'm really just trying to get to the nub, as opposed to having you produce documents, as I required in the other cases, is whether or not you relied exclusively on communications with Mavexar to take actions in these cases on behalf of Swirlate.

MR. BENNETT: No. I did not rely exclusively on Mavexar.

THE COURT: How did you obtain Ms. Gamez's informed consent to take directions from Mavexar?

MR. BENNETT: I would have received them through Mavexar.

THE COURT: So you never communicated directly with Ms. Gamez in the first instance to obtain her informed consent to have Mavexar communicate with you as her agent, or as Swirlate's agent, I should say?

MR. BENNETT: I'd have to look back at the engagement agreement. I don't specifically recall.

THE COURT: All right.  So what I'm going to do, then, since you don't recall, I'm going to have you have to produce that documentation so I can ascertain whether, in fact, you comported with the rules of ethics to obtain the informed consent of a client before filing these lawsuits.

17

D.I. 31 at 19:22–22:9.

Six days later, on January 23, 2024, I issued a memorandum order (the January Memorandum Order) that directed Swirlate to produce three categories of documents no later than February 22, 2024. The three categories of documents were identical to three of the five categories of documents covered by the November 10 Memorandum Order upheld by the Federal Circuit when it denied Nimitz's mandamus petition. (I had not included the other two categories in the January Memorandum Order because they did not relate directly to counsel's conduct, and my focus at that time was limited to whether Mr. Bennett had complied with the Model Rules.)

On February 13, 2024, Swirlate filed what it called a Motion for Clarification and/or Modification of Court's January 23, 2024 [Memorandum] Order and Request for Extension. D.I. 33. Swirlate asked for three forms of relief in its motion. First, it requested that I "narrow the scope of the [memorandum] order." D.I. 33 at 7 (capitalization removed). In support of this request, Swirlate argued:

> The portion of the [January Memorandum] Order
> requiring production of communications and
> correspondence related to "U.S. Patent Nos. 7,154,961
> and 7,567,622" could be interpreted to include
> production of communications for cases beyond the two
> cases at issue here and would include production of

18

documents for cases filed, pending, and dismissed before
these cases were filed and cases outside of this District
and the Third Circuit.

In addition, Mr. Bennett, whose compliance with the
ABA Model Rules was the sole focus of the Hearing, was
not involved in the "formation of Swirlate IP LLC,"
"assets, including, owned by Swirlate IP LLC," or "[t]he
potential acquisition of assets, including patents, by
Swirlate IP LLC."  These documents would be irrelevant
to whether Mr. Bennett complied with the ABA Model
Rules.  Because the sole issue raised by the Court during
the Hearing was directed to Mr. Bennett's compliance
with the ABA Model Rules when filing and dismissing
these two cases, Plaintiff respectfully seeks a
modification of the Order to strike paragraphs 2(a-e) and
3(a-e) of the Order.

D.I. 33 at 7–8 (footnote omitted).

Second, Swirlate requested that

[i]n the alternative, in the event Plaintiff opts to, or
otherwise is compelled by the Court to, produce the
documents described in the [January Memorandum]
Order, Plaintiff respectfully requests the opportunity
(1) to submit under seal for *in camera* review responsive
documents that are protected by the attorney-client
privilege and/or work product immunity; (2) to submit
under seal for *in camera* review responsive documents
that are confidential to Plaintiff; and (3) to seek re-
argument, or a stay pending appeal, of any determination
by the Court that such documents are not so protected by
the attorney-client privilege and/or work product
immunity.

19

D.I. 33 at 8.  Third, Swirlate requested that "[i]n the event Plaintiff opts to, or

otherwise is compelled by the Court to, produce the documents described in the

[January Memorandum] Order, Plaintiff respectfully requests an additional three

weeks, to March 14, 2024, to produce such documents." D.I. 33 at 10.

     I granted in part and denied in part Swirlate's motion and issued a new

document production order on February 15, 2024 (the February Document

Production Order).  With respect to Swirlate's first request, I agreed to drop the

requirement that Swirlate produce documents related to "[t]he formation of

Swirlate IP LLC," "[a]ssets, including, owned by Swirlate IP LLC," or "[t]he

potential acquisition of assets, including patents, by Swirlate IP LLC." *Compare*

D.I. 32, *with* D.I. 34.  I also agreed to limit the production of documents regarding

"U.S. Patent Nos. 7,154,961 and 7,567,622" to documents regarding "U.S. Patent

Nos. 7,154,961 and 7,567,622 *as they relate to these cases*." D.I. 34 at 2, 4.

(emphasis added).  I denied the request insofar as it sought to relieve Swirlate of its

obligation to produce documents related to "[t]he nature, scope, and likelihood of

any liability, including but not limited to attorney fees, expenses, and litigation

costs, Swirlate IP LLC could incur as a result of its acquisition of and/or assertion

in litigation of any patent."

With respect to Swirlate's second request, I added the following language in the February Document Production Order:

> Swirlate is granted leave to submit under seal responsive documents that it has good cause to believe should be submitted under seal. For any document submitted under seal, Swirlate should identify with specificity in a cover letter the reasons that Swirlate has submitted the document under seal. Swirlate shall also cite case law to support its position that any particular document should be maintained under seal.

D.I. 34 at 4. And finally, I granted Swirlate's request to have until March 14, 2024 to produce the documents covered by the February Document Production Order.

On March 14, Swirlate produced to my chambers under seal 710 pages of documents covered by the February Document Production Order. Notwithstanding the fact that Swirlate had expressly requested leave "to submit under seal for *in camera* review responsive documents that are protected by the attorney-client privilege and/or work product immunity" and I had expressly ruled in response to that request that Swirlate was granted leave to submit under seal documents that it had good cause to believe should be submitted under seal, many of the documents are redacted, in some cases in their entirety.

In a cover letter for the production, Swirlate stated:

> To the extent the Court's Order seeks documents protected by the attorney-client privilege and/or work product immunity, the Court essentially seeks to compel

21

> Mr. Bennett to violate his duties to his client (before
> making a decision whether to refer Mr. Bennett to
> disciplinary counsel). Here, Swirlate is *not* waiving
> attorney-client privilege and work product immunity of
> its documents. Submitted herewith is a Declaration of
> Dina Gamez, Swirlate IP LLC's owner and managing
> member, stating that Swirlate's privilege and work
> product immunity are not being waived, and that
> Swirlate's agents and attorneys are instructed to maintain
> the privilege and work product of Swirlate's documents.
> Documents that contain attorney-client privilege and/or
> work product are therefore being withheld or redacted to
> remove attorney-client privilege and/or work product,
> and all withheld or redacted documents will be identified
> on the concurrently submitted privilege log.

D.I. 36 at 2 (footnote omitted).

It is axiomatic that the compelled disclosure of privileged material by a court does not constitute a waiver of the privilege. *See Bowen v. Parking Auth. of City of Camden,* 2002 WL 1754493, at *4 (D.N.J. July 30, 2002) ("a production of documents ordered by a court does not constitute a waiver of attorney-client privilege because such production was not 'voluntary'"). *See also Gov't Guarantee Fund of Republic of Finland v. Hyatt Corp.,* 182 F.R.D. 182, 187 (D.V.I. 1998) ("The attorney client privilege is not destroyed by disclosure of protected information to an outside party which is done only under the compulsion of a court order."); *Cobell v. Norton*, 213 F.R.D. 69, 75 (D.D.C. 2003) ("This Court is [] unaware of any case in which the submission of privileged material for

22

in camera review has been deemed to constitute a waiver of the asserted privilege. It would thus be illogical to find that a closely analogous situation—namely, the submission of privileged documents to a judicial officer acting pursuant to the authority vested in him by court order—resulted in a waiver of privilege."). And so, when I first read Swirlate's letter—especially in light of Swirlate's express request for leave to submit privileged materials under seal and my granting of that request—I was concerned that Swirlate and Mr. Bennett were simply flouting the February Document Production Order. But it also occurred to me that perhaps Mr. Bennett believed that Swirlate could avoid waiving the attorney-client privilege and/or work product immunity for produced documents only if it produced those documents in response to another compulsion order issued after Swirlate had asserted the privilege and work product immunity with respect to those specific documents. In any event, before I decided what to do in response to Swirlate's submission, I learned that the Federal Circuit had scheduled oral argument in the Backertop appeals for early April and, because of the potential overlap of issues between the Backertop cases and these cases, I elected to wait until the Federal Circuit issued its decision in the Backertop appeals before taking further action in these cases.

V.

On July 16, 2024, the Federal Circuit issued its opinion in the Backertop

appeals.  The opinion reads in relevant part:

> We hold that the District Court's order requiring Ms.
> LaPray to appear at an in-person hearing falls squarely
> within its inherent powers.
>
> * * * *
>
> Turning to the District Court's contempt order,
> Appellants focus on an alleged conflict between the
> District Court's order to appear and FRCP 45.  Backertop
> and Ms. LaPray do not argue that the District Court's
> order to appear was otherwise unreasonable or an abuse
> of discretion.  Nor could they.  The District Court's order
> was a reasonable response to the problems and needs
> confronting the court's fair administration of justice.
>
> The District Court's order to compel Ms. LaPray's
> attendance was an appropriate means to investigate
> potential misconduct involving Backertop, a corporate
> party of which she is the sole representative.  More
> specifically, the District Court's stated concerns include
> that Backertop may have concealed certain third-party
> funding and the real parties in interest, that those real
> parties in interest may have perpetrated a fraud on the
> court, and that Backertop's counsel may have failed to
> comply with the Rules of Professional Conduct.
> Backertop's counsel's motions to withdraw and
> Backertop's insufficient document production only
> compounded the District Court's concerns.  In light of
> this, compelling Ms. LaPray's attendance was not an
> abuse of discretion of the District Court's inherent
> authority.  The District Court stated that Ms. LaPray's
> attendance in person was required to assess her

24

credibility given (1) the representations and positions of counsel and Ms. LaPray and their apparent lack of communication, especially in light of counsels' motion to withdraw; and (2) the District Court's questions for Ms. LaPray about [Backertop's document] production. As the Third Circuit recognizes, it is particularly important to observe witnesses in person when making credibility determinations. While another district court may have found that a telephonic or videoconference hearing was sufficient, it was reasonable for the District Court here to require in-person testimony in furtherance of its authority to investigate attorney and party misconduct.

\* \* \* \*

Because the District Court was within its inherent authority to order Ms. LaPray to appear before it to investigate fraud on the court, and the order imposing monetary sanctions when she did not appear was not an abuse of discretion, we affirm.

*Backertop Licensing LLC v. Canary Connect, Inc.*, 107 F.4th 1335, 1342–45 (Fed. Cir. 2024).

Last week, on August 22, 2024, the Federal Circuit issued the mandate in the Backertop appeals. Civ. No. 22-572, D.I. 64.

\* \* \* \*

NOW THEREFORE, at Wilmington this Twenty-eighth day of August in 2024, it is HEREBY ORDERED that:

25

1. Swirlate shall submit to the Court no later than September 6, 2024 an unredacted version of the document production it submitted to the Court on March 14, 2024 and any responsive documents it withheld from that March 14, 2024 production.

2. The Court will convene a hearing in Courtroom 4B on September 18, 2024 at 1:00 p.m. to address its concerns that counsel for Swirlate may have failed to comply with the Rules of Professional Conduct; that real parties in interest, such as IP Edge and Mavexar, may have been hidden from the Court and the defendants; and that Swirlate, its counsel, and those real parties in interest may have perpetrated a fraud on the Court.  Dina Gamez and David Bennett shall attend the hearing in person.

CHIEF JUDGE

26