AO 187 (Rev. 7/87) Exhibit and Witness List

# UNITED STATES DISTRICT COURT

DISTRICT OF _____ Delaware

Swirlate IP LLC

. V.

Quantela, Inc.; Lantronix, Inc.

## EXHIBIT AND WITNESS LIST

Case Number:  22cv235; 22cv249-CFC

| PRESIDING JUDGE Chief Judge Colm F. Connolly | PLAINTIFF'S ATTORNEY David Finger | DEFENDANT'S ATTORNEY |
|---|---|---|
| TRIAL DATE (S) 9/18/2024 | COURT REPORTER B. Archer | COURTROOM DEPUTY |

| PLF. NO. | DEF. NO. | DATE OFFERED | MARKED | ADMITTED | DESCRIPTION OF EXHIBITS* AND WITNESSES |
|---|---|---|---|---|---|
| W1 | | 9/18/2024 | | | Dina Gamez - live, sworn. |
| 1 | | | X | X | Bates No. SW000015-SW000020. |
| 2 | | | X | X | Bates No. SW000046-SW000051. |
| 3 | | | X | X | Bates No. SW000038. |
| 4 | | | X | X | Bates No. SW000052-SW000059. |
| 5 | | | X | X | Bates No. SW000021-SW000024. |
| 6 | | | X | X | Bates No. SW000027. |
| 7 | | | X | X | Bates No. SW000215. |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

* Include a notation as to the location of any exhibit not held with the case file or not available because of size.



EXHIBIT

01

April 10, 2020 ("Effective Date")

Dina Gamez
Managing Member (of Client)
SWIRLATE IP LLC
6009 W Parker Rd, Ste 149 – 1090
Plano, TX 75093

Re: Consulting Services

Dear Ms. Gamez:

This agreement confirms that **SWIRLATE IP LLC** ("Client"), a limited liability corporation organized under the laws of Texas, with a principal place of business at **6009 W Parker Rd, Ste 149 - 1090, Plano, TX 75093**, is engaging **MAVEXAR LLC** ("Consulting Company"), a limited liability company incorporated under the laws of Texas, having its principal place office at **2150 S. Central Expressway, Suite 200, McKinney, TX 75070** to provide consulting services provided by the terms and conditions below.

## I.       RESPONSIBILITIES

The Consulting Company shall provide non-legal services, including one or more of the following: (a) identify companies that potentially infringe on the rights covered by the patents owned by Client ("the Patents"), (b) assist Client in monetizing the Patents; (c) assist in identifying products and/or services covered by the Patents; (d) select and negotiate rates to enable retention of counsel; and (e) manage counsel as necessary during the course of litigation and licensing efforts.

Client understands that Consulting Company is not a law firm, accounting firm, tax advisory, or the like.  Client will seek appropriate third party accounting, tax, legal or similar advisory services.  Client agrees to maintain clear and exclusive title to the Patents, and not incur any liens, encumbrances, or third party claims with respect to the Patents.

The parties understand that Consulting Company is not a fiduciary of Client, and will act as an independent contractor.   In addition, Consulting Company is not an affiliate of Client, and does not control, directly or indirectly, Client.

Both parties agree to take all reasonable actions required to maintain confidentiality of this Agreement and of any information disclosed throughout the term of this Agreement.  Both companies agree to maintain all financial and other records,

sufficient for determining each party's respective obligations under this Agreement. Such records of each party shall be promptly made available to the other party via written request from the requesting party.

## II.    COMPENSATION

Client agrees that all Gross Recoveries shall be deposited into a lawyer's trust account (IOLTA account) designated by Consulting Company. Client agrees that Consulting Company shall be reimbursed for all Costs and Expenses from Gross Recoveries, and that Consulting Company shall be paid from Net Proceeds ("Consulting Fee"), in accordance to the percentages shown in the chart below:

|   | Consulting Company | Client |
|---|---|---|
| Net Proceeds | 95.0% | 5.0 % |

"Gross Recovery" or "Gross Recoveries" is defined as the gross amount of any monies and other forms of consideration received through monetization of the Patents. Gross Recovery shall include, without limitation, any and all settlement fees, licensing fees, fees from a sale, or other payment from other transactions, as well as, any other proceeds (including assets) related to the Patents.

"Net Proceeds" is defined as Gross Recovery minus Costs and Expenses. Costs and Expenses include all costs and expenses incurred in relation to obtaining, creating, defending, or maintaining the Patents or monetization efforts such as (1) Litigation Costs incurred in connection with the monetization, licensing and/or enforcement of the Patents; (2) consulting and expert fees (e.g., infringement expert, validity expert, technical expert, damages expert(s)) and incurred in connection with the monetization, licensing and/or enforcement of the Patents; (3) reasonably-related costs incurred in relation to monetizing the Patents (e.g., incorporation fees, travel fees, hotel fees) before or after the Effective Date of this Agreement;(4) acquisition costs; (5) backend payments to any prior owners or prior consultants; (6) prosecution and other costs in relation to the monetization of the Patents before or after the Effective Date of this Agreement; and (7) costs and fees associated with any adversarial proceeding relating to the Patents, including but not limited to Inter Parties Review and reexaminations. Net Proceeds resulting from Consulting Company efforts undertaken during the term of this Agreement, but received after the term of this Agreement shall be deemed to have been received during the term of this Agreement and shall be distributed in the manner described above, regardless of whether the Patents are still owned by Client at the time the proceeds are received.

"Litigation Costs" is defined as costs reasonably incurred, during the term of this Agreement, including but not limited to litigation and local counsel fees, whether on an hourly or contingent-fee basis, filing fees, court-ordered mediation fees, subpoena service fees, deposition transcripts, long-distance telephone charges,

SW000016

document retrieval and copying costs, attorneys' travel expenses, legal research and database fees, investigator fees, witness fees, expert fees, alternative dispute resolution fees, arbitration fees, deposition videos and transcripts and copy fees, fees associated with technical and graphic support for exhibiting videos and exhibits to the court and jury, and graphic design and construction fees for exhibits.

### III.   COSTS AND EXPENSES

Client is the sole owner and final decision maker on any and all decisions relating, either directly or indirectly, to the prosecution, litigation, licensing, and, more generally, monetization of the Patents.

For all Costs and Expenses relating to the monetization of the Patents, Consulting Company shall advance such Costs and Expenses as one or more loans to Client. Such loans are reimbursable from Gross Recovery.

Further, upon execution of this agreement, Client hereby grants to Consulting Company a lien on any Gross Recovery, to the full extent permitted by Texas law, to secure Consulting Company's Costs and Expenses reimbursable in accordance with this agreement.

Each Party shall bear its own costs and expenses relating to this engagement, including travel and office expenses such as copying, telephone, faxing, internet, etc.

Each party's reasonable costs and expenses related to the monetization and licensing of the Patents (*e.g.*, incorporation costs) are reimbursable from Gross Recovery received after the date that such cost and expenses are incurred.

### IV.   TERMINATION

In the event of a material breach on part of Client, Consulting Company may terminate this Agreement, provided Consulting Company provides Client with an opportunity to cure such material breach within ten (10) days, and provided that there is ten (10) days of written notice to Client prior to the termination.  In the event of such a termination, Client shall remain responsible for and pay the Consulting Fee to the Consulting Company as required by this Agreement.

In the event of a material breach on part of the Consulting Company, Client may terminate this Agreement, provided Client provides Consulting Company with an opportunity to cure such material breach within ten (10) days, and provided that there is ten (10) days of written notice to the Consulting Company prior to the termination.  In the event of such a termination, Client shall pay, to Consulting Company, the amount of any unpaid Consulting Fee received prior to the breach, minus any damages directly resulting from the breach.

In the event Client sells or transfers a portion or all of the right, title, and interest in the Patents for non-monetary consideration, all provisions of Section VI shall survive and transfer with the right, title and interest in the Patents, and be binding upon the respective successors, permitted assigns, heirs, beneficiaries and personal representatives and any other party with right, title, and interest in the Patents.

At any time during the term or after termination of this Agreement, Consulting Company may request and Client shall furnish a record of all costs, expenses, revenues, and other financial data, incurred or received as of the date of any such request.

## V.   MISCELLANEOUS

a.   This Agreement memorializes the parties' understanding that communications covered by the attorney-client privilege, work product immunity, or other privileges, are covered by a community of interest that exists between them with respect to the services provided under this Agreement.   The parties intend that all applicable privileges and immunities are and will be preserved.

b.   This Agreement may not be assigned by either party without the written consent of the other party.

c.   Client understands and acknowledges that any efforts or legal action to enforce the Patents present the risk that at least one of the Patents may be found invalid or unenforceable.  Consulting Company shall not be liable if any of the aforementioned risks materializes.  Consulting Company shall not be liable for any consequential, incidental, indirect or special damages regardless of the form of action arising from or relating to this Agreement.   In no event shall Consulting Company's liability under this Agreement exceed the amount of payments paid under this Agreement.

d.   This Agreement represents the complete and exclusive statement of mutual understanding of the Parties and supersedes and cancels all previous and contemporaneous written and oral agreements and communications relating to the subject matter of this Agreement, including but not limited to any and all term sheets exchanged between the Parties.

e.   This Agreement shall inure to the benefit of, and be binding upon the respective successors, permitted assigns, heirs, beneficiaries and personal representatives of the Parties.

## VI.   Confidentiality and Common Interest

a. The parties to this Agreement agree to not disclose the conditions and/or existence of this Agreement without prior written consent from the other party. Client further agrees to immediately notify Consulting Company of any contact made by the press, media, or any other third party regarding this matter, the Patent, and other licensing, litigation, and monetization activities relating to the Patent.

b. Both Consulting Company and client acknowledge that there are shared common legal interests and that it is in both parties common and individual interests to share certain confidential communications and information during the course of this engagement.

c. From time to time, mutual interests of both parties have been and will be best served by exchanging, whether orally or in writing, documents, factual materials, mental impressions, memoranda, interview reports, and other information (collectively, "Joint Materials").

d. These Joint Materials are protected from disclosure to adverse or other parties as a result of attorney-client privilege, the attorney work-product doctrine, and/or other applicable privileges, immunities or confidentialities.

e. This Agreement memorializes the parties' understanding that such joint materials and related communications are covered by a community of interest that exists between them and that all applicable privileges and immunities have been, are, and will be preserved.

SW000019

## SIGNATURE PAGE

We look forward to working with you. Please sign below and return an executed copy to us.

Yours truly,

Mavexar LLC

By: _____
         Sanjay Pant
         Managing Member
         Mavexar LLC
         2150 S. Central Expressway, Suite 200
         McKinney, TX 75070

## Acknowledged and Agreed:

SWIRLATE IP LLC (Client)

By: _____
         Dina Gamez
         Managing Member
         SWIRLATE IP LLC
         6009 W Parker Rd, Ste 149 – 1090
         Plano, TX 75093

Date Signed: __April 15, 2020__



April 11, 2020 ("Effective Date")

Dina Gamez
Managing Member (of Client)
SWIRLATE IP LLC
6009 W Parker Rd, Ste 149 – 1090
Plano, TX 75093

Re: Consulting Services

Dear Ms. Gamez:

This agreement confirms that **SWIRLATE IP LLC** ("Client"), a limited liability corporation organized under the laws of Texas, with a principal place of business at **6009 W Parker Rd, Ste 149 – 1090**, is engaging **MAVEXAR LLC** ("Consulting Company"), a limited liability company incorporated under the laws of Texas, having its principal place office at **2150 S. Central Expressway, Suite 200, McKinney, TX 75070** to provide consulting services provided by the terms and conditions below.

## I.   RESPONSIBILITIES

The Consulting Company shall provide non-legal services, including one or more of the following: (a) identify companies that potentially infringe on the rights covered by the patents owned by Client ("the Patents"), (b) assist Client in monetizing the Patents; (c) assist in identifying products and/or services covered by the Patents; (d) select and negotiate rates to enable retention of counsel; and (e) manage counsel as necessary during the course of litigation and licensing efforts.

Client understands that Consulting Company is not a law firm, accounting firm, tax advisory, or the like. Client will seek appropriate third party accounting, tax, legal or similar advisory services. Client agrees to maintain clear and exclusive title to the Patents, and not incur any liens, encumbrances, or third party claims with respect to the Patents.

The parties understand that Consulting Company is not a fiduciary of Client, and will act as an independent contractor. In addition, Consulting Company is not an affiliate of Client, and does not control, directly or indirectly, Client.

Both parties agree to take all reasonable actions required to maintain confidentiality of this Agreement and of any information disclosed throughout the term of this Agreement. Both companies agree to maintain all financial and other records,

CONFIDENTIAL

sufficient for determining each party's respective obligations under this Agreement. Such records of each party shall be promptly made available to the other party via written request from the requesting party.

## II.   COMPENSATION

Client agrees that all Gross Recoveries shall be deposited into a lawyer's trust account (IOLTA account) designated by Consulting Company. Client agrees that Consulting Company shall be reimbursed for all Costs and Expenses from Gross Recoveries. In exchange for the services provided by Consulting Company in the first paragraph of Section I of this Agreement, Client agrees to pay and Consulting Company shall be paid from Net Proceeds ("Consulting Fee"), in accordance to the percentages shown in the chart below:

| Net Proceeds | Consulting Company As agreed by Client and Consulting Company | Client As agreed by Client and Consulting Company |
|---|---|---|

"Gross Recovery" or "Gross Recoveries" is defined as the gross amount of any monies and other forms of consideration received through monetization of the Patents. Gross Recovery shall include, without limitation, any and all settlement fees, licensing fees, fees from a sale, or other payment from other transactions, as well as, any other proceeds (including assets) related to the Patents.

"Net Proceeds" is defined as Gross Recovery minus Costs and Expenses. Costs and Expenses include all costs and expenses incurred in relation to obtaining, creating, defending, or maintaining the Patents or monetization efforts such as (1) Litigation Costs incurred in connection with the monetization, licensing and/or enforcement of the Patents; (2) consulting and expert fees (e.g., infringement expert, validity expert, technical expert, damages expert(s)) and incurred in connection with the monetization, licensing and/or enforcement of the Patents; (3) reasonably-related costs incurred in relation to monetizing the Patents (e.g., incorporation fees, travel fees, hotel fees) before or after the Effective Date of this Agreement;(4) acquisition costs; (5) backend payments to any prior owners or prior consultants; (6) prosecution and other costs in relation to the monetization of the Patents before or after the Effective Date of this Agreement; and (7) costs and fees associated with any adversarial proceeding relating to the Patents, including but not limited to Inter Parties Review and reexaminations. Net Proceeds resulting from Consulting Company efforts undertaken during the term of this Agreement, but received after the term of this Agreement shall be deemed to have been received during the term of this Agreement and shall be distributed in the manner described above, regardless of whether the Patents are still owned by Client at the time the proceeds are received.

CONFIDENTIAL

"Litigation Costs" is defined as costs reasonably incurred, during the term of this Agreement, including but not limited to litigation and local counsel fees, whether on an hourly or contingent-fee basis, filing fees, court-ordered mediation fees, subpoena service fees, deposition transcripts, long-distance telephone charges, document retrieval and copying costs, attorneys' travel expenses, legal research and database fees, investigator fees, witness fees, expert fees, alternative dispute resolution fees, arbitration fees, deposition videos and transcripts and copy fees, fees associated with technical and graphic support for exhibiting videos and exhibits to the court and jury, and graphic design and construction fees for exhibits.

## III.   COSTS AND EXPENSES

Client is the sole owner and final decision maker on any and all decisions relating, either directly or indirectly, to the prosecution, litigation, licensing, and, more generally, monetization of the Patents.

For all Costs and Expenses relating to the monetization of the Patents, Consulting Company shall advance such Costs and Expenses as one or more loans to Client. Such loans are reimbursable from Gross Recovery. In the event any such loan is not paid back in full from Gross Recovery, Client shall be responsible for full payment of all such loans. If Client fails to make such payment within 30 days following the termination of the final litigation filed pursuant to this Agreement, Consulting Company shall have all available recourse pursuant to law to obtain recovery for such loans.

Further, upon execution of this agreement, Client hereby grants to Consulting Company a lien on any Gross Recovery, to the full extent permitted by Texas law, to secure Consulting Company's Costs and Expenses reimbursable in accordance with this agreement.

Each Party shall bear its own costs and expenses relating to this engagement, including travel and office expenses such as copying, telephone, faxing, internet, etc.

Each party's reasonable costs and expenses related to the monetization and licensing of the Patents (*e.g.*, incorporation costs) are reimbursable from Gross Recovery received after the date that such cost and expenses are incurred.

## IV.   TERMINATION

In the event of a material breach on part of Client, Consulting Company may terminate this Agreement, provided Consulting Company provides Client with an opportunity to cure such material breach within ten (10) days, and provided that there is ten (10) days of written notice to Client prior to the termination. In the event of such a termination, Client shall remain responsible for and pay the Consulting Fee to the Consulting Company as required by this Agreement.

CONFIDENTIAL

In the event of a material breach on part of the Consulting Company, Client may terminate this Agreement, provided Client provides Consulting Company with an opportunity to cure such material breach within ten (10) days, and provided that there is ten (10) days of written notice to the Consulting Company prior to the termination. In the event of such a termination, Client shall pay, to Consulting Company, the amount of any unpaid Consulting Fee received prior to the breach, minus any damages directly resulting from the breach.

In the event Client sells or transfers a portion or all of the right, title, and interest in the Patents for non-monetary consideration, all provisions of Section VI shall survive and transfer with the right, title and interest in the Patents, and be binding upon the respective successors, permitted assigns, heirs, beneficiaries and personal representatives and any other party with right, title, and interest in the Patents.

At any time during the term or after termination of this Agreement, Consulting Company may request and Client shall furnish a record of all costs, expenses, revenues, and other financial data, incurred or received as of the date of any such request.

## V.  MISCELLANEOUS

    a.  This Agreement memorializes the parties' understanding that communications covered by the attorney-client privilege, work product immunity, or other privileges, are covered by a community of interest that exists between them with respect to the services provided under this Agreement.  The parties intend that all applicable privileges and immunities are and will be preserved.

    b.  This Agreement may not be assigned by either party without the written consent of the other party.

    c.  Client understands and acknowledges that any efforts or legal action to enforce the Patents present the risk that at least one of the Patents may be found invalid or unenforceable. Consulting Company shall not be liable if any of the aforementioned risks materializes.  Consulting Company shall not be liable for any consequential, incidental, indirect or special damages regardless of the form of action arising from or relating to this Agreement.  In no event shall Consulting Company's liability under this Agreement exceed the amount of payments paid under this Agreement.

    d.  This Agreement represents the complete and exclusive statement of mutual understanding of the Parties and supersedes and cancels all previous and contemporaneous written and oral agreements and communications relating to the subject matter of this Agreement,

**CONFIDENTIAL**

including but not limited to any and all term sheets exchanged between the Parties.

e.  This Agreement shall inure to the benefit of, and be binding upon the respective successors, permitted assigns, heirs, beneficiaries and personal representatives of the Parties.

## VI.  Confidentiality and Common Interest

a.  The parties to this Agreement agree to not disclose the conditions and/or existence of this Agreement without prior written consent from the other party. Client further agrees to immediately notify Consulting Company of any contact made by the press, media, or any other third party regarding this matter, the Patent, and other licensing, litigation, and monetization activities relating to the Patent.

b.  Both Consulting Company and client acknowledge that there are shared common legal interests and that it is in both parties common and individual interests to share certain confidential communications and information during the course of this engagement.

c.  From time to time, mutual interests of both parties have been and will be best served by exchanging, whether orally or in writing, documents, factual materials, mental impressions, memoranda, interview reports, and other information (collectively, "Joint Materials").

d.  These Joint Materials are protected from disclosure to adverse or other parties as a result of attorney-client privilege, the attorney work-product doctrine, and/or other applicable privileges, immunities or confidentialities.

e.  This Agreement memorializes the parties' understanding that such joint materials and related communications are covered by a community of interest that exists between them and that all applicable privileges and immunities have been, are, and will be preserved.

## SIGNATURE PAGE

We look forward to working with you.  Please sign below and return an executed copy to us.

Yours truly,


Mavexar LLC

By:  _Sanjay Pant_
       Sanjay Pant
       Managing Member
       Mavexar LLC
       2150 S. Central Expressway, Suite 200
       McKinney, TX 75070


## Acknowledged and Agreed:


SWIRLATE IP LLC (Client)

By:  _Dina Gamez_
       Dina Gamez
       Managing Member
       SWIRLATE IP LLC
       6009 W Parker Rd, Ste 149 – 1090
       Plano, TX 75093

Date Signed: 4/11/2020


CONFIDENTIAL

SW000051

**EXHIBIT**

**O3**

Swirlate IP LLC - Consulting agreement and engagement letter

From: Linh Deitz (linhd@ip-edge.com)

To: dinag02@yahoo.com

Date: Wednesday, April 15, 2020 at 11:35 AM CDT

Hello Dina,

Please see attached the consulting agreement for your new company, Swirlate IP LLC. I have also attached your Certificate of Formation for your new company for your records. Also included is an engagement letter with David Bennett, who will be lead counsel for your patent litigation cases. Can you please sign and date both the consulting agreement and engagement letter and send them back to me please? Do not hesitate to give me a call if you have any questions.

Sincerely,

Linh Deitz
Office Manager
IP Edge LLC

 Consulting Agreement - Swirlate IP LLC (Dina Gamez) - Half Executed.pdf
165.5kB

 Swirlate IP Engagement Letter - Direction IP.pdf
171.7kB

 Swirlate IP LLC - Certificate of Formation.pdf
43.6kB

CONFIDENTIAL WORK PRODUCT

**EXHIBIT**

**04**

DIRECTION IP LAW
P.O. Box 14184
Chicago, Illinois 60614-184
(312) 291-1667
www.directionip.com

*CONFIDENTIAL*

David R. Bennett
dbennett@directionip.com

*PRIVILEGED AND CONFIDENTIAL*

**VIA ELECTRONIC MAIL**
Swirlate IP LLC
Dina Gamez
6009 W Parker Rd, Ste 149 – 1090
Plano, TX 75093-8121

April 14, 2020

Re:    Engagement Letter and Contingency Fee Agreement for U.S. Patent Nos. 7,154,961, 7,567,622, and Related Patents

Dear Ms. Gamez:

I want to thank you for selecting David R. Bennett, d/b/a Direction IP Law, ("Direction IP," or "I," or "my") to represent Swirlate IP LLC ("Client," or "you," or "your") in certain patent licensing and enforcement actions described below.

This letter and agreement (collectively "Agreement") sets forth the basis upon which Direction IP will represent Client in both (1) the scope of my legal representation, as well as (2) your obligations to me as my client. This letter further sets forth the agreement by which attorneys' fees and costs will be paid to Direction IP.

**PATENT PORTFOLIO OWNERSHIP**

Client represents that it is the sole and exclusive owner and has full authority and right to license, sublicense, and prosecute an infringement action (including the right to collect both past and future damages or royalties) for U.S. Patent Nos. 7,154,961 and 7,567,622. These patents, together with all related patents, pending patent applications, foreign or domestic counterparts, and any future patent applications which can be derived in any part from, or are legally related to, the aforementioned patent and/or applications, along with any other patents related to the same or substantially similar fields of technology owned by Client, are referred to collectively herein as the "Patent Portfolio." Client represents that it has not assigned or in any other way sold, divested or alienated its rights to all or a portion of same. Client further represents that to the best of its knowledge, the Patent Portfolio has not been litigated.

**DIRECTION IP LAW**
P.O. Box 14184
Chicago, Illinois  60614-184
(312) 291-1667
www.directionip.com

*CONFIDENTIAL*

David R. Bennett
dbennett@directionip.com

### PRIVILEGED AND CONFIDENTIAL

**VIA ELECTRONIC MAIL**
Swirlate IP LLC
Dina Gamez
6009 W Parker Rd, Ste 149 – 1090
Plano, TX 75093-8121

April 14, 2020

Re:     **Engagement Letter and Contingency Fee Agreement for U.S. Patent Nos.
7,154,961, 7,567,622, and Related Patents**

Dear Ms. Gamez:

I want to thank you for selecting David R. Bennett, d/b/a Direction IP Law, ("Direction IP," or
"I," or "my") to represent Swirlate IP LLC ("Client," or "you," or "your") in certain patent
licensing and enforcement actions described below.

This letter and agreement (collectively "Agreement") sets forth the basis upon which Direction
IP will represent Client in both (1) the scope of my legal representation, as well as (2) your
obligations to me as my client. This letter further sets forth the agreement by which attorneys'
fees and costs will be paid to Direction IP.

### PATENT PORTFOLIO OWNERSHIP

Client represents that it is the sole and exclusive owner and has full authority and right to license,
sublicense, and prosecute an infringement action (including the right to collect both past and
future damages or royalties) for U.S. Patent Nos. 7,154,961 and 7,567,622. These patents,
together with all related patents, pending patent applications, foreign or domestic counterparts,
and any future patent applications which can be derived in any part from, or are legally related
to, the aforementioned patent and/or applications, along with any other patents related to the
same or substantially similar fields of technology owned by Client, are referred to collectively
herein as the "Patent Portfolio." Client represents that it has not assigned or in any other way
sold, divested or alienated its rights to all or a portion of same. Client further represents that to
the best of its knowledge, the Patent Portfolio has not been litigated.

Swirlate IP LLC
April 14, 2020
Page 2

*CONFIDENTIAL*

**SCOPE OF DIRECTION IP REPRESENTATION.**

Client has authorized Direction IP to enforce Client's rights related to the Patent Portfolio. Direction IP, together with Client, will endeavor to initiate litigation against certain persons who are believed to be infringers of the Patent Portfolio, in an effort to negotiate satisfactory settlements, including appropriate royalties and licensing arrangements, and to document any such licensing arrangements.   Client therefore authorizes Direction IP to take all actions reasonably necessary to initiate, prosecute and resolve all litigation related to the Patent Portfolio, subject to Client's right of instruction and approval and the understanding in the paragraph below, and subject to the Direction IP's conflict checks and ethical obligations.  Client has preliminarily identified certain companies as potential infringers of the Patent Portfolio, and Direction IP confirms that it does not have conflicts of interest in terms of enforcing the Patent Portfolio against those companies.  The Parties contemplate that litigation will be brought, in the first instance, in the District of Delaware, and Client is a Texas Limited Liability Company with its principal place of business in the Eastern District of Texas.

The Parties have discussed strategy for potential litigation on the Patent Portfolio.  It has been determined that the initial wave of litigation will include approximately 4-6 defendants that Client believes are infringers of the Patent Portfolio.  If and when litigation against additional defendants is contemplated, Direction IP and Client will discuss in good faith whether such additional litigation should be handled by Direction IP under this agreement; however, Client is under no obligation to retain Direction IP for such litigation.  The cost and expense of identifying and initially charting potential infringers will be undertaken by Client.  Client will be responsible for hiring experts and setting up e-discovery, under the direction and considering advice of Direction IP.

Client understands that Direction IP may utilize co-counsel, contract attorneys, and other resources to assist in the prosecution of litigation and with negotiations and licensing under this agreement.  Direction IP will discuss these arrangements with Client, and, to the extent co-counsel that is not under the direct supervision of Direction IP is utilized, this shall be done only with the agreement of Client.

This engagement, and the corresponding fee agreement, involve and cover (a) asserting claims against persons who are believed to be infringers of the Patent Portfolio; (b) representing Client with respect to counterclaims that are normally incident to the assertion of patent claims, such as declaratory judgments of non-infringement and invalidity; (c) if necessary, representing Client in trial of this matter on the merits; and (d) pursuing such other services incident to the prosecution of Client's rights as are determined to be necessary, including without limitation negotiating and otherwise facilitating transactions, including through mediation, for the license of all or part of the Patent Portfolio with or to third parties.

Legal matters not falling within the previously-described scope of representation are specifically excluded from the scope of Direction IP's representation.   Specifically excluded are the following: (1) patent prosecution and any other work in or before the United States Patent and Trademark Office ("USPTO"), including but not limited to voluntary or involuntary reexamination proceedings, *inter partes* review of the Patent Portfolio, and covered business

*CONFIDENTIAL*

Swirlate IP LLC
April 14, 2020
Page 3

method review; (2) docketing and meeting deadlines related to maintaining the enforceability of patents or applications within the Patent Portfolio, such as the payment of maintenance fees; (3) defense of any claims against Client, whether by counterclaim or otherwise, that relate to issues other than infringement, validity, or enforceability of patents within the Patent Portfolio, such as the assertion of patents against Client; (4) any appellate proceedings after a final judgment is entered unless a separate fee agreement is entered into between you and Direction IP; and (5) legal work in courts, administrative bodies, or other agencies outside of the territorial jurisdiction of the United States.

No settlement will be made without Client's consent; however, Client agrees that it will consider seriously the advice of Direction IP and not unreasonably withhold its consent.

Client represents that it does not make, use, sell, offer to sell, or import any product in relation to the Patent Portfolio, and that it has not done so in the past.

Although Direction IP may offer opinions about possible results, Direction IP cannot guarantee any particular result. Client acknowledges that Direction IP has made no promises about the outcome and that any opinions offered by Direction IP in the future will not constitute a guarantee and/or warranty regarding the success of the case. Actual fees or costs may vary from estimates given.

Please be advised that in this matter Direction IP represents only Client. Direction IP does not represent the individual interests of any other person or entity, or officer, director, member, managing member, parent, subsidiary or other entity affiliated with Client.

## RATES AND CHARGES.

Client agrees that the amount I receive in exchange for the legal services I provide will be a percentage of your Net Recovery (defined below) and shall be due upon receipt of such Net Recovery. My fees are detailed in the table below:

| Threshold Event | Execution of Agreement up to the earlier of (i) the day before initial status, scheduling conference, or submission of a proposed scheduling order with respect to a given defendant in this matter, or (ii) a Response to a Rule 12, Fed.R.Civ.P. Motion, or other | From (i) or (ii), whichever is earlier through three weeks prior to the claim construction hearing | From three weeks prior to the claim construction hearing to service of pretrial disclosures | Service of pretrial disclosures through resolution |
|---|---|---|---|---|

Swirlate IP LLC
April 14, 2020
Page 4

*CONFIDENTIAL*

|  | Motion to Dismiss is filed |  |  |  |
|---|---|---|---|---|
| **Rate** | Twenty percent (20%) of the Net Recovery against each adverse party. | Twenty-five percent (25%) of the Net Recovery against each adverse party. | Thirty percent (30%) of the Net Recovery against each adverse party. | Forty percent (40%) of the Net Recovery against each adverse party. |

Fees are fully earned as of the date the Client and a third party agree on the amount of the settlement so long as an agreement is eventually executed and payment is made.

In the event that Client obtains a recovery related to the Patent Portfolio that (1) is combined with other recoveries or proceeds related to rights, covenants, or patent assets other than the Patent Portfolio, or (2) involves a settlement that implicates payment to other law firms (other than local counsel in a case in which Direction IP is lead counsel), then Direction IP's fees will be an amount that is fairly attributable and apportioned to Direction IP's work directly related to the Patent Portfolio.

"Net Recovery" means the amount of Recovery, less actually incurred Costs, as defined below.

"Recovery" means the fair value of any consideration that you have a right to receive that relates to or arises from this matter in any way or obtained by any means, including by transaction, settlement, or judgment. Recovery includes but is not limited to proceeds from the sale, transfer, or licensing of rights or property, including intellectual property and stock; royalties or licensing revenues; awarded costs and attorneys' fees; and investments by third parties in business ventures to exploit any rights or property. Recovery also includes the fair value of any non-cash consideration that you receive relating to or arising from this matter in any way. If payment of any Recovery received by Client will be deferred (such as in the case of an annuity, a structured settlement, license fee, royalty, or any other periodic payments), the attorneys' fees payable on any deferred amounts shall be paid as such deferred amounts are received by Client. In the event that Client obtains a recovery related to the Patent Portfolio that is combined with other recoveries or comes from a source other than an adverse party in litigation, Direction IP's fees will be an amount that is fairly attributable to Direction IP's work on the matter, which will be discussed and negotiated in good faith between the Parties.

Payment of any Recovery from any adverse party shall be made jointly to Client and Direction IP, except as otherwise agreed in writing by the Parties. All sums are payable to Direction IP at its principal office. Where practicable, payment of Recoveries shall be requested to be made by wire transfer to the Direction IP Lawyer Trust Account. The Parties shall reach agreement on distribution of such Recovery in accordance with this agreement, and such recovery shall be distributed as soon as practicable.

Upon execution of this agreement, Client hereby grants to Direction IP a lien on any judgment, licensing, or settlement proceeds, to the full extent permitted by Texas law, to secure Direction IP's fees and Costs payable in accordance with this agreement. Nothing in this agreement shall

*CONFIDENTIAL*

Swirlate IP LLC
April 14, 2020
Page 5

be construed as granting Direction IP a proprietary interest in the causes of action or in the subject matter of this agreement. To the extent Direction IP holds monies that are payable to Client pursuant to this agreement, Direction IP grants to Client a lien on such monies.

**COSTS AND CLIENT'S RESPONSIBILITY FOR COSTS.**

Costs will be incurred in connection with the enforcement efforts contemplated under this agreement. Costs include any incurred expenses relating to or arising from my representation of you in this matter. By way of example but not limitation, costs include: court filing fees, deposition costs, stenographer and court reporter fees, videographer fees, consultant fees, witness fees, expert fees and expenses, investigation costs, messenger and mailing fees, photocopying expenses, mileage, process server fees, travel costs, exhibit costs, on-line research costs, and local counsel fees and costs (if the matter is transferred out of the Eastern District of Texas or it is otherwise chosen to bring litigation elsewhere). Items that are not to be considered costs under this agreement, and which must be paid by you without being either advanced or contributed to by Direction IP, include, but are not limited to, sanctions and other parties' costs or attorneys' fees, if any, that you are ultimately ordered or required to pay. Costs also do not include expenses that have not been incurred or have yet to be incurred.

Client shall be responsible for the payment of all Costs. In the event that Direction IP has either ordered or paid for any Costs, Client covenants to pay any third-party vendor's invoices promptly upon receipt of such invoices or to reimburse Direction IP promptly upon receipt of any invoice from Direction IP setting forth in reasonable detail the amount and type of any Cost paid by Direction IP on behalf of Client.

**RETAINER FOR COSTS AND INVOICES.**

Client agrees to provide Direction IP with a retainer in the amount of $800.00 per defendant against whom a complaint is anticipated to be filed. For example, if five (5) complaints are anticipated to be filed, then the retainer will be $4,000. The retainer will be placed in Direction IP's Lawyer's Trust Account. Client authorizes Direction IP to use the funds to pay Costs as they are incurred. Payments from the retainer will be made upon remittance to Client of a billing statement. Client acknowledges that the retainer is not an estimate of the total fees and costs, but merely an advance for security. Direction IP reserves the right to demand further deposits to cover Costs in excess of $2000.

Direction IP will provide Client with an invoice on approximately a month basis to the extent Costs are incurred. Client agrees to pay the balance of any invoice within 30 days of receipt to the extent the invoiced amount exceeds the retainer.

**REPRESENTATION OF ADVERSE INTERESTS.**

You are informed that the Illinois Rules of Professional Conduct of 2010 require your informed written consent before I may begin to represent you when I have or had a relationship with any party interested in the subject matter of my proposed representation of you. At this time,

Swirlate IP LLC
April 14, 2020
Page 6

*CONFIDENTIAL*

Direction IP is not aware of any relationship with any other party interested in the subject matter of my services to you under this agreement.

## TERMINATION AND WITHDRAWAL.

Client reserves the right to terminate Direction IP's representation, and in that event, Direction IP agrees to cooperate with subsequent counsel who assumes responsibility for the case. Such termination shall be made by Client in writing.

For any potential infringers that Client wishes to pursue but Direction IP does not, Client has the right to obtain other counsel to pursue such potential infringers, and Client is not required to compensate Direction IP or reimburse Direction IP for any attorney's fees or Costs, from any recovery it may obtain from such potential infringers.

If Client discharges Direction IP from any pending litigation after any appearance as counsel of record has been entered, Direction IP will seek court permission to withdraw as counsel if it deems such to be appropriate. Direction IP does not waive rights to payment for attorneys' fees and Costs for services rendered and work performed prior to such discharge.

In the event of a discharge, payment for attorney's fees and Costs shall be reimbursable from Recovery from parties against whom Direction IP has initiated litigation on behalf of Client, and no other Parties.

Direction IP reserves the right to withdraw from representation if Client:

    (a) insists on presenting a claim or defense that is not well grounded in fact and warranted by existing law or supported by a good faith argument for an extension, modification, or reversal of existing law;

    (b) insists that Direction IP pursue a course of conduct that is illegal or prohibited by the Illinois Rules of Professional Conduct;

    (c) unreasonably insists that Direction IP engage in conduct that is contrary to the advice and judgment of Direction IP, even if not illegal or prohibited by the Illinois Rules of Professional Conduct;

    (d) makes it unreasonably difficult for Direction IP to accomplish the object of this representation;

    (e) disregards an agreement or obligation to Direction IP to pay attorneys' fees and Costs; or

    (f) other good cause for withdrawal exists as contemplated by the Illinois Rules of Professional Conduct.

**CONFIDENTIAL ATTORNEY CLIENT PRIVILEGE WORK PRODUCT**

*CONFIDENTIAL*

Swirlate IP LLC
April 14, 2020
Page 7

## RETENTION OF PAPERS AND PROPERTY.

Direction IP does not routinely retain most original paper documents. Direction IP routinely retains only scanned or other electronic copies of documents. After scanning, most original paper documents are discarded. If you want Direction IP to retain a particular paper document, you must notify Direction IP in advance.

Direction IP disposes of documents and records, including electronic records, a reasonable time after my services in a matter have concluded. After Direction IP's services in this matter have concluded, I will, upon your written request, deliver to you any of your funds or property then in my possession. In the absence of express instructions from you or an agreement or court order to the contrary, Direction IP may dispose of all materials in its possession that relate to this matter ninety (90) days after the conclusion of my services, without further notice to you. If you wish Direction IP to retain any materials for longer than ninety (90) days, you agree to pay all costs incurred, such as storage and maintenance. Direction IP may retain for its own benefit, but is not obligated to retain, any materials or copies thereof, including copies in electronic form, for a longer time.

Documents or property relating to this matter may come into your or Direction IP's possession under the terms of a confidentiality agreement or protective order. Such agreement or order may require disposal of such material or return of such material to its owners. You will be charged for, and you agree to pay for, the time and costs that Direction IP expends to comply with such agreements or orders, including time and costs that Direction IP expends after termination of our relationship.

## DISPUTES.

Any controversy, dispute or claim arising out of, or in connection with, or in relation to the interpretation, performance, or breach of this agreement or the engagement of Direction IP and legal services rendered by them or any of their owners or employees, including but not limited to fee disputes and légal malpractice, shall be finally determined, at the request of any of the Parties, by binding arbitration conducted in Dallas, Texas, in accordance with existing rules for commercial arbitration of the American Arbitration Association, and judgment upon any award rendered by the arbitrator may be entered by any state or federal court having jurisdiction hereof. The Parties hereto acknowledge and agree that this provision eliminates their right to a jury or other trial in any and all disputes against Direction IP or its members or employees. The arbitrator shall award the prevailing party, in addition to the costs of the proceeding, that party's reasonable attorneys' fees.

## ARMS-LENGTH NEGOTIATION.

Client understands and acknowledges that Direction IP does not represent Client for purposes of negotiating, reviewing, and/or executing this Agreement, and Direction IP has expressly encouraged Client to consult with and use independent counsel for purposes of negotiating and reviewing this Agreement prior to execution. Client represents that it has made sufficient investigation and inquiry to determine that this Agreement is fair and reasonable to Client, and

Swirlate IP LLC
April 14, 2020
Page 8

*CONFIDENTIAL*

that this Agreement was the product of an arm's length negotiation between Client and Direction IP. Client acknowledges that it has considered the option of retaining other counsel on an hourly fee arrangement or other non-contingent basis, but has made sufficient investigation and inquiry to determine that this Contingent Fee Agreement is in its best interests.

**SAVINGS CLAUSE AND ENTIRE AGREEMENT.**

If any part of this Agreement shall be invalid, illegal, or inoperative for any reason, it is the intention of the Client and Direction IP that the remaining parts, so far as possible and reasonable, shall be effective and fully operative. This Agreement contains our entire agreement concerning Direction IP's representation of you and payment of fees and costs. No other agreement, statement, or promise, whether written or oral, that was made on or before the reference date of this agreement will be binding.

Before signing this agreement the Client should read it thoroughly and if Client has any questions he or she may feel free to ask for a complete explanation.

Very truly yours,

David R. Bennett
**DIRECTION IP LAW**

I have read this letter and Agreement and understand and AGREE to the terms set forth herein.

Dina Gamez, Managing Member
Swirlate IP LLC

April 15, 2020
Date

**CONFIDENTIAL ATTORNEY CLIENT PRIVILEGE WORK PRODUCT**          SW000059

EXHIBIT

05

## PATENT ASSIGNMENT

For good and valuable consideration, the receipt of which is hereby acknowledged, Intertechnology Global LLC, a Texas limited liability company having an address at 6009 W Parker Rd, Ste 149 - 1039, Plano, TX 75093-8121 ("*Assignor*"), does hereby assign, transfer, and convey unto Swirlate IP LLC, a Texas limited liability company, having an address at 6009 W Parker Rd, Ste 149 - 1090, Plano, TX 75093 ("*Assignee*"), or its designees, all right, title, and interest that exist today and may exist in the future in and to any and all of the following (collectively, the "*Patent Rights*"):

(a)     the patent applications and patents listed in the table below (the "*Patents*" or "*Patent*");

| Patent/Publ. No | Application No | Patent Title |
|---|---|---|
| US8325845 | US13034348 | Constellation rearrangement for ARQ transmit diversity schemes |
| US7567622 | US11633421 | Constellation rearrangement for ARQ transmit diversity schemes |
| US7154961 | US10501906 | Constellation rearrangement for ARQ transmit diversity schemes |
| KR100789042B1 | KR20047012008A | CONSTELLATION REARRANGEMENT FOR ARQ TRANSMIT DIVERSITY SCHEMES |
| JP3885078B2 | JP2004543995A | CONSTELLATION REARRANGEMENT FOR ARQ TRANSMIT DIVERSITY SCHEMES |
| EP1552639B1 | EP02790298.0 | CONSTELLATION REARRANGEMENT FOR ARQ TRANSMIT DIVERSITY SCHEMES |
| DE60224588.5 | 02790298.0 | CONSTELLATION REARRANGEMENT FOR ARQ TRANSMIT DIVERSITY SCHEMES |

| Patent/Publ. No | Application No | Patent Title |
|---|---|---|
| GBEP1552639 | 02790298.0 | CONSTELLATION REARRANGEMENT FOR ARQ TRANSMIT DIVERSITY SCHEMES |
| FREP1552639 | 02790298.0 | CONSTELLATION REARRANGEMENT FOR ARQ TRANSMIT DIVERSITY SCHEMES |
| CN1620776B | CN02828081.4 | Constellation resetting of automatically repeat requesting transmitting diversity scheme |
| WO2004036818 | WOPCT/EP02/11694 | Constellation resetting of automatically repeat requesting transmitting diversity scheme |
| US20090262858 | US12/490096 | CONSTELLATION REARRANGEMENT FOR ARQ TRANSMIT DIVERSITY SCHEMES |
| AT383689T | | CONSTELLATION REARRANGEMENT FOR ARQ TRANSMIT DIVERSITY SCHEMES |
| AU2002368296A | | CONSTELLATION REARRANGEMENT FOR ARQ TRANSMIT DIVERSITY SCHEMES |
| EP1903711A | EP08000127.4 | Constellation rearrangement for ARQ transit diversity schemes |
| EP2259478A | EP10178455.1 | Constellation rearrangement for ARQ transmit diversity schemes |

(b)    and the right to recover for unsettled past, present and future infringement.

**ASSIGNOR: Intertechnology Global LLC**

By: _____

Name: ___Tri Lam_____

Title: ___Managing Member___

Date: ___4/22/2020_____

ASSIGNEE: Swirlate IP LLC

By: _____

Name: _____Dina Gamez_____

Title: _____Managing Member_____

Date: _____April 22, 2020_____

SW000023

Swirlate IP - Assignment Agreement ready for your signature

From:  Linh Deitz (linhd@ip-edge.com)

To:    dinag02@yahoo.com

Date:  Wednesday, April 22, 2020 at 10:27 PM CDT

Hello Dina,

Please see attached the Assignment Agreement between Intertechnology Global LLC and Swirlate IP LLC.  These are
the patents that are being assigned to your entity.  Can you please sign and date the agreement and send it back to me?

Sincerely,

Linh Deitz
Office Manager
IP Edge LLC

 7567622 & 7154961 - Assignment from Intetechnology Global LLC to Swirlate IP LLC (REDLINED) signed by IG.pdf
317kB

SW000024

EXHIBIT

06

Swirlate IP - Engagement letter ready for your signature

From:  Linh Deitz (linhd@ip-edge.com)
To:    dinag02@yahoo.com
Cc:    brandon@ip-edge.com
Date:  Friday, April 17, 2020 at 03:08 PM CDT

Hello Dina,

Please see attached an engagement letter for Jimmy Chong and his firm to represent Swirlate IP as local counsel.  Can you please sign the agreement and send it back to me?

Sincerely,

Linh Deitz
Office Manager
IP Edge LLC

 Jimmy Chong - Swirlate - engagement letter.pdf
111.8kB

SW000027

EXHIBIT

07

**dbennett directionip.com**

| | |
|---|---|
| **From:** | Papool Chaudhari <papool@pralawllc.com> |
| **Sent:** | Tuesday, November 8, 2022 2:31 PM |
| **To:** | Dina Gamez |
| **Cc:** | dbennett directionip.com; Linh Deitz; Gautham Bodepudi |
| **Subject:** | Hearing transcript for 11-4-22 Delaware Hearings |
| **Attachments:** | Delaware Connolly 11-4-22 Hearing Transcript.pdf |

Dina,

The first of hearings in Delaware occurred last Friday, 11-4.  Attached is the transcript from those hearings.  Can you please review the transcript in advance of our next video call, which is this Monday?   With this, you'll be able to see the actual questions that were asked to owners, and this will be the best guide for you to see what is likely to be asked of you during the Swirlate hearing.

Thanks!

Papool

--
Papool Chaudhari
papool@pralawllc.com

1